# Exhibit A

**Form of Bidding Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** ) | **Chapter 11** |
| ) | |
| **Böwe Systec, Inc., <u>et al.</u>,**[1] ) | **Case No.: 11-_____ ( )** |
| ) | |
| **Debtors.** ) | **(Jointly Administered)** |
| ) | |
| ) | **Re: Docket No. ___** |
| ) | |

## ORDER (A) APPROVING BIDDING PROCEDURES; AND
## (B) APPROVING THE FORM AND MANNER OF NOTICES THEREOF

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (the "<u>Debtors</u>") for the entry of an order (the "<u>Order</u>") (a) approving the bidding procedures substantially in the form attached hereto as **<u>Exhibit 1</u>** (the "<u>Bidding Procedures</u>") and (b) approving the form and manner of notices thereof; it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor:

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, are Böwe Systec, Inc. (1423), Böwe Bell + Howell Holdings, Inc. (9926), BBH, Inc. (9928), Böwe Bell + Howell Company (0100), Böwe Bell + Howell Postal Systems Company (4944), BCC Software, Inc. (3481) and Böwe Bell + Howell International Ltd. (0001). The debtors' corporate offices are located at 760 S. Wolf Road, Wheeling, IL 60090.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion, the Stalking Horse Agreement or the Bidding Procedures, as applicable.

**THE COURT HEREBY FINDS THAT:**[3]

A.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The statutory bases for the relief requested in the Motion are (a) sections 105 and 363 of the Bankruptcy Code and (b) Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007 and 9014.

C.     Notice of the Motion has been provided to: (a) the United States Trustee for the District of Delaware; (b) counsel to the Agent (c) the creditors listed on the Debtors' consolidated list of 20 largest unsecured creditors, as filed with the Debtors' chapter 11 petitions; (d) counsel to the Purchasers; (e) all parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; (f) each of the Debtors' landlords and each of the notice parties identified in the real property leases, to the extent possible; (g) various federal, state, county and city tax and regulatory authorities; (h) all entities known to have expressed an interest in a transaction with respect to the Acquired Assets or that has been indentified by the Debtors or their advisors as a potential purchaser of the Acquired Assets; (i) the Federal Trade Commission; (j) the United States Attorney General/Antitrust Division of the Department of Justice; (k) local and state environmental authorities and the federal Environmental Protection Agency; and (l) all parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

D.     The Debtors have articulated good and sufficient reasons for this Court to: (i) approve the Bidding Procedures; (ii) approve the execution of the Stalking Horse Agreement

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

and the Break-Up Fee and the Expense Reimbursement; (iii) set the hearing (the "Sale Hearing") to approve the Sale and approve the manner of notice of the Motion and the Sale Hearing; and (iv) approve the procedures for the assumption and assignment of the Acquired Contracts, including notice of proposed Cure Amounts.

E. The Debtors and the Purchasers have executed and filed with the Court the Stalking Horse Agreement dated April 18, 2011, attached as **Exhibit B** to the Motion.

F. The Stalking Horse Agreement was negotiated by the parties at arms'-length and in good faith after months of discussions and negotiations with all relevant parties.

G. The Bidding Procedures and the Cure Procedures are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates through the Sale and the transfer of the Acquired Assets to the Highest and Best Bidder free and clear of all Liens, Claims and Interests pursuant to section 363(f) of the Bankruptcy Code.

H. The Break-Up Fee and the Expense Reimbursement shall be paid in accordance with Sections 6.7(c)(v) and 9.3 of the Stalking Horse Agreement, and (i) if triggered, shall be deemed a superpriority administrative expense under section 364(c) of the Bankruptcy Code, junior only to the claims of the lenders under the DIP Credit Agreement, payable out of the Sellers' cash or other collateral securing the Sellers' obligations (which shall be senior to any and all claims of any creditors of or holders of equity interests in the Sellers, including pre-petition and post-petition amounts owing to the Sellers' pre-petition and post-petition senior secured lenders other than the lenders under the DIP Credit Agreement), (ii) are of substantial benefit to the Debtors' estates, (iii) are reasonable and appropriate, including in light of the size and nature of the sale and the efforts that have been or will be expended by the Purchasers notwithstanding that the proposed sale is subject to higher and better offers for the

3

Acquired Assets, (iv) were negotiated by the parties at arm's-length and in good faith, and (v) are an essential inducement and condition relating to the Purchasers' entry into, and continuing obligations under, the Stalking Horse Agreement. Accordingly, the Break-Up Fee and the Expense Reimbursement are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

**IT IS HERBY ORDERED THAT:**

1.      The Motion is granted as provided herein.

2.      The Bidding Procedures and Cure Procedures are hereby approved, are incorporated herein by reference, and shall govern all bids and proceedings related to the Sale and the assumption and assignment of the Acquired Contracts contemplated in the Motion. The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures and the Cure Procedures.

3.      The Stalking Horse Agreement is hereby approved and binding upon the Debtors and their estates, and in connection therewith, the Purchasers are granted relief from the automatic stay pursuant to section 362 of the Bankruptcy Code for the limited and sole purpose of exercising its rights under those provisions, including with respect to the Purchasers' right to terminate the Stalking Horse Agreement.

4.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

5.      Within two (2) days after the entry of this Order (the "Mailing Date") or as soon thereafter as practicable, the Debtors (or their agents) shall serve the Sale Notice, substantially in the form attached hereto as **Exhibit 2**, and a copy of this Order by first-class mail, postage prepaid, upon the Notice Parties.

6.     On the Mailing Date or as soon as practicable thereafter, the Debtors shall publish the Sale Notice, substantially in the form attached hereto as **Exhibit 3**, once in the *Wall Street Journal*, and such publication notice shall be deemed proper notice to any other interested parties whose identities are unknown to the Debtors.

7.     The form of the Sale Notice and the manner of such notice are good and sufficient for all purposes and no other or further notice shall be required upon the Debtors' service, within two (2) days after entry of this Order, of such notices and such other documents on the Notice Parties in the manner provided therein.

8.     As set forth in the Bidding Procedures, to the extent that at least one Qualified Bid (other than from the Purchasers) is timely received, the Debtors shall conduct the Auction at **[TIME]** a.m. (prevailing Eastern Time) on **[DATE]**, 2011, at the offices of Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 or such later time on such day or other place as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids.

9.     The Stalking Horse Agreement constitutes a Qualified Bid and the Purchasers are a Qualified Bidder, for all purposes and requirements under the Bidding Procedures. The Agent shall be entitled to credit bid the total amount of (a) the obligations of any kind outstanding under the DIP Credit Agreement in an aggregate amount equal to the DIP Amount and (b) prepetition obligations of any kind outstanding under the Pre-Petition Credit Agreement or otherwise.

10.     If no Qualified Bid other than the Stalking Horse Agreement is timely received, the Debtors shall not conduct an Auction and shall designate the Purchasers as the Highest and Best Bidder.

RLF1 3980128v. 1

11.    All Qualified Bidders are deemed to have submitted to the exclusive jurisdiction of the Court with respect to all matters related to the Auction and the terms and conditions of the sale of the Acquired Assets.

