# Exhibit E

**Proposed Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **Böwe Systec, Inc., et al.,**[1] | ) | **Case No.: 11-_____ ( )** |
| | ) | |
| **Debtors.** | ) | **(Jointly Administered)** |
| | ) | |
| | ) | **Re: Docket No. ___** |
| | ) | |

**ORDER (A) APPROVING PURCHASE AGREEMENT BETWEEN
DEBTORS AND HIGHEST AND BEST BIDDER; (B) AUTHORIZING
SALE OF ACQUIRED ASSETS FREE AND CLEAR OF ALL LIENS,
CLAIMS, ENCUMBRANCES AND INTERESTS; (C) AUTHORIZING
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES IN CONNECTION THEREWITH**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for the entry of an order (the "Order") (a) approving a purchase agreement (the "Purchase Agreement") between the Debtors and the Highest and Best Bidder to acquire substantially all of the Debtors' assets (collectively, the "Acquired Assets"); (b) authorizing the sale of the Acquired Assets (the "Sale") free and clear of all liens, claims, encumbrances and interests (collectively, "Liens, Claims and Interests") (c) authorizing the assumption and assignment of executory contracts and unexpired leases (collectively, the "Acquired Contracts") to the Highest and Best Bidder; (d) establishing assumption and rejection procedures for certain executory contracts and unexpired leases; (e) extending the deadline to assume or reject unexpired leases of nonresidential real property; and (f) granting related relief; it

---

[1]    The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, are Böwe Systec, Inc. (1423), Böwe Bell + Howell Holdings, Inc. (9926), BBH, Inc. (9928), Böwe Bell + Howell Company (0100), Böwe Bell + Howell Postal Systems Company (4944), BCC Software, Inc. (3481) and Böwe Bell + Howell International Ltd. (0001). The debtors' corporate offices are located at 760 S. Wolf Road, Wheeling, IL 60090.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion or the Bidding Procedures, as applicable.

appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS THAT:**[3]

## Jurisdiction, Final Order and Statutory Bases

A.        This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.        This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C. The statutory bases for the relief requested in the Motion are sections 105(a), 363(b), (f), and (m), and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9007 and 9014.

D. On April 18, 2011 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued in possession and management of their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

E. This Court entered the Bidding Procedures Order on _____, 2011 [Docket No. ___].

### Notice of the Sale, Auction and Cure Amounts

F. Actual written notice of the Sale Hearing, the Auction, the Motion, the Sale and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all known interested entities, including, but not limited to the following parties:

  i) (a) the Office of the United States Trustee for the District of Delaware; (b) each of the Debtors' creditors holding the twenty (20) largest unsecured claims on a consolidated basis; (c) the Debtors' prepetition secured lenders; (d) the Debtors' proposed post-petition lenders; (e) the Internal Revenue Service; (f) the United States Department of Justice; and (g) the Securities and Exchange Commission; (collectively, the "Notice Parties").

G. The Debtors published notice of the time and place of the proposed Auction, the time and place of the Sale Hearing and the time for filing an objection to the relief requested in the Motion relating to the Sale in the *Wall Street Journal*.

H. In accordance with the provisions of the Bidding Procedures, the Debtors have served notice upon the Contract Counterparties: (i) that the Debtors seek to assume and assign certain Acquired Contracts on the closing date of the Sale (the "Closing Date"); and (ii) of the

3

relevant Cure Amounts. The service of such notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing a cure amount for the Acquired Contracts. Each of the Contract Counterparties have had an opportunity to object to the Cure Amounts set forth in the notice.

I.       The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the sales process, including, without limitation, determination of final Cure Amounts.

J.       The Bidding Procedures Notice provided all interested parties with timely and proper notice of the Sale, the Auction and the Sale Hearing.

K.       As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate and sufficient notice of the Motion, the Auction, the Sale Hearing and the Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The Debtors also have complied with all obligations to provide notice of the Motion, the Auction, the Sale Hearing and the Sale required by the Bidding Procedures Order. The notices described above were good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing or the Sale is required.

L.       The disclosures made by the Debtors concerning the Purchase Agreement, the Auction, the Sale and the Sale Hearing were good, complete and adequate.

### Good Faith of the Highest and Best Bidder

M.       The Highest and Best Bidder is purchasing the Acquired Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protections of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, among other things,: (i) the

4

Highest and Best Bidder recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Highest and Best Bidder complied with the provisions in the Bidding Procedures Order; (iii) the Highest and Best Bidder agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Highest and Best Bidder and other agreements or arrangements entered into by the Highest and Best Bidder in connection with the Sale have been disclosed; (v) the Highest and Best Bidder has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (vi) the negotiation and execution of the Purchase Agreement was at arms-length and in good faith.

### Highest and Best Offer

N.     The Debtors conducted the Auction process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order. The Auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Acquired Assets. The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Acquired Assets.

O.     The Purchase Agreement constitutes the highest and best offer for the Acquired Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Purchase Agreement constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

P.     The Purchase Agreement represents a fair and reasonable offer to purchase the Acquired Assets under the circumstances of these chapter 11 cases. No other entity or group of

5

entities has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates than the Highest and Best Bidder.

Q.  Approval of the Motion and the Purchase Agreement and the consummation of the Sale contemplated thereby is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

R.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale.