12.    On _____ __, 2011, the Debtors filed a notice identifying all Acquired Contracts that may be assumed and assigned in connection with the Sale (the "Cure Notice"), substantially in the form attached hereto as **Exhibit 4**, with this Court and served the Cure Notice on all non-debtor counter-parties to any Acquired Contracts (the "Contract Counterparties") that may be assumed by the Debtors and assigned to the Highest and Best Bidder; *provided, however,* that the presence of an Acquired Contract listed on **Exhibit 4** does not constitute an admission that such Acquired Contract is an executory contract or unexpired lease. The Debtors reserve all of their rights, claims and causes of action with respect to the Acquired Contracts listed on **Exhibit 4**.

13.    The Cure Notice stated the Cure Amounts that the Debtors believe are necessary to assume the Acquired Contracts pursuant to section 365 of the Bankruptcy Code and notified the Contract Counterparty that such party's Acquired Contract may be assumed and assigned to a purchaser of the Acquired Assets to be identified at the conclusion of the Auction. In addition, the Cure Notice provided the Contract Counterparty with the Stalking Horse Adequate Assurance Information. The Cure Notice set a deadline by which the Contract Counterparty shall be required to file an objection to the Cure Amount or the Stalking Horse Adequate Assurance Information. The Cure Notice also provided that objections to any Cure Amount will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors with the prior consent of the Purchasers or such other party as is determined to be the Highest and Best Bidder.

6

14.    All objections by Contract Counterparties to the Cure Amounts or the Stalking Horse Adequate Assurance Information must be filed within fourteen (14) days after service of the Cure Notice (the "Cure Objection Deadline") and served on (i) the Debtors' counsel, Richards Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Michael J. Merchant, Esq.), (ii) the Debtors, Böwe Bell + Howell Holdings, Inc., 760 S. Wolf Road, Wheeling, Illinois 60090 (Attn: Oliver Bialowons); and (iii) counsel to the Purchasers, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654 (Attn: David L. Eaton and James A. Stempel) (the "Cure Objection Notice Parties"). In the event that the Highest and Best Bidder is not the Purchasers, objections regarding adequate assurance of future performance may be raised at the Sale Hearing.

15.    The Debtors may amend the Cure Notice with respect to any Cure Amount. If the Debtors amend the Cure Notice, any Contract Counterparties affected by the amendment must file any objection to the amended Cure Amount within fourteen (14) days after service of the amended Cure Notice and serve such objection on the Cure Objection Notice Parties.

16.    Unless a Contract Counterparty files an objection to the Cure Amount by the Cure Objection Deadline, then such counterparty shall be (i) forever barred from objecting to the Cure Amount; and (ii) forever barred and estopped from asserting or claiming any Cure Amount against the Debtors, the Highest and Best Bidder or any other assignee of the relevant Acquired Contract.

17.    All timely filed objections to any Cure Amount must set forth (i) the basis for the objection, (ii) the exact amount the Contract Counterparty asserts as the Cure Amount, and (iii) sufficient documentation to support the Cure Amount alleged.

7

18.     The Sale Hearing will be conducted on **[DATE]**, 2011, in the courtroom of the Honorable [_____], United States Bankruptcy Judge for the District of Delaware. The Debtors will seek entry of an order at the Sale Hearing approving and authorizing the sale of the Acquired Assets to the Highest and Best Bidder. The Sale Hearing may be continued from time to time with the consent of the Purchasers or such other party as is determined to be the Highest and Best Bidder without further notice other than such announcement made in open court or a notice of adjournment filed with the Court and served on the Notice Parties.

19.     Objections, if any, to the relief requested in the Motion, as it relates to the relief to be considered at the Sale Hearing, must: (a) be in writing and filed with the Court no later than **[TIME]** p.m. (prevailing Eastern Time) on **[DATE]**, 2011 and served so that it is actually received by (a) the Debtors' counsel, Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Michael J. Merchant, Esq.); (b) the Debtors, Böwe Bell + Howell Holdings, Inc., 760 S. Wolf Road, Wheeling, Illinois 60090 (Attn: Oliver Bialowons); (c) the counsel for the Official Committee of Unsecured Creditors, _____ (Attn: _____); (d) counsel to the Purchasers, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654 (Attn: David L. Eaton and James A. Stempel); and (e) all other parties that have requested notice in these cases.

20.     Sections 6.7 and 9.3 of the Stalking Horse Agreement are hereby approved and binding upon the Debtors and their estates. In connection therewith, the Debtors' obligation to pay the Break-Up Fee and Expense Reimbursement, as provided by the Stalking Horse Agreement, shall survive termination of the Stalking Horse Agreement and, until paid in accordance with the Stalking Horse Agreement, shall constitute a superpriority administrative expense claim in favor of the Purchasers having superpriority, under section 364(c) of the

Bankruptcy Code, junior only to the claims of the lenders under the DIP Credit Agreement and to the charge granted in favor of the Information Officer in the Canadian proceedings, payable out of the Sellers' cash or other collateral securing the Sellers' obligations (which shall be senior to any and all claims of any creditors of or holders of equity interests in the Sellers, including pre-petition and post-petition amounts owing to the Sellers' pre-petition and post-petition senior secured lenders other than the lenders under the DIP Credit Agreement). To the extent that the Purchasers are not the Highest and Best Bidder, the Highest and Best Bidder is authorized and directed to pay the Break-Up Fee and the Expense Reimbursement directly to the Purchasers by wire transfer of immediately available good funds to an account specified by the Purchasers at the closing of any transaction involving the Acquired Assets with the Highest and Best Bidder or consummation of any plan of reorganization that does not provide for a sale of the Acquired Assets to the Purchasers. To the extent for any reason the Highest and Best Bidder fails to pay the Break-Up Fee and the Expense Reimbursement directly to the Purchasers, the Debtors are authorized and directed to pay the Break-Up Fee and the Expense Reimbursement to the Purchasers without further order of the Court.

21.     If the Stalking Horse Agreement is terminated pursuant to Section 9.1 thereof, other than by mutual consent of the Parties under Section 9.1(a) or by the Sellers pursuant to Section 9.1(f) as a result of the Purchasers' breach of the Stalking Horse Agreement, then the Purchasers shall be entitled to (a) the Expense Reimbursement with such amount being payable upon termination of the Stalking Horse Agreement and (b) in the event that the Sellers obtain Bankruptcy Court approval of an Alternative Transaction on or prior to the date that is fifteen (15) months after the date of such termination, the Break-Up Fee with such amount being payable upon the closing or consummation of such Alternative Transaction. The Break-Up Fee

RLF1 3980128v. 1

and the Expense Reimbursement shall be entitled to administrative priority (which shall be a super-priority administrative expense Claim senior to all other administrative expense Claims) under section 364(c)(1) of the Bankruptcy Code. The obligation to pay in full in cash when due any amount owed by any Seller to the Purchasers under the Stalking Horse Agreement, including the Break-Up Fee and the Expense Reimbursement, shall not be discharged, modified or otherwise affected by any plan of reorganization or liquidation for any Seller or by any other Order of the Bankruptcy Court.

22.     All entities, other than the Purchasers, that submit an offer to purchase the Acquired Assets or a Qualified Bid shall:  (a) not be allowed any expense reimbursement, break-up, termination or similar fee or payment; (b) not be entitled to any expense reimbursement, break-up, termination or similar fee or payment on account of their tendering a Bid or the determination that their Bid is a Qualified Bid; and (c) waive any right to seek a claim for substantial contribution under section 503(b)(3)(D) of the Bankruptcy Code.