## No Fraudulent Transfer

S.  The consideration provided by the Highest and Best Bidder pursuant to the Purchase Agreement is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

T.  The Highest and Best Bidder is not a mere continuation of the Debtors or their estates and there is no continuity between the Highest and Best Bidder and the Debtors. The Highest and Best Bidder is not holding itself out to the public as a continuation of the Debtors. The Highest and Best Bidder is not a successor to the Debtors or their estates and the Sale does not amount to a consolidation, merger or de facto merger of the Highest and Best Bidder and the Debtors.

## Validity of Transfer

U.  The Debtors have full corporate power and authority to execute and deliver the Purchase Agreement and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors to consummate the Sale contemplated by the Purchase Agreement, except as otherwise set forth in the Purchase Agreement.

RLF1 3980129v. 1

V.     The transfer of each of the Acquired Assets to the Highest and Best Bidder will be as of the Closing Date a legal, valid and effective transfer of such assets, and vests or will vest the Highest and Best Bidder with all right, title and interest of the Debtors to the Acquired Assets free and clear of all Liens, Claims and Interests accruing, arising or relating thereto any time prior to the Closing Date, except for any permitted encumbrances and assumed liabilities (the "Assumed Liabilities") under the Purchase Agreement.

W.     Other than the Assumed Liabilities, the Highest and Best Bidder shall have no obligations with respect to any liabilities of the Debtors, including, without limitation, the Excluded Liabilities, and the Debtors will release and forever discharge the Highest and Best Bidder and any of its affiliates, its successors and assigns from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the Sale, except for liabilities and obligations under the Purchase Agreement.

### Section 363(f) Is Satisfied

X.     The Highest and Best Bidder would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby if the Sale of the Acquired Assets to the Highest and Best Bidder, and the assumption, assignment and sale of the Acquired Contracts to the Highest and Best Bidder, were not free and clear of all Liens, Claims and Interests of any kind or nature whatsoever (except the Assumed Liabilities), or if the Highest and Best Bidder would, or in the future could, be liable for any such Liens, Claims and Interests.

Y.     The Debtors may sell the Acquired Assets free and clear of all Liens, Claims and Interests against the Debtors, their estates or any of the Acquired Assets (except for the Assumed Liabilities) because, in each case, one or more of the standards set forth in section

7

363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens, Claims and Interests against the Debtors, their estates or any of the Acquired Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Liens, Claims and Interests who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Liens, Claims and Interests, if any, in each instance against the Debtors, their estates or any of the Acquired Assets, attach to the cash proceeds of the Sale ultimately attributable to the Acquired Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

## Assumption and Assignment of the Acquired Contracts

Z.     The assumption and assignment of the Acquired Contracts pursuant to the terms of this Order is integral to the Purchase Agreement and is in the best interests of the Debtors and their estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

## Compelling Circumstances for an Immediate Sale

AA.     To maximize the value of the Acquired Assets and preserve the viability of the business to which the Acquired Assets relate, and to reduce the amount of postpetition debtor-in-possession financing borne by the Debtors, it is essential that the closing of the Sale occur within the time constraints set forth in the Purchase Agreement. Time is of the essence in consummating the Sale.

BB.     Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the purchase price under the Purchase Agreement, the Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

CC.     The consummation of the Sale is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

## General Provisions

1.     The relief requested in the Motion is granted and approved, and the Sale contemplated thereby and by the Purchase Agreement is approved as set forth in this Order.

2.     This Court's findings of fact and conclusions of law, set forth in the Bidding Procedures Order, are incorporated herein by reference.

3.     All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to this Court at the Sale Hearing or by stipulation filed with this Court, and all reservations of rights included therein, are hereby overruled on the merits or the interests of such objections have been otherwise satisfied or adequately provided for.

## Approval of the Purchase Agreement

4.     The Purchase Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

5.     Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale

9

pursuant to and in accordance with the terms and conditions of the Purchase Agreement, (b) close the Sale as contemplated in the Purchase Agreement and this Order and (c) execute and deliver, perform under, consummate, implement and close fully the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement and such other ancillary documents.

6.      This Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in any Debtor, all holders of any claim(s) (whether known or unknown) against any Debtor, any holders of Liens, Claims and Interests against or on all or any portion of the Acquired Assets, all Contract Counterparties, the Highest and Best Bidder and all successors and assigns of the Highest and Best Bidder, and any trustees, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases.      This Order and the Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors, the Highest and Best Bidder and their respective successors and assigns.

**Transfer of the Acquired Assets**

7.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets on the Closing Date.  Such Acquired Assets shall be transferred to the Highest and Best Bidder "as is where is" with all faults in accordance with the Purchase Agreement upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such Acquired Assets and, upon the Debtors' receipt of the purchase price, shall be free and clear of all Liens, Claims and Interests except any Assumed Liabilities.  Upon the closing of the Sale,

10

the Highest and Best Bidder shall take title to and possession of the Acquired Assets subject only to any Assumed Liabilities. Pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Acquired Assets, including but not limited to the Acquired Contracts, shall be free and clear of (a) any and all Liens, Claims and Interests except for the Assumed Liabilities; and (b) any and all claims including, without limitation, any and all claims pursuant to any successor or successor-in-interest liability theory; provided that the Highest and Best Bidder shall not be relieved of liability with respect to the Assumed Liabilities. All Liens, Claims and Interests shall attach solely to the proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Acquired Assets, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

8.     Except as expressly permitted or otherwise specifically provided by the Purchase Agreement or this Order, all entities holding Liens, Claims and Interests or interests in all or any portion of the Acquired Assets (other than the Assumed Liabilities) arising under or out of, in connection with, or in any way relating to the Debtors, the Acquired Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Acquired Assets to the Highest and Best Bidder, hereby are forever barred, estopped and permanently enjoined from asserting against the Highest and Best Bidder or its successors or assigns, their property or the Acquired Assets, such entities' Liens, Claims and Interests in and to the Acquired Assets. On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release Liens, Claims and Interests on the Acquired Assets, if any, as provided for herein, as such Liens, Claims and Interests may have been recorded or may otherwise exist. The transactions authorized herein shall be of full force and effect, regardless of any Debtor's lack of good standing in any

jurisdiction in which such Debtor is formed or authorized to transact business. Upon consummation of the Sale, the Debtors are hereby authorized and directed, and the Highest and Best Bidder is hereby authorized, to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Order under section 363 and the related provisions of the Bankruptcy Code.