23.     The Purchasers have standing and are deemed to be parties in interest with standing to be heard on any motion, hearing or other matter related to the Stalking Horse Agreement, the Bidding Procedures, the Auction or the Sale Hearing.

24.     To the extent that any chapter 11 plan confirmed in this case or any order confirming any such plan or any other order in this case (including any order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code) alters, conflicts with or derogates from the provisions of this Order, the provisions of this Order shall control.  The Debtors' obligations under this Order and the portions of the Stalking Horse Agreement pertaining to the Bidding Procedures and Break-Up Fee and the Expense Reimbursement shall survive confirmation of any chapter 11 plan or discharge of claims thereunder and shall be

RLF1 3980128v. 1

binding upon the Debtors, and the reorganized or reconstituted debtors, as the case may, after the effective date of a confirmed plan or plans in the Debtors' cases.

25.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

26.     Notwithstanding the possible applicability of Federal Rule of Bankruptcy Procedure 6004(h), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

27.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

28.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Date: _____, 2011

_____
United States Bankruptcy Judge

RLF1 3980128v. 1

# EXHIBIT 1

## (Form of Bidding Procedures)

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **Böwe Systec, Inc., et al.,**[1] | ) | **Case No.: 11-_____ ( )** |
| | ) | |
| **Debtors.** | ) | **(Jointly Administered)** |
| | ) | |

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed by the above-captioned debtors and debtors in possession (the "Debtors") with respect to the sale (the "Sale") of all or substantially all of the assets and properties of the Debtors related to the business (collectively, the "Acquired Assets").[2] The Sale will be implemented through the purchase agreement attached hereto as **Exhibit A** (the "Stalking Horse Agreement") with Contrado BBH Funding, LLC, and a Canadian corporation to be formed prior to closing (the "Purchasers"), subject to the receipt of higher and better bids in accordance with these Bidding Procedures.

### Approval of Bidding Procedures and Break-Up Fee and the Expense Reimbursement

The Debtors shall request that the Court set a hearing (the "Bidding Procedures Hearing") on or before **[DATE]**, 2011, to approve, among other things, the Bidding Procedures. Any party in interest that wishes to oppose the entry of an order approving the Bidding Procedures must file with the Court a written objection pursuant to the applicable Bankruptcy Rules on or before **[TIME]** p.m. (prevailing Eastern Time) on **[DATE]**, 2011. Should the Debtors fail to meet any of the dates outlined herein, the Purchasers may unilaterally and in their sole discretion decide to terminate the Stalking Horse Agreement in accordance with the Stalking Horse Agreement.

### Auction Qualification Process

To be eligible to participate in the Auction each offer, solicitation or proposal (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be determined by the Debtors to satisfy each of the following conditions:

    (a)    <u>Bid Deposit</u>. The cash deposit in the amount of $5,000,000 (the "Bid Deposit") by wire transfer, certified or cashier's check, which

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, are Böwe Systec, Inc. (1423), Böwe Bell + Howell Holdings, Inc. (9926), BBH, Inc. (9928), Böwe Bell + Howell Company (0100), Böwe Bell + Howell Postal Systems Company (4944), BCC Software, Inc. (3481) and Böwe Bell + Howell International Ltd. (0001). The debtors' corporate offices are located at 760 S. Wolf Road, Wheeling, IL 60090.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the motion to approve these Bidding Procedures (the "Bidding Procedures Motion") or the Stalking Horse Agreement, as applicable.

amount shall be paid to or deposited with an escrow agent to be held pursuant to an escrow agreement to be entered into by such Bidder, the Debtors and such escrow agent;

(b)     <u>Minimum Bid Amount.</u> Any Qualifying Bid (other than the Stalking Horse Agreement) at the Auction must be higher and better than the offer of the Purchasers under the Stalking Horse Agreement and that is not less than the sum of (A) the Credit Bid Amount and the Cure Amounts in cash; (B) the dollar value of the Break-Up Fee in cash; (C) the dollar value of the Expense Reimbursement in cash; and (D) $250,000 in cash (the "<u>Minimum Bid Amount</u>"), and must provide for the immediate payment of the Break-Up Fee and Expense Reimbursement to the Purchasers from the first proceeds of the cash portion of the purchase price of such Bid;

(c)     <u>Acquired Assets</u>. Any Qualifying Bid must seek to acquire substantially all of the Acquired Assets;

(d)     <u>Identification of Executory Contracts and Unexpired Real Property Leases</u>. The Bid shall identify with particularity the Debtors' executory contracts and unexpired leases with respect to which the Bidder seeks to receive an assignment and any designation rights;

(e)     <u>Confidentiality Agreement</u>: Prior to receipt by a Bidder of any information (including business and financial information and access to representatives of the Debtors) from the Debtors, each Bidder will be required to execute a confidentiality agreement on terms and conditions no less favorable than those set forth in the confidentiality agreement executed by the Purchasers in connection with the Sale;

(f)     <u>Same or Better Terms</u>: The Bid must be on terms that, in the Debtors' business judgment and with the Purchasers' approval, are substantially the same or better than the terms of the Stalking Horse Agreement. A Bid must include executed transaction documents (the "<u>Competing Transaction Documents</u>") pursuant to which the Bidder proposes to effectuate a competing transaction (a "<u>Competing Transaction</u>"). A Bid shall include a copy of the Stalking Horse Agreement marked to show all changes requested by the Bidder (including those related to the Purchase Price);

(g)     <u>Corporate Authority</u>: Written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Competing Transaction; <u>provided</u> that if the Bidder is an entity specially formed for the purpose of effectuating the Competing Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors and the Purchasers of the approval of the Competing Transaction by the equity holder(s) of such Bidder;

2

(h)     Adequate Assurance Information.  The Bid shall include sufficient financial or other information (the "Adequate Assurance Information") to establish adequate assurance of future performance with respect to any lease or contract to be assumed and assigned to the Bidder in connection with the proposed transaction and Bidder's agreement that such Adequate Assurance Information can be faxed or emailed to any counterparties to such contracts or leases (or their counsel) within 24 hours of submission of the Bid; provided, however, that the counterparties to such contracts and leases must keep any information marked in the Adequate Information as confidential (the "Confidential Information") provided that the Confidential Information may be referred to and quoted in any hearing before the Bankruptcy Court held to consider the assumption and assignment of such contract or lease and further provided, however, that to the extent that any party desires to introduce the Confidential Information as an exhibit at any hearing, such party shall request that the Bankruptcy Court treat the Confidential Information as confidential, unless the Debtors and the applicable Bidder have agreed that such confidential treatment by the Bankruptcy Court is not necessary.  The Bid shall also identify a contact person (with relevant contact information) that counterparties to any lease or contract can contact to obtain additional Adequate Assurance Information;

(i)     Proof of Financial Ability to Perform:  A Bid (other than the Stalking Horse Agreement) must provide written evidence that the Debtors reasonably conclude demonstrates that the Bidder has the necessary financial ability to close the Competing Transaction and provide adequate assurance of future performance under all Acquired Contracts to be assumed and assigned in the Competing Transaction.  Such information should include, among other things, the following:

(i)     contact names and telephone numbers for verification of financing sources;

(ii)    evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the Competing Transaction;

(iii)   the Bidder's current financial statements (audited if they exist); and

(iv)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Bidder has the ability to close the Competing Transaction;

(j) Identity: All Bids must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid and the complete terms of any such participation;