9. All entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to the Highest and Best Bidder in accordance with the terms of the Purchase Agreement and this Order.

10. All entities that are in possession of some or all of the Acquired Assets on the Closing Date are directed to surrender possession of such Acquired Assets to the Highest and Best Bidder or its assignee at the closing of the Sale.

11. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the Liens, Claims and Interests of record.

12. This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing

entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

13.     Notwithstanding anything to the contrary in this Order or the Purchase Agreement, to the extent any of the Acquired Assets consist of an interest in a consumer credit transaction subject to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations), and if such interest is purchased under the Purchase Agreement, the Highest and Best Bidder shall remain subject to the claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as the Highest and Best Bidder would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under Bankruptcy Code § 363, as provided for in Bankruptcy Code § 363(o).

### Acquired Contracts

14.     Upon the closing of the Sale, the Debtors are authorized and directed to assume and assign each of the Acquired Contracts to the Highest and Best Bidder free and clear of all Liens, Claims and Interests, as described herein. The payment of the applicable Cure Amounts (if any) by the Debtors or the Highest and Best Bidder, as applicable, shall (a) effect a cure of all defaults existing thereunder as of the Closing Date and (b) compensate for any actual pecuniary loss to such Contract Counterparty resulting from such default. The Highest and Best Bidder shall then have assumed the Acquired Contracts and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such Acquired Contracts shall not be a default thereunder. After the payment of the relevant Cure Amounts by the Highest and Best Bidder or the Debtors, as applicable, neither the Debtors nor the Highest and Best Bidder shall have any further liabilities to the Contract Counterparties other than the Highest and Best

13

Bidder's obligations under the Acquired Contracts that accrue and become due and payable on or after the Closing Date.

15.     Any provisions in any Acquired Contract that prohibit or condition the assignment of such Acquired Contract or allow the party to such Acquired Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Acquired Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Highest and Best Bidder of the Acquired Contracts have been satisfied. Upon the closing of the Sale, in accordance with sections 363 and 365 of the Bankruptcy Code, the Highest and Best Bidder shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Acquired Contracts.

16.     Upon the closing of the Sale and the Highest and Best Bidder's or the Debtors' payment, as applicable, of the relevant Cure Amounts, if any, the Highest and Best Bidder shall be deemed to be substituted for the Debtors as a party to the applicable Acquired Contracts and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Acquired Contracts.

17.     Upon the payment of the applicable Cure Amount, if any, the Acquired Contracts will remain in full force and effect, and no default shall exist under the Acquired Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

18.     The Highest and Best Bidder has provided adequate assurance of future performance under the relevant Acquired Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

19.     There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Highest and Best Bidder or the Debtors as a result of the assumption and assignment of the Acquired Contracts.

20.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Debtors or the Highest and Best Bidder any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Acquired Contracts existing as of the Closing Date or arising by reason of the closing of the Sale.

21.     Pursuant to Section 2.8 of the Purchase Agreement, the Highest and Best Bidder shall provide written notice to the Debtors (and the Debtors shall provide such notice to the landlords of the affected premises, which notice the Sellers agree to provide) no later than the two hundred and tenth (210th) day after the Petition Date, indicating whether each Facility Lease designated on Schedules 2.8(a)(i) (the "Designated Remaining Leases") shall either be assumed by the Debtors and assigned to the applicable Purchaser on the Assignment Effective Date, or rejected by the Debtors on the Rejection Effective Date, in either case subject to the procedures outlined in Sections 2.8(a)(iv) and 2.8(a)(v) of the Purchase Agreement.  In addition, the Highest and Best Bidder shall provide written notice to the Debtors (and the Debtors shall provide such notice to the counterparties to the affected Contract, which notice the Sellers agree to provide) no later than the two hundred and tenth (210th) day after the Closing Date, indicating whether each Contract designated on Schedules 2.8(a)(ii) (the "Designated Remaining Executory Contracts"

15

and, together with the Designated Remaining Leases, the "Designated Remaining Contracts") shall either be assumed by the Debtors and assigned to the applicable Purchaser on the Assignment Effective Date, or rejected by the Debtors on the Rejection Effective Date, in either case subject to the procedures outlined in Sections 2.8(a)(iv) and 2.8(a)(v) of the Purchase Agreement. Finally, the Highest and Best Bidder shall provide written notice to the Debtors (and the Debtors shall provide such notice to the counterparties to the affected Contract) no later than the two hundred and tenth (210th) day after the Closing Date, indicating whether each asset designated on Schedules 2.8(a)(iii) (the "Designated Remaining Executory Assets") shall be either be assigned to the applicable Purchaser as of the Assignment Effective Date or retained by the Debtors on the Rejection Effective Date, in each case, without further Order of the Bankruptcy Court or the Canadian Court.