(k) Contingencies: A Bid may not be conditioned on (i) obtaining financing or any internal approval or (ii) on the outcome or review of due diligence;

(l) No Fees: A Bid made by any Bidder other than the Purchasers must disclaim any right of the Bidder to receive a fee analogous to the Break-Up Fee and the Expense Reimbursement or to compensation under section 503(b) of the Bankruptcy Code for making a substantial contribution;

(m) Irrevocable: A Bid made by any Bidder other than the Purchasers must be irrevocable through the Auction; provided that if such Bid is accepted as the Highest and Best Bid or the Backup Bid (as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures; and

(n) Bid Deadline: Any Bid must be transmitted via email (in .pdf or similar format) to: (i) the Debtors, Böwe Bell + Howell Holdings, Inc., 760 S. Wolf Road, Wheeling, Illinois 60090 (Attn: Oliver Bialowons); (ii) counsel to the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Michael J. Merchant, Esq.); (iii) investment banker to the Debtors, Lazard Middle Markets, 11 West 42nd Street, New York, New York 10036 (Attn: Andrew Torgove); (iv) counsel to the Purchasers, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654 (Attn: David L. Eaton and James A. Stempel) (provided, however, that confidential information with respect to financing sources need not be provided to the Purchasers); and (v) counsel to the Creditors Committee [ ], (Attn: [ ] Esq.), not later than 5:00 p.m. (prevailing Eastern Time) on **[DATE]**, 2011 (the "Bid Deadline").

A Bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "Qualified Bid," and such Bidder shall constitute a "Qualified Bidder." The Debtors shall provide notice of any Qualified Bid to the Purchasers within two (2) Business Days of qualifying a Bid. For the avoidance of doubt, the Stalking Horse Agreement shall constitute a Qualified Bid by the Purchasers and the Purchasers shall be deemed a Qualified Bidder. The Purchasers shall have standing to contest the Debtors' determination of each Qualified Bid and Qualified Bidder.

In the event that any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors shall cause such Bidder to be refunded its Bid Deposit and all accumulated interest thereon within three (3) business days after the Bid Deadline or as soon as reasonably practicable thereafter.

4

## Access to Due Diligence Materials

Only Bidders who have executed a confidentiality agreement in form and substance acceptable to the Debtors are eligible to receive due diligence access or additional non-public information. If the Debtors determine that a Bidder that has executed such a confidentiality agreement does not constitute a Qualified Bidder, then such Bidder's right to receive due diligence access or additional non-public information shall terminate. As noted above, the Debtors have designated Lazard Middle Markets (Attn: Andrew Torgove) to coordinate all reasonable requests for additional information and due diligence access from the Bidders. The Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline. Neither the Debtors nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents advisors or professionals are responsible for, and shall bear no liability with respect to, any information obtained by Bidders in connection with the sale of the Acquired Assets.

Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Acquired Assets that are the subject of the Auction prior to making any such Bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its Bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the Acquired Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Highest and Best Bidder or the Stalking Horse Agreement.

Any access or information made available to any Bidders or Qualified Bidders not previously made available to Purchasers shall be promptly provided to Purchasers.

## Due Diligence From Bidders

Each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding each such Bidder and its contemplated transaction. Failure by a Bidder to comply with the requests for additional information and due diligence access shall be a basis for the Debtors to determine that such Bidder is not a Qualified Bidder. Failure by a potential or Qualified Bidder to comply with requests for additional information and due diligence access shall be a basis for the Debtors to determine that a Bid made by such Potential or Qualified Bidder is not a Qualified Bid. Notwithstanding anything to the contrary contained herein, the Purchasers shall not be required to furnish any additional information or other diligence pursuant to this paragraph.

## Auction

If one (1) or more Qualifying Bids are submitted in accordance with the Bidding Procedures Order, the Debtors will conduct an auction (the "Auction") no later than **[DATE]**, 2011 (the "Auction Deadline Date") in accordance with the Bidding Procedures Order; and at such Auction, the Sellers shall have the right to select the highest and best Bid from the Purchasers and any Person who submitted a Qualifying Bid pursuant to and in accordance with Section 6.7(c)(viii) of the Stalking Horse Agreement (the "Highest and Best Bid" and the Bidder

submitting such Highest and Best Bid, the "Highest and Best Bidder"), which will be determined by considering, among other things: (1) the number, type and nature of any changes to the Stalking Horse Agreement requested by each Bidder; (2) the extent to which such modifications are likely to delay closing of the sale of the Acquired Assets and the cost to the Debtors of such modifications or delay; (3) the total consideration to be received by the Debtors; (4) the likelihood of the Bidder's ability to close a transaction and the timing thereof; and (5) the net benefit to the estate, taking into account the Purchasers' rights to the Break-Up Fee and Expense Reimbursement (collectively, the "Bid Assessment Criteria"). If no Qualified Bid (other than the Stalking Horse Agreement) is received by the Bid Deadline, the Debtors shall not conduct the Auction and shall designate the Stalking Horse Agreement as the Highest and Best Bid for the purposes of these Bidding Procedures.

No later than **[DATE]**, 2011, at **[TIME]** (prevailing Eastern Time), the Debtors will notify all Qualified Bidders of the highest and best Qualified Bid, as determined in the Debtors' discretion (the "Baseline Bid"), and provide copies of the Baseline Bid to all Qualified Bidders.

The Auction shall be conducted at the offices of Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (the "Auction Site") at 10:00 a.m. (prevailing Eastern Time) on **[DATE]**, 2011 (the "Auction Date"), or such other place and time as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids and expressed their intent to participate in the Auction as set forth above. Prior to moving the Auction Date, the Debtors shall consult with the Purchasers and the Committee. The Auction shall be conducted according to the following procedures:

(a)     The Debtors Shall Conduct the Auction.

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be made and received on an open basis, and all material terms of each such Bid shall be fully disclosed to all Qualified Bidders. The Debtors shall maintain a transcript of all Bids made and announced at the Auction.

(b)     Break-Up Fee and the Expense Reimbursement.

To provide an incentive and to compensate the Purchasers for performing the substantial due diligence and incurring the expenses necessary and entering into the Stalking Horse Agreement with the knowledge and risk that arises from participating in the sale and subsequent bidding process, the Debtors have agreed to provide certain bid protections to the Purchasers, under the terms and conditions outlined herein and in the Stalking Horse Agreement, including (i) the Purchasers' reasonably documented actual out-of-pocket fees and expenses (including legal, accounting, HSR Act filing fees, escrow and other fees and expenses) not to exceed $1,750,000 (the "Expense Reimbursement") and (ii) in the event that the Sellers consummate an Alternative Transaction on or prior to the date that is fifteen (15) months after the date of such termination, a break-up fee in the amount of an additional $1,500,000 (the "Break-Up Fee") with such amount being payable upon the closing or consummation of such Alternative Transaction.

RLF1 3980128v. 1

The Break-Up Fee and Expense Reimbursement are a material inducement for, and a condition of, the Purchasers' entry into the Stalking Horse Agreement. The Break-Up Fee and Expense Reimbursement shall be payable as set forth herein and in the Bidding Procedures Order.