22. The Debtors shall not reject or seek to reject any Designated Remaining Executory Contract or Designated Remaining Asset prior to the two hundred and tenth (210th) day after the Closing Date and shall not reject or seek to reject any Designated Remaining Lease prior to the two hundred and tenth (210th) day after the Petition Date unless otherwise agreed in writing by the Highest and Best Bidder. As soon as practicable after receiving written notice from the Highest and Best Bidder to assume and assign a Designated Remaining Contract, the Debtors shall use commercially reasonable efforts to assume and assign to the applicable Purchaser all Designated Remaining Contracts in such notice pursuant to section 365 of the Bankruptcy Code. Any applicable cure cost for the assumption and assignment of a Designated Remaining Contract shall be paid by the Highest and Best Bidder in accordance with the Purchase Agreement. In accordance with paragraph 2.8(c) of the Purchase Agreement, the Highest and Best Bidder shall (i) pay, and shall be solely responsible

for, any and all liabilities associated with each Designated Remaining Contract and each Designated Remaining Asset, provided, however, subject to the Highest and Best Bidder's obligations and limitations under Section 2.8(b) of the Purchase Agreement, the Highest and Best Bidder shall not be responsible for any Liabilities relating to or arising out of such Designated Remaining Contracts and such Designated Remaining Assets as a result of (A) any breach by the Debtors of such Designated Remaining Contracts and Designated Remaining Assets occurring on or prior to the Closing Date or from the Closing Date through the Assignment Effective Date or the Rejection Effective Date (provided that such breach is not caused by the breach by the Highest and Best Bidder of its obligations under Section 2.8 of the Purchase Agreement), (B) any violation of Law, breach of warranty, tort or infringement, in each case by the Debtors, occurring on or prior to the Closing Date or from the Closing Date through the Assignment Effective Date or the Rejection Effective Date (provided that such violation is not caused by any act or omission of the Highest and Best Bidder after the Closing), or (C) any charge, complaint, action, suit, proceeding, hearing, investigation, Claim or demand against the Debtors (provided that such matters do not arise from the act or omission of the Highest and Best Bidder after the Closing), and (ii) pay to the Debtors an amount equal to the costs and expenses required to be paid by the Debtors after the Closing in performing obligations under the Designated Remaining Contracts and the Designated Remaining Assets, if any, through the Assignment Effective Date or Rejection Effective Date, as the case may be, as and when such amounts become due. In addition, the Highest and Best Bidder shall perform, or shall cause to be performed, any and all obligations of the Debtors under each Designated Remaining Contract and each Designated Remaining Asset relating to the period from and after the Closing until such each Designated Remaining Contract and each Designated Remaining Asset has been, in

17

accordance with Section 2.8 of the Purchase Agreement, (i) assumed and assigned to the Highest and Best Bidder or (ii) rejected by the applicable Seller, as applicable. On the date any Designated Remaining Contract is assumed and assigned to the applicable Purchaser, such Designated Remaining Contract will be deemed an Acquired Contract, for all purposes hereunder and under the Purchase Agreement.

23.     In accordance with Section 2.8 of the Purchase Agreement, with respect to any Designated Remaining Contract and Designated Remaining Asset, by or on the second (2nd) Business Day after the date on which the Highest and Best Bidder provides written notice(s) to the Debtors, the Debtors shall take all actions reasonably necessary to assume and assign any Designated Remaining Contract to the Highest and Best Bidder pursuant to section 365 of the Bankruptcy Code (provided that any applicable cure cost shall be satisfied in accordance with Section 2.7 of the Purchase Agreement) and assign any Designated Remaining Contract or Designated Remaining Asset to the Highest and Best Bidder, in each case, as set forth in the Highest and Best Bidder's notice(s).

### Assumption and Assignment Procedures

24.     In the case of any Contract and Facility Lease that the Debtors seek to assume and assign after the Closing Date pursuant to Section 2.8 of the Purchase Agreement, the Debtors shall file with the Court a written notice of the Debtors' intent to assume and assign any Contract or Facility Lease (an "Assumption Notice"), substantially in the form attached hereto as **Exhibit 1**, and will serve such Assumption Notice via overnight delivery on (a) each counter party or landlord to any contract or lease to be assume or assigned by the Debtors, (b) any other interested parties with respect to such contract or lease, (c) the U.S. Trustee, (d) counsel to the Committee, if any, (e) counsel to the Highest and Best Bidder, (f) counsel to the Agent, and (g) counsel to the proposed assignee, if applicable (the "Proposed Assignee").

18

25. The Assumption Notice will set forth the following information, to the best of the Debtors' knowledge: (a) the street address of the real property that is the subject of any Facility Lease that the Debtors seek to assume and assign or a description of the Contract that the Debtors seek to assume and assign, (b) the name and address of the affected counterparties or landlords (and their counsel, if known), (c) a description of the deadlines and procedures for filing objections to the Assumption Notice (as set forth below), (d) the name of the Proposed Assignee, (e) if the Proposed Assignee is not the Purchaser, information with respect to the Proposed Assignee's proposed adequate assurance of future performance and information regarding how a non-debtor party to a Contract or Facility Lease may obtain additional information regarding the Proposed Assignee, and (f) the proposed order approving the assumption and assignment (the "Assumption Order").

26. Should a party in interest object to the proposed assumption and assignment by the Debtors of a Contract or Facility Lease, such party must file and serve a written objection so that such objection is filed with this Court and actually received by the Debtors and the Assumption Notice Parties (as defined in and set forth in the Assumption Notice) no later than ten (10) days after the date that the Debtors served the Assumption Notice for the Contract or Facility Lease at issue.