(c)     Overbid Amount; Minimum Bid Increment

There shall be an overbid amount (the "Overbid Amount") that a Qualified Bidder must bid to exceed the Purchasers' Bid, and that amount shall include a cash payment at closing that is not less than the sum of (A) the Credit Bid Amount and the Cure Amounts in cash; (B) the dollar value of the Break-Up Fee in cash; (C) the dollar value of the Expense Reimbursement in cash, and (D) $250,000 in cash, provided, however, any overbid bids by the Purchasers thereafter shall only be required to be equal to the sum of (w) the then existing leading bid, plus (x) $250,000 less (y) the dollar value of the Break-Up Fee less (z) the dollar value of the Expense Reimbursement.

Subsequent bids at the Auction shall not provide consideration of less than $250,000 in total consideration in excess of the preceding bid subject to the Debtors ability to adjust the bidding increments in accordance with the Bidding Procedures.

(d)     Purchasers' Rights at Auction

The Purchasers have the right to submit further bids along with a markup of the Stalking Horse Agreement, and at any time, request that the Debtors announce, subject to any potential new bids, the then current Highest and Best Bid, and to the extent the Purchasers request, use reasonable efforts to clarify any and all questions the Purchasers may have regarding the Sellers' announcement of the then current Highest and Best Bid. The Purchasers shall have standing to contest the Highest and Best Bid selected by the Sellers.

(e)     Backup Bidder

Following the approval of the Sale of all or substantially all of the Assets to the Highest and Best Bidder at the Sale Hearing, if the Debtors fail to consummate an approved Sale with the Highest and Best Bidder, the Debtors shall be authorized, but not required, to deem the next highest or otherwise best Qualified Bid (the "Back-Up Bid" and the party submitting the Back-Up Bid, the "Back-Up Bidder"), as disclosed at the Sale Hearing, the Highest and Best Bid, and the Debtors in consultation with the Committee shall be authorized, but not required, to consummate the sale with the Back-Up Bidder submitting such bid without further order of the Bankruptcy Court. The Back-Up Bid shall remain open until the first business day following the consummation of a Sale of the Acquired Assets to the Highest and Best Bidder.

(f)     Consent to Jurisdiction as Condition to Bidding.

The Purchasers, all Qualified Bidders and all Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Stalking Horse Agreement, the Auction or the construction and enforcement of any Competing Transaction Documents. To the extent the

Purchasers are not the Highest and Best Bidder, the Purchasers shall have standing to contest the highest and best Qualified Bid chosen by the Debtors.

(g)    Closing the Auction.

The Auction shall continue until there is only one Qualified Bid that the Debtors determine in their reasonable business judgment, after consultation with their financial and legal advisors, is the Highest and Best Bid. In making this decision, the Debtors, in consultation with their financial and legal advisors, shall consider the Bid Assessment Criteria. The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid. Additionally, the Auction shall not close unless and until the Purchasers have had a final opportunity to match any Overbids. The Debtors shall not consider any Bids submitted after the conclusion of the Auction.

(h)    No Collusion; Good Faith Bona Fide Offer

Each Qualified Bidder participating at the Auction will be required to confirm that (i) it has not engaged in any collusion with respect to the bidding and (ii) its Qualified Bid is a good faith bona fide offer and it intends to consummate the proposed Sale if selected as the Highest and Best Bidder.

## Cure Procedures

By **[TO COME]**, the Debtors will file a notice identifying all Contracts and Facility Leases that may be assumed and assigned in connection with the Sale (the "Cure Notice"), and serve the Cure Notice on all non-debtor counter-parties to the Contracts and Facility Leases (the "Contract Counterparties").

The Cure Notice will state the cure amounts that the Debtors believe are necessary to assume such Contracts and Facility Leases pursuant to section 365 of the Bankruptcy Code (the "Cure Amount") and notify the Contract Counterparty that such party's Contract or Facility Lease may be assumed and assigned to a purchaser of the Acquired Assets to be identified at the conclusion of the Auction. The Cure Notice shall also contain information with respect to the Purchasers' proposed adequate assurance of future performance and information regarding how a Contract Counterparty to a Contract or Facility Lease may obtain additional information regarding the Purchasers (the "Stalking Horse Adequate Assurance Information"). The Cure Notice shall set a deadline by which the Contract Counterparty may file an objection to the Cure Amount or the Stalking Horse Adequate Assurance Information.

The deadline to object to any Cure Amount or to the Stalking Horse Adequate Assurance Information is fourteen (14) days after service of the Cure Notice.

## Free of Any and All Liens, Claims and Interests

Except as otherwise provided in the Stalking Horse Agreement or the Highest and Best Bidder's asset purchase agreement, all of the Debtors' right, title and interest in and to the Acquired Assets subject thereto shall be sold free and clear of any pledges, liens, security

interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Liens, Claims and Interests") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Liens, Claims and Interests to attach to the net proceeds of the sale of the Acquired Assets with the same validity and priority as such Liens, Claims and Interests applied against the Acquired Assets.

## Sale Hearing

The Debtors will seek a hearing (the "Sale Hearing") on or before **[DATE]**, 2011, at which the Debtors will seek approval of the Sale with the Highest and Best Bidder. Objections to the Sale with the Highest and Best Bidder must be filed and served so that they are actually received by the Debtors and the Purchasers no later than **[TIME]** p.m. (prevailing Eastern Time) on **[DATE]**, 2011.

The Debtors, in the exercise of their business judgment, in consultation with the Committee, reserve their right to the extent consistent with the Stalking Horse Agreement to change the date of the Sale Hearing in order to achieve the maximum value for the Acquired Assets.

## Return of Deposit

The Bid Deposit of the Highest and Best Bidder shall be applied to the Purchase Price. The Bid Deposit of the Back-up Bidder shall be held in an interest-bearing account until two (2) business days after the Closing of the transaction contemplated by the Highest and Best Bid, and thereafter returned to the Back-up Bidder. Bid Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until no later than two (2) business days after the Sale Hearing, and thereafter returned to the respective bidders.

## No Modification of Bidding Procedures

These Bidding Procedures may not be modified without the express written consent of the Debtors and the Purchasers.

## Credit Bidding

The Agent or Purchasers shall be entitled to credit bid the amount equal to the Credit Bid Amount (as defined in the Stalking Horse Agreement) for the Acquired Assets pursuant and subject to section 363(k) of the Bankruptcy Code, provided that such bid is submitted by the Bid Deadline and otherwise satisfies all the requirements for a Qualified Bid. Any other creditor that desires to exercise its right to credit bid under section 363(k) of the Bankruptcy Code shall comply with all the Bidding Procedures set forth herein to qualify as a Qualified Bidder and submit a Qualified Bid, provided, however, that, the Purchasers shall be entitled to credit bid the amount of the Bid Protections in accordance with the terms of these Bidding Procedures. Without limiting the foregoing, and, in the case of clause (c) below, except for any credit bid by the Agent or the Purchasers to the extent of the Bid Protections, any credit bid must include (a) a description of the assets to be purchased that are not subject to a valid and perfected security interest (such Acquired Assets that are not subject to a valid and perfected security interest of the

9

bidder, the "Unencumbered Assets"); (b) cash (in addition to any other cash required by these Bidding Procedures) to be delivered at closing or the assumption of liabilities sufficient to pay the fair value of the Unencumbered Assets; and (c) a letter setting forth the legal and factual bases on which the party submitting the credit bid believes the submission of the credit bid by such party is authorized by the relevant loan documents and applicable law. For the avoidance of doubt, nothing in these Bidding Procedures shall impair or modify the rights and obligations of (i) the Agent or the Prepetition Lenders; or (ii) the Purchasers under the terms of the Stalking Horse Agreement.