27. If no timely objection is filed and served with respect to the Assumption Notice, the Debtors shall file with the Court a certificate of no objection with the Assumption Order. The Assumption Order shall provide, *inter alia*, (a) that the assumption and assignment of such Contract or Facility Lease is approved, final and effective, pursuant to section 365 of the Bankruptcy Code as of the date of the Assumption Order and (b) the Proposed Assignee

provided adequate assurance of future performance under the applicable Contract or Facility Lease in accordance with section 365(f)(2)(B), and, if applicable, section 365(b)(3).

28.     If a timely objection is properly filed and served on the Assumption Notice Parties in the manner specified above, unless the parties agree otherwise in writing, a hearing will be scheduled to consider that objection, provided, however, that the Highest and Best Bidder may, in its sole and absolute discretion, provide written notice to the Debtors that the Debtors must instead reject the applicable Contract or Facility Lease that is subject to an objection at any time after such objection is filed and the Debtors shall move within two (2) Business Days of receipt of such written notice to reject the applicable Contract or Facility Lease. If that objection is overruled by the Court or withdrawn, the assumption and assignment of the affected Contract or Facility Lease shall be deemed effective as of the date of the Assumption Order.

## **Rejection Procedures**

29.     As set forth more fully in Section 2.8 of the Purchase Agreement, in the case of any Contract or Facility Lease that the Highest and Best Bidder does not want to assume and assign, within two (2) Business Days following delivery of a notification by the Highest and Best Bidder that a Contract or Facility Lease is designated for rejection, the Debtors shall move to reject such Contract or Facility Lease. In addition, in the event that the Highest and Best Bidder has not provided a written notice to assume and assign or reject any Designated Remaining Contract at least ten (10) Business Days prior to the 210th day after (a) the Petition Date with respect to any Designated Remaining Leases and (b) the Closing Date with respect to any Designated Remaining Executory Contracts, then the Debtors may move to reject such Designated Remaining Contracts as of the 210th day after (i) the Petition Date with respect to any Designated Remaining Leases and (ii) the Closing Date with respect to any Designated Remaining Executory Contracts, and none of the Debtors shall have any obligation to assign any

20

such Designated Remaining Contract to the Highest and Best Bidder. Accordingly, the Debtors will file with the Court a written notice of the Debtors' intent to reject any contract or lease (the "Rejection Notice"), substantially in the form attached hereto as **Exhibit 2**, and will serve the Rejection Notice via overnight delivery service upon the following parties (collectively, the "Rejection Notice Parties"): (a) the counterparties or landlords affected by the Rejection Notice and any parties to any subleases, (b) the U.S. Trustee, (c) counsel to the Committee, (d) counsel to the Highest and Best Bidder, (e) counsel to the Agent, and (f) any other interested parties with respect to such contract or lease. The affected contract or lease which is the subject of a Rejection Notice shall be deemed to be subject to a motion to reject such contract or lease pursuant to section 365 of the Bankruptcy Code.

30. The Rejection Notice will set forth the following information, to the best of the Debtors' knowledge: (a) the street address of the real property that is the subject of any Facility Lease that the Debtors seek to reject or a description of the Contract that the Debtors seek to reject, (b) the name and address of the affected counterparties or landlords (and their counsel, if known), (c) a description of the deadlines and procedures for filing objections to the Rejection Notice (as set forth below), and (d) the proposed order approving the rejection (the "Rejection Order").

31. Should a party in interest object to the proposed rejection by the Debtors of a Contract or Facility Lease, such party must file and serve a written objection so that such objection is filed with this Court and actually received by the Debtors and the Rejection Notice Parties as set forth in the Rejection Notice no later than ten (10) days after the date that the Debtors served the Rejection Notice to reject the Contract or Facility Lease at issue.

32.     If no timely objection is filed and served with respect to the rejection of a contract or lease, the Debtor shall file with the Court a certificate of no objection with the Rejection Order.  The Rejection Order shall provide, inter alia, that the rejection of such contract or lease shall become effective on the later of (a) ten (10) days from the date the applicable Rejection Notice was served on the affected counterparty or landlord (notwithstanding any extension of the objection deadline beyond such date pursuant to Bankruptcy Rule 9006), or (b) if a Facility Lease, the date that the Debtor vacated the premises, evidenced by actions such as turning over the keys or "key codes" to the affected landlord.

33.     If a timely objection is properly filed and served on the Rejection Notice Parties as specified above, unless the parties agree otherwise in writing, a hearing will be scheduled to consider that objection.  If that objection is overruled by the Court or withdrawn, the rejection of the affected Contract or Facility Lease shall be deemed effective on the later of (i) ten (10) days from the date the applicable Rejection Notice was served on the affected counterparty or landlord (notwithstanding any extension of the objection deadline beyond such date pursuant to Bankruptcy Rule 9006), or (ii) if a Facility Lease, the date that the Debtors vacated the premises to the affected landlord, evidenced by actions such as turning over keys or "key codes" to the affected landlord.

34.     In connection with the rejection of a Facility Lease, if the Debtors have deposited monies with a lessor as a security deposit or other arrangement, such lessor may not set off or recoup or otherwise use such deposit without the prior approval of the Court.