# EXHIBIT 2

## (Sale Notice)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Böwe Systec, Inc., et al.,[1] | ) Case No.: 11-_____( ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## NOTICE OF SALE OF CERTAIN ASSETS FREE AND CLEAR
## OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS

1.     Pursuant to the *Order (A) Approving Bidding Procedures, and (B) Approving the Form and Manner of Notices Thereof* (the "Bidding Procedures Order") entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on _____ __, 2011, the above captioned debtors and debtors in possession (collectively, the "Debtors") are selling substantially all of their assets (the "Acquired Assets") related to the Debtors' business free and clear of all Liens, Claims and Interests to the fullest extent allowable under the Bankruptcy Code and assuming and assigning certain executory contracts and unexpired leases.[2]

2.     All documents filed with the Bankruptcy Court in connection with these chapter 11 cases and the proposed Sale, including the Bidding Procedures Order, the terms and conditions of the proposed Sale and the date, time and place of the Auction, are available by accessing the Court's docket, https://ecf.deb.uscourts.gov, or by calling the Debtors' claims and noticing agent, The Garden City Group, Inc. at 1-800-327-3664.

---

[1]    The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, are Böwe Systec, Inc. (1423), Böwe Bell + Howell Holdings, Inc. (9926), BBH, Inc. (9928), Böwe Bell + Howell Company (0100), Böwe Bell + Howell Postal Systems Company (4944), BCC Software, Inc. (3481) and Böwe Bell + Howell International Ltd. (0001).  The debtors' corporate offices are located at 760 S. Wolf Road, Wheeling, IL 60090.

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the bidding procedures approved as part of the Bidding Procedures Order.

3.     Any entity that wishes to participate in the Bidding Process must deliver (unless previously delivered) the materials set forth below (the "Required Bid Materials") to the Debtors at the following addresses:  (i) the Debtors, Bowe Bell + Howell Holdings, Inc., 760 S. Wolf Road, Wheeling, Illinois 60090 (Attn: Oliver Bialowons); (ii) counsel to the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Michael J. Merchant, Esq.); (iii) investment banker to the Debtors, Lazard Middle Markets, 11 West 42nd Street, New York, New York 10036 (Attn: Andrew Torgove); (iv) counsel to the Purchasers, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654 (Attn: David L. Eaton and James A. Stempel) (provided, however, that confidential information with respect to financing sources need not be provided to the Purchasers); and (vi) counsel to the Creditors Committee [ ], (Attn: [ ] Esq.), not later than 5:00 p.m. (prevailing Eastern Time) on **[DATE]**, 2011 (the "Bid Deadline"). The Required Bid Materials shall include:

(a)     Bid Deposit.  The cash deposit in the amount of $5,000,000 (the "Bid Deposit") by wire transfer, certified or cashier's check, which amount shall be paid to or deposited with an escrow agent to be held pursuant to an escrow agreement to be entered into by such Bidder, the Debtors and such escrow agent;

(b)     Minimum Bid Amount.  Any Qualifying Bid (other than the Stalking Horse Agreement) at the Auction must be higher and better than the offer of the Purchasers under the Stalking Horse Agreement and that is not less than the sum of (A) the Credit Bid Amount, the Canadian Cash Bid Amount and the Cure Amounts in cash; (B) the dollar value of the Break-Up Fee in cash; (C) the dollar value of the Expense Reimbursement in cash; and (D) $250,000 in cash  (the "Minimum Bid Amount"), and must provide for the immediate payment of the Break-Up Fee and Expense Reimbursement to the Purchasers from the first proceeds of the cash portion of the purchase price of such Bid;

(c)     Acquired Assets. Any Qualifying Bid must seek to acquire substantially all of the Acquired Assets;

2

(d)     Identification of Executory Contracts and Unexpired Real Property Leases.  The Bid shall identify with particularity the Debtors' executory contracts and unexpired leases with respect to which the Bidder seeks to receive an assignment and any designation rights;

(e)     Confidentiality Agreement:  Prior to receipt by a Bidder of any information (including business and financial information and access to representatives of the Debtors) from the Debtors, each Bidder will be required to execute a confidentiality agreement on terms and conditions no less favorable than those set forth in the confidentiality agreement executed by the Purchasers in connection with the Sale;

(f)     Same or Better Terms:  The Bid must be on terms that, in the Debtors' business judgment and with the Purchasers' approval, are substantially the same or better than the terms of the Stalking Horse Agreement.  A Bid must include executed transaction documents (the "Competing Transaction Documents") pursuant to which the Bidder proposes to effectuate a competing transaction (a "Competing Transaction").  A Bid shall include a copy of the Stalking Horse Agreement marked to show all changes requested by the Bidder (including those related to the Purchase Price);

(g)     Corporate Authority:  Written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Competing Transaction; provided that if the Bidder is an entity specially formed for the purpose of effectuating the Competing Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors and the Purchasers of the approval of the Competing Transaction by the equity holder(s) of such Bidder;

(h)     Adequate Assurance Information.  A Bid (other than the Stalking Horse Agreement) shall include sufficient financial or other information (the "Adequate Assurance Information") to establish adequate assurance of future performance with respect to any lease or contract to be assumed and assigned to the Bidder in connection with the proposed transaction and the Bidder's agreement that such Adequate Assurance Information can be faxed or emailed to any counterparties to such contracts or leases (or their counsel) within 24 hours of submission of the Bid; provided, however, that the counterparties to such contracts and leases must keep any information marked in the Adequate Information as confidential (the "Confidential Information") provided that the Confidential Information may be referred to and quoted in any hearing before the Bankruptcy Court held to consider the assumption and assignment of such contract or lease and further provided, however, that to the extent that any party desires to introduce the Confidential Information as an exhibit at any hearing, such party shall request that the Bankruptcy Court treat the Confidential Information as confidential, unless the Debtors and the applicable Bidder

3

have agreed that such confidential treatment by the Bankruptcy Court is not necessary. The Bid shall also identify a contact person (with relevant contact information) that counterparties to any lease or contract can contact to obtain additional Adequate Assurance Information;

(i) <u>Proof of Financial Ability to Perform</u>: A Bid must provide written evidence that the Debtors reasonably conclude demonstrates that the Bidder has the necessary financial ability to close the Competing Transaction and provide adequate assurance of future performance under all Acquired Contracts to be assumed and assigned in the Competing Transaction. Such information should include, among other things, the following:

   (i) contact names and telephone numbers for verification of financing sources;

   (ii) evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the Competing Transaction;

   (iii) the Bidder's current financial statements (audited if they exist); and

   (iv) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Bidder has the ability to close the Competing Transaction;

(j) <u>Identity</u>: All Bids must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid and the complete terms of any such participation;

(k) <u>Contingencies</u>: A Bid may not be conditioned on (i) obtaining financing or any internal approval or (ii) on the outcome or review of due diligence;

(l) <u>No Fees</u>: A Bid made by any Bidder other than the Purchasers must disclaim any right of the Bidder to receive a fee analogous to the Break-Up Fee and the Expense Reimbursement or to compensation under section 503(b) of the Bankruptcy Code for making a substantial contribution;

(m) <u>Irrevocable</u>: A Bid made by any Bidder other than the Purchasers must be irrevocable through the Auction; <u>provided</u> that if such Bid is accepted as the Highest and Best Bid or the Backup Bid (as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures; and

(n) <u>Bid Deadline</u>: Any Bid must be transmitted via email (in .pdf or similar format) to: (i) the Debtors, Böwe Bell + Howell Holdings, Inc., 760 S.