35.     In connection with the rejection of a Facility Lease, with respect to any personal property of the Debtors located at any of the premises subject to any Rejection Notice, the Debtors shall (subject to their ability to abandon such property in accordance with this

Paragraph) remove such property prior to the later of (a) the expiration of the period within which a party must file and serve a written objection to the Rejection Notice, and (b) the date of rejection of the underlying Facility Lease. If the Debtors determine that the property at a particular location has no value or the cost of removing the property exceeds the value of such property, the Debtors shall generally describe the property in the Rejection Notice and their intent to abandon such property. Absent a timely objection, the property will be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, where is, effective as of the date of the rejection of the underlying Facility Lease. Upon abandonment, the landlord may dispose of such property without further notice or court order and free of liability for such action. The right of any party in interest to assert a claim against the Debtors' estate for costs associated with such abandoned property is fully preserved, provided that such claim must be made in accordance with the procedures established below for the filing of proofs of claim. The Debtors' rights to contest any such claims are fully preserved.

36.    If an affected landlord or counterparty or any other party in interest (the "Rejection Claimant") asserts a claim or claims against the Debtors arising from the rejection of a Contract or Facility Lease, such Rejection Claimant shall submit a proof of claim to BBH Bankruptcy Administration, c/o The Garden City Group, Inc., PO Box 9749, Dublin, OH 43017-5649 on or before the later of (i) the date that is 30 days after the effective date of rejection of the Contract or Facility Lease, or (ii) the bar date established by this Court for filing proofs of claim against the Debtors. If a Rejection Claimant does not timely file such proof of claim, such claimant shall be forever barred from asserting a claim for such rejection damages.

### Extension Pursuant to Section 365(d)(4)

37.    The Debtors' time to elect to assume or reject the Facility Leases, which currently expires on the date that is 120 days from the Petition Date is hereby extended, pursuant to section

23

365(d)(4) of the Bankruptcy Code, through the date which is 210 days from the Petition Date. Such an extension is without prejudice to the rights of the Debtors to seek further extensions of the time to assume or reject the Facility Leases with the consent of the affected lessors as contemplated by section 365(d)(4)(B)(ii) of the Bankruptcy Code.

### Other Provisions

38.     Effective upon the Closing Date and except as otherwise provided by stipulations filed with or announced to this Court with respect to a specific matter, all entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Highest and Best Bidder, its successors and assigns, or the Acquired Assets, with respect to any (a) Claims or Interests arising under, out of, in connection with or in any way relating to the Debtors, the Highest and Best Bidder, the Acquired Assets, or the operation of the Acquired Assets prior to the closing of the Sale, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Highest and Best Bidder, its successors or assigns, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Highest and Best Bidder, its successors, assets or properties; (iii) creating, perfecting or enforcing any Claims or Interests against the Highest and Best Bidder, its successors or assigns, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Highest and Best Bidder or its successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking,

24

terminating or failing or refusing to issue or renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets.

39. Except for the Assumed Liabilities or as otherwise expressly set forth in this Order or the Purchase Agreement, the Highest and Best Bidder shall not have any liability or other obligation of the Debtors arising under or related to any of the Acquired Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Purchase Agreement, the Highest and Best Bidder shall not be liable for any claims against the Debtors or any of its predecessors or affiliates.

40. The Highest and Best Bidder is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Highest and Best Bidder shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except as otherwise expressly provided in the Purchase Agreement, and the Sale Motion contains sufficient notice of such limitation in accordance with Local Rule 6004-1. Except to the extent the Highest and Best Bidder assumes the Assumed Liabilities pursuant to the Purchase Agreement, neither the purchase of the Acquired Assets by the Highest and Best Bidder or its affiliates, nor the fact that the Highest and Best Bidder or its affiliates are using any of the Acquired Assets previously operated by the Debtors, will cause the Highest and Best Bidder or any of their affiliates to be deemed a successor in any respect to the Debtors' businesses within the meaning of (a) any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, antitrust, environmental, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations),

(b) under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, (c) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements or other similar agreement to which the Debtors are a party, (e) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtors, (f) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, COBRA, or the Worker Adjustment and Retraining Notification Act, (g) environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq., (h) any liabilities, debts or obligations of or required to be paid by, the Debtors for any taxes of any kind for any period, (i) any liabilities, debts, commitments or obligations for any taxes relating to the operation of the Acquired Assets prior to Closing, and (ix) any litigation.

26

41.     The Highest and Best Bidder has given substantial consideration under the Purchase Agreement for the benefit of the holders of any Liens, Claims, Encumbrances or Interests.  The consideration given by the Highest and Best Bidder shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Highest and Best Bidder, which releases shall be deemed to have been given in favor of the Highest and Best Bidder by all holders of Liens, Claims and Interests against or interests in the Debtors or any of the Acquired Assets.

42.     The Sale contemplated by the Purchase Agreement is undertaken by the Highest and Best Bidder without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Acquired Contracts), unless such authorization and consummation of such Sale is duly stayed pending such appeal.  The Highest and Best Bidder is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

43.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these chapter 11 cases, (b) any subsequent chapter 7 case into which any such chapter 11 case may be converted or (c) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.

44.     Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Order shall be effective immediately upon entry and the Debtors and the Highest and Best Bidder are authorized to close the Sale immediately upon entry of this Order.

27

45. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

46. There are no brokers involved in consummating the Sale and no brokers' commissions are due.

47. The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Purchase Agreement be authorized and approved in its entirety.

48. The provisions of this Order are non-severable and mutually dependent.

49. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

50. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

51. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall govern.

52. To the extent there are any inconsistencies between the terms of this Order and the Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

53. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

54. The Court requests the aid and recognition of any court or any judicial, regulatory or administrative body in any province or territory of Canada and the Federal Court of Canada

RLF1 3980129v. 1

and any judicial, regulatory or administrative tribunal or other court constituted pursuant to the Parliament of Canada or the legislature of any province and any court or any judicial, regulatory or administrative body of any other nation or state to act in aid of and to be complementary to this Court in carrying out the terms of this Order.