4

Wolf Road, Wheeling, Illinois 60090 (Attn: Oliver Bialowons); (ii) counsel to the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Michael J. Merchant, Esq.); (iii) investment banker to the Debtors, Lazard Middle Markets, 11 West 42nd Street, New York, New York 10036 (Attn: Andrew Torgove); (iv) counsel to the Purchasers, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654 (Attn: David L. Eaton and James A. Stempel) (provided, however, that confidential information with respect to financing sources need not be provided to the Purchasers); and (v) counsel to the Creditors Committee [ ], (Attn: [ ] Esq.), not later than 5:00 p.m. (prevailing Eastern Time) on **[DATE]**, 2011 (the "Bid Deadline").

4.      If a Qualified Bid, other than that submitted by the Purchasers, has been received by the Debtors, the Debtors may conduct an auction (the "Auction") with respect to all or some of the Assets. The Auction shall be conducted at the offices of Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 at 10:00 a.m. (prevailing Eastern Time) on **[DATE]**, 2011, or such other place and time as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids and expressed their intent to participate in the Auction as set forth above.

5.      A hearing to approve the Sale (the "Sale Hearing") to the Highest and Best Bidder will be held at __:__ _.m. (prevailing Eastern Time) on **[DATE]** unless otherwise continued pursuant to the terms of the Bidding Procedures. The Sale Hearing will be held before the Honorable [INSERT], United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, ____ Floor, Courtroom ___, Wilmington, Delaware 19801. Objections, if any, to any Sale must be filed by _____ __, 2011 at 4:00 p.m. (prevailing Eastern Time) (the "Sale Objection Deadline"). At the same time, you must also serve a copy of the objection, so as to be received by the Sale Objection Deadline, on: (i) the Debtors' counsel, Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Michael J. Merchant, Esq.); (ii)

5

the Debtors, Böwe Bell + Howell Holdings, Inc., 760 S. Wolf Road, Wheeling, Illinois 60090

(Attn: Oliver Bialowons); (iii) the counsel for the Official Committee of Unsecured Creditors,

_____ (Attn: _____); (iv) counsel to the Purchasers, Kirkland & Ellis LLP, 300 North

LaSalle Street, Chicago, Illinois 60654 (Attn: David L. Eaton and James A. Stempel); and (v) all

other parties that have requested notice in these cases.

6.      IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE

BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED BY THE MOTION

WITHOUT FURTHER NOTICE OR HEARING.


Dated: _____, 2011
          Wilmington, Delaware

                                        _____
                                        Mark D. Collins (No. 2981)
                                        Michael J. Merchant (No. 3854)
                                        Drew G. Sloan (No. 5069)
                                        RICHARDS, LAYTON & FINGER, P.A.
                                        One Rodney Square
                                        920 North King Street
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 651-7700
                                        Facsimile: (302) 651-7701

                                        *Proposed Attorneys for Debtors and*
                                        *Debtors in Possession*

6

## EXHIBIT 3

**(Sale Notice Publication Version)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **Böwe Systec, Inc., et al.,**[1] | ) | **Case No.: 11-_____( )** |
| | ) | |
| **Debtors.** | ) | **(Jointly Administered)** |
| | ) | |

## NOTICE OF SALE OF CERTAIN ASSETS FREE AND CLEAR
## OF LIENS, CLAIMS AND INTERESTS

      1.      On April 18, 2011, each of the above captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). Pursuant to the *Order (A) Approving Bidding Procedures, and (B) Approving the Form and Manner of Notices Thereof* (the "Bidding Procedures Order") entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on _____ __, 2011, the Debtors are selling substantially all of their assets (the "Assets") related to the Debtors' business free and clear of all liens, claims, encumbrances and interests to the fullest extent allowable under the Bankruptcy Code and assuming and assigning certain executory contracts and unexpired leases. Capitalized terms not otherwise defined herein shall have the meaning given to them in the bidding procedures approved as part of the Bidding Procedures Order.

      2.      All documents filed with the Bankruptcy Court in connection with these chapter 11 cases and the proposed Sale, including the Bidding Procedures Order, the terms and conditions of the proposed Sale and the date, time and place of the Auction, are available by accessing the Court's docket, https://ecf.deb.uscourts.gov, or by calling the Debtors' claims and noticing agent, The Garden City Group, Inc. at 1-800-327-3664.

      3.      Any person that wishes to participate in the bidding process must deliver (unless previously delivered) the Required Bid Materials set forth in the Bidding Procedures to the Debtors at the following addresses: (i) the Debtors, Bowe Bell + Howell Holdings, Inc., 760 S. Wolf Road, Wheeling, Illinois 60090 (Attn: Oliver Bialowons); (ii) counsel to the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Michael J. Merchant, Esq.); (iii) investment banker to the Debtors, Lazard Middle Markets, 11 West 42nd Street, New York, New York 10036 (Attn: Andrew Torgove); (iv) counsel to the Purchasers, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654 (Attn: David L. Eaton and James A. Stempel) (provided,

---

[1]    The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, are Böwe Systec, Inc. (1423), Böwe Bell + Howell Holdings, Inc. (9926), BBH, Inc. (9928), Böwe Bell + Howell Company (0100), Böwe Bell + Howell Postal Systems Company (4944), BCC Software, Inc. (3481) and Böwe Bell + Howell International Ltd. (0001). The debtors' corporate offices are located at 760 S. Wolf Road, Wheeling, IL 60090.

however, that confidential information with respect to Financing Sources need not be provided to the Purchasers); and (vi) counsel to the Creditors Committee [ ], (Attn: [ ] Esq.), not later than 5:00 p.m. (prevailing Central Time) on **[DATE]**, 2011 (the "Bid Deadline").

4.      If a Qualified Bid, other than that submitted by the Purchasers, has been received by the Debtors, the Debtors may conduct an auction (the "Auction") with respect to all or some of the Assets. The Auction shall be conducted at the offices of Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 at 10:00 a.m. (prevailing Eastern Time) on **[DATE]**, 2011, or such other place and time as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids and expressed their intent to participate in the Auction as set forth above.

5.      A hearing to approve the Sale (the "Sale Hearing") to the Highest and Best Bidder will be held at __:__ _.m. (prevailing Eastern Time) on **[DATE]**, 2011 unless otherwise continued pursuant to the terms of the Bidding Procedures. The Sale Hearing will be held before the Honorable [INSERT], United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, ___ Floor, Courtroom ___, Wilmington, Delaware 19801. Objections, if any, to any Sale must be filed by _____ __, 2011 at 4:00 p.m. (prevailing Eastern Time) (the "Sale Objection Deadline"). At the same time, you must also serve a copy of the objection, so as to be received by the Sale Objection Deadline, on: (i) the Debtors' counsel, Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Michael J. Merchant, Esq.); (ii) the Debtors, Böwe Bell + Howell Holdings, Inc., 760 S. Wolf Road, Wheeling, Illinois 60090 (Attn: Oliver Bialowons); (iii) the counsel for the Official Committee of Unsecured Creditors, _____ (Attn: _____); (iv) counsel to the Purchasers, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654 (Attn: David L. Eaton and James A. Stempel); and (v) all other parties that have requested notice in these cases.