55.     This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Highest and Best Bidder, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

Date: _____, 2011                    _____
                                          United States Bankruptcy Judge

RLF1 3980129v. 1

# EXHIBIT 1

**(Assumption Notice)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Böwe Systec, Inc., et al.,[1] | Case No.: 11-_____ ( ) |
| Debtors. | (Jointly Administered) |
| | Objection Deadline: _____ ___, 2011 at 4:00 p.m. (ET)<br>Hearing Date: Only if Objections Filed |

## NOTICE OF ASSUMPTION AND ASSIGNMENT OF
## UNEXPIRED LEASE OR EXECUTORY CONTRACT

Re:    INSERT INFORMATION (the "Lease"/or the "Contract")

**PLEASE TAKE NOTICE** that, on _____ ____, 2011, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered the *Order (A) Approving Purchase Agreement between the Debtors and the Highest and Best Bidder; (B) Authorizing the Sale of the Transferred Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (C) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith* [Docket No. ____] (the "Order").

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the terms of the Order, the Debtors hereby provide this "Notice of Assumption and Assignment of Unexpired Lease or Executory Contract" (the "Notice") of their intent to assume and assign the above-referenced [Lease/Contract]. The Debtors intend to assume and assign the [Lease/Contract] to [INSERT NAME] (the "Assignee"). The Assignee has the financial wherewithal to meet all future obligations under the [Lease/Contract], as evidenced by the documentation previously provided,

---

[1]    The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, are Böwe Systec, Inc. (1423), Böwe Bell + Howell Holdings, Inc. (9926), BBH, Inc. (9928), Böwe Bell + Howell Company (0100), Böwe Bell + Howell Postal Systems Company (4944), BCC Software, Inc. (3481) and Böwe Bell + Howell International Ltd. (0001). The debtors' corporate offices are located at 760 S. Wolf Road, Wheeling, IL 60090.

thereby demonstrating that it has the ability to comply with the requirements of adequate assurance of future performance under section 365(f) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") including, without limitation, section 365(f)(2)(B) of the Bankruptcy Code and, if applicable, section 365(b)(3) of the Bankruptcy Code. Contact details for the Assignee's counsel are as follows: Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654 (Attn: David L. Eaton , Esq. and James A. Stempel, Esq.).

**PLEASE TAKE FURTHER NOTICE** that, should you object to the Debtors' assumption and assignment of the above-referenced [Lease/Contract], you must file and serve a written objection so that such objection is filed with the Bankruptcy Court and served via overnight delivery no later than ten (10) days after the date that the Debtors served this Notice (the "Assumption Objection Deadline") on the following parties: (i) counsel to the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq.); (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, (Attn: _____, Esq.); (iii) counsel to the Official Committee of Unsecured Creditors, (a) [INSERT NAME AND ADDRESS] (Attn: [INSERT NAME], Esq.) and (b) [INSERT NAME AND ADDRESS] (Attn: [INSERT NAME], Esq.); (iv) counsel to the Assignee, (a) Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654 (Attn: David L. Eaton , Esq. and James A. Stempel, Esq.) and (b) [INSERT NAME AND ADDRESS] (Attn: [INSERT NAME], Esq.); (v) the counterparties or landlords and their counsel (if known) to the [Lease/Contract]; and (vi) any other interested parties with respect to the [Lease/Contract].

**PLEASE TAKE FURTHER NOTICE** that, cure amounts under section 365(b) of the Bankruptcy Code were or shall be established pursuant to paragraph ___ and paragraph ___ of the Order.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Order, if a timely objection is properly filed and served in accordance with the procedures set forth above, and the Debtors, the Assignee and the objecting party cannot consensually resolve the issue(s) raised in the objection, a hearing will be scheduled to consider that objection. If the objection is overruled by the Court or withdrawn, the assumption and assignment of the [Lease/Contract] shall be deemed effective as of the date of the Assumption Order (as defined below).

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Order, if no objection is filed and served in accordance with the above procedures, the Debtors will file with the Bankruptcy Court a certificate of no objection with the proposed form of order (the "Assumption Order"), attached hereto as Annex I, that provides, inter alia, (i) that the assumption and assignment of the [Lease/Contract] is approved, final and effective as of the date of entry of the Assumption Order; (ii) the Assignee provided adequate assurance of future performance under the Lease; and (iii) the cure amount pursuant to section 365(f)(2)(B) and, if applicable, section 365(b)(3), was or shall be established pursuant to paragraph ___ and paragraph ___ of the Order.

Dated: _____, 2011
   Wilmington, Delaware

          _____
          Mark D. Collins (No. 2981)
          Michael J. Merchant (No. 3854)
          Drew G. Sloan (No. 5069)
          RICHARDS, LAYTON & FINGER, P.A.
          One Rodney Square
          920 North King Street
          Wilmington, Delaware 19801
          Telephone:  (302) 651-7700
          Facsimile:  (302) 651-7701

          *Proposed Attorneys for Debtors and*
          *Debtors in Possession*

4

**ANNEX I**

# EXHIBIT 2

## (Rejection Notice)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **Böwe Systec, Inc., et al.,**[1] | **Case No.: 11-_____ ( )** |
| **Debtors.** | **(Jointly Administered)** |
| | **Objection Deadline: _____ ___, 2011 at 4:00 p.m. (ET)** |
| | **Hearing Date: Only if Objections Filed** |