6.      IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

<div style="border:1px solid">

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Drew G. Sloan (No. 5069)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
*Proposed Attorneys for Debtors and*
*Debtors in Possession*

</div>

# EXHIBIT 4

## (Cure Notice)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **Böwe Systec, Inc., et al.,**[1] | ) | **Case No.: 11-_____ ( )** |
| | ) | |
| **Debtors.** | ) | **(Jointly Administered)** |
| | ) | |

## NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES WHICH MAY BE ASSUMED AND ASSIGNED, PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE, IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS AND THE PROPOSED CURE AMOUNTS WITH RESPECT THERETO

PLEASE TAKE NOTICE THAT:

1.      On April 18, 2011, the above captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a), 363, and 365, and Bankruptcy Rules 2002, 6004, and 6006 for (I) Entry of an Order (A) Establishing Bidding and Auction Procedures Related to the Sale of Substantially All of the Debtors' Assets; (B) Approving Related Bid Protections; (C) Scheduling an Auction and Sale Hearing; (D) Establishing Certain Notice Procedures for Determining Cure Amounts for Executory Contracts and Executory Leases to be Assigned; and (E) Granting Certain Related Relief; and (II) Entry of an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear Of All Liens, Claims, Encumbrances and Interests; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (C) Establishing Assumption and Rejection Procedures for Certain Additional Executory Contracts and Unexpired Leases; and (D) Extending the Deadline to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to 11 U.S.C. § 365(d)(4)* [Docket No. ____] (the "Motion")[2] with the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 (the "Court").

2.      Pursuant to the Motion, the Debtors seek the entry of an order (i) establishing bidding and auction procedures in connection with the sale of substantially all of the Debtors' assets (the "Acquired Assets"); (ii) approving proposed bid protections, including a break-up fee and expense reimbursement to Contrado BBH Funding, LLC and a Canadian

---

[1]    The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, are Böwe Systec, Inc. (1423), Böwe Bell + Howell Holdings, Inc. (9926), BBH, Inc. (9928), Böwe Bell + Howell Company (0100), Böwe Bell + Howell Postal Systems Company (4944), BCC Software, Inc. (3481) and Böwe Bell + Howell International Ltd. (0001). The debtors' corporate offices are located at 760 S. Wolf Road, Wheeling, IL 60090.

[2]    Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion. For a copy of the Motion, please contact the Debtors' claims and noticing agent, The Garden City Group, Inc. at 1-800-327-3664.

corporation to be formed prior to closing (together, the "Purchasers"), in accordance with that certain Asset Purchase Agreement dated April 18, 2011 (the "Stalking Horse Agreement") for the purchase of the Acquired Assets; (iii) scheduling an auction (the "Auction") and setting a date and time for a sale hearing (the "Sale Hearing") for the sale of the Assets (the "Sale"), and approving the form and manner of notice thereof; (iv) establishing procedures (the "Cure Procedures") for the assumption and assignment of executory contracts ("Contracts") and unexpired leases ("Facility Leases"), including notice of proposed cure amounts (the "Cure Amounts"); and (v) granting certain related relief. By the Motion, the Debtors further request that at the Sale Hearing, subject to the results of the Auction, this Court enter a sale order (i) approving and authorizing the Sale; (ii) authorizing the assumption and assignment of the Contracts and Facility Leases; (iii) establishing assumption and assignment procedures and rejection procedures for the post-closing assumption or rejection of Contracts and Facility Leases; and (iv) extending the deadline to assume or reject Facility Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

3.　　　In accordance with the Cure Procedures, the Debtors hereby file this notice (the "Cure Notice") identifying (i) those Contracts and Facility Leases which may be assumed and assigned to the Purchasers, their designee(s) or such other Highest and Best Bidder, either on the Closing Date or on/or before the Designation Deadline, in connection with the Sale of the Acquired Assets and in accordance with the procedures proposed in the Motion; and (ii) the proposed cure amount (the "Cure Amount") for each Contract and Facility Lease identified on the Cure Notice.

4.　　　Further adequate assurance information for the Purchasers (the "Stalking Horse Adequate Assurance Information") is available by contacting counsel to the Purchasers, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654 (Attn: David L. Eaton and James A. Stempel).

5.　　　You have been identified as a party to a Contract or Facility Lease that the Debtors may seek to assume and/or assign. The Contract or Facility Lease with respect to which you have been identified as a non-Debtor counterparty, and the corresponding proposed Cure Amount has been set forth on **Exhibit 1** attached hereto. The Debtors' records reflect that all postpetition amounts owing under your Contract or Facility Lease have been paid and will continue to be paid until the assumption and assignment or rejection of the Contract or Facility Lease, and that other than the Cure Amount, there are no other defaults under the Contract or Facility Lease.

6.　　　Objections, if any, to the proposed Cure Amount or the Stalking Horse Adequate Assurance Information must be made in writing, filed with the Bankruptcy Court, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801, and served so as to be received by the Debtors, counsel for the Debtor, and counsel to the Purchasers on or before **4:00 p.m. (prevailing Eastern Time) on _____ ___, 2011** (the "Cure Objection Deadline"). Service should be made by mail to: (i) counsel to the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Michael J. Merchant, Esq.), (ii) the Debtors, Bowe Bell + Howell Holdings, Inc., 760 S. Wolf Road, Wheeling, Illinois 60090 (Attn: Oliver Bialowons); and (iii) counsel to the Purchasers, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654 (Attn:

2

David L. Eaton and James A. Stempel). The objection must set forth (i) the basis for the objection, (ii) the exact amount the party asserts as the Cure Amount, and (iii) sufficient documentation to support the Cure Amount alleged.

7. If an objection is timely filed, a hearing with respect to the objection will be held before The Honorable _____, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, ___ Floor, Courtroom ___, Wilmington, Delaware 19801, at the Sale Hearing or at a later hearing, as determined by the Debtors in consultation with the Court. A hearing regarding the Cure Amount, if any, may be continued at the sole discretion of the Debtors.

8. UNLESS YOU FILE AN OBJECTION TO THE PROPOSED CURE AMOUNT SET FORTH ON **EXHIBIT 1** HERETO AND SERVE SUCH OBJECTION IN ACCORDANCE WITH THE INSTRUCTIONS AND DEADLINES SET FORTH HEREIN, YOU SHALL BE FOREVER BARRED FROM OBJECTING TO THE CURE AMOUNT SET FORTH ON **EXHIBIT 1** AND FOREVER BARRED AND ESTOPPED FROM ASSERTING OR CLAIMING ANY CURE AMOUNT AGAINST THE DEBTORS, THE HIGHEST AND BEST BIDDER OR ANY OTHER ASSIGNEE OF THE RELEVANT CONTRACT OR FACILITY LEASE.

9. The presence of a contract or agreement listed on **Exhibit 1** attached hereto does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract will be assumed by the Debtors and assigned to the Highest and Best Bidder. The Debtors reserve all of their rights, claims and causes of action with respect to the contracts and agreements listed on **Exhibit 1** attached hereto.

Dated: _____, 2011
      Wilmington, Delaware

 

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Drew G. Sloan (No. 5069)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Proposed Attorneys for Debtors and
Debtors in Possession*

RLF1 3980128v. 1

# EXHIBIT 1

**(SCHEDULE OF EXECUTORY CONTRACT CURE AMOUNTS)**
**(TO BE FILED)**