## NOTICE OF REJECTION OF UNEXPIRED
## LEASE OR EXECUTORY CONTRACT

Re:     INSERT INFORMATION (the "Lease"/or the "Contract")

**PLEASE TAKE NOTICE** that on _____ ___, 2011 the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered the *Order (A) Approving Purchase Agreement between the Debtors and the Highest and Best Bidder; (B) Authorizing the Sale of the Transferred Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (C) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith* [Docket No. ___] (the "Order"), which, inter alia, approved certain procedures (the "Rejection Procedures") for the rejection of executory contracts and unexpired leases of nonresidential real property.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Rejection Procedures, the Debtors hereby provide this "Notice of Rejection of Unexpired Lease or Executory Contract" (the "Notice") of their intent to reject the above-referenced [Lease/Contract]. Pursuant to the terms of the Order, the [Lease/Contract] shall be deemed

---

[1]     The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, are Böwe Systec, Inc. (1423), Böwe Bell + Howell Holdings, Inc. (9926), BBH, Inc. (9928), Böwe Bell + Howell Company (0100), Böwe Bell + Howell Postal Systems Company (4944), BCC Software, Inc. (3481) and Böwe Bell + Howell International Ltd. (0001). The debtors' corporate offices are located at 760 S. Wolf Road, Wheeling, IL 60090.

rejected effective (the "Effective Date of Rejection") on the later of (i) the date that is ten (10) days from the date this Notice is served (notwithstanding any extension of the objection deadline beyond such date pursuant to Rule 9006 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") or (ii) if a real property lease, the date that the Debtors vacated the premises, evidenced by actions such as turning over the keys or "key codes" to the affected landlord, provided, however, that in the event of an objection by a party other than an affected counterparty, such date as is ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that, should you object to the Debtors' rejection of the above-referenced [Lease/Contract], you must <u>file and serve</u> a written objection so that such objection is filed with the Court and served via overnight delivery on the parties identified on **Exhibit 1** no later than ten (10) days after the date that the Debtors served this Notice.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Order, if no objection is filed and served in accordance with the above procedures, the Debtors will file with the Court a certificate of no objection with the proposed form of order, attached hereto as **Exhibit 2**, which provides, inter alia, that the rejection of such [Lease/Contract] shall become effective as of the later of (i) ten (10) days from the date the applicable Rejection Notice is served on the affected counterparty (notwithstanding any extension of the objection deadline beyond such date pursuant to Bankruptcy Rule 9006) or (ii) if a real property lease, the date that the Debtors vacated the premises, evidenced by actions such as turning over the keys or "key codes" to the affected landlord.

**PLEASE TAKE FURTHER NOTICE** that, if an objection is properly filed and timely served in accordance with the above, unless the parties agree otherwise in writing, a hearing will be scheduled to consider such objection. If that objection is overruled by the Court or

2

withdrawn, the rejection of the [Lease/Contract] shall be deemed effective on the later of (i) the date that is ten (10) days from the date this Notice is served (notwithstanding any extension of the objection deadline beyond such date pursuant to Bankruptcy Rule 9006) or (ii) if a real property lease, the date that the Debtors vacated the premises, evidenced by actions such as turning over the keys or "key codes" to the affected landlord, provided, however, that if the objection is filed and served by a party other than the affected counterparty then the rejection of the affected [Lease/Contract] shall be deemed effective on such date as is ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Order, if the Debtors have deposited monies with the counterparty pursuant to a security deposit or otherwise, the counterparty holding such monies may not set-off or recoup or otherwise use such monies without prior approval of the Court.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Order, should you have a claim for any damages as a result of the Debtors' rejection of the above-referenced [Lease/Contract], you must submit a proof of claim to BBH Bankruptcy Administration, c/o The Garden City Group, Inc., PO Box 9749, Dublin, OH 43017-5649, on or before the later of (i) the date that is 30 days after the entry of an order of the Court approving the rejection of the [Lease/Contract] or (ii) the bar date established for filing proofs of claim against the Debtors in the above-captioned chapter 11 cases. If you do not properly and timely file such proof of claim, you shall be forever barred from asserting any claims for such rejection damages.

3

Dated: _____, 2011
      Wilmington, Delaware

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Drew G. Sloan (No. 5069)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Proposed Attorneys for Debtors and
Debtors in Possession*

4

# EXHIBIT 1

**(Parties Required to be Served with Objections to Rejection Notice)**

**Counsel to the Debtors**

> Richards, Layton & Finger, P.A.
> One Rodney Square
> 920 N. King Street
> Wilmington, Delaware 19801
> Attn: Mark D. Collins, Esq. and Michael J. Merchant, Esq.

**United States Trustee**

> Office of the United States Trustee for the District of Delaware
> 844 King Street, Suite 2207
> Lockbox 35
> Wilmington, Delaware 19801
> Attn: [INSERT NAME], Esq.

**Counsel to the Official Committee of Unsecured Creditors**

> [INSERT NAME AND ADDRESS]
> Attn: [INSERT NAME], Esq.
> [INSERT NAME AND ADDRESS]
> Attn: [INSERT NAME], Esq.

**Counsel to [INSERT NAME]**

> Kirkland & Ellis LLP
> 300 North LaSalle Street
> Chicago, Illinois 60654
> Attn: David L. Eaton , Esq. and James A. Stempel, Esq.

**Additional Parties**

1.   The counterparties, and their counsel (if known), affected by the Rejection Notice.

2.   Any other interested parties with respect to the [Lease/Contract].