# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  | ) |  |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
|  | ) |  |
| **Böwe Systec, Inc., et al.,[1]** | ) | **Case No. 11-_____ (_____)** |
|  | ) |  |
| **Debtors.** | ) | **Joint Administration Requested** |
|  | ) |  |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby file this motion (the "Motion") for the entry of interim and final orders, substantially in the forms attached hereto as Exhibit A and Exhibit B, respectively, prohibiting utility providers from altering or discontinuing service on account of prepetition invoices and establishing procedures for determining adequate assurance of payment for future utility services. In support of this Motion, the Debtors rely on (i) the *Declaration of Michael Wilhelm in Support of First Day Motions* (the "Wilhelm Declaration") and (ii) the *Declaration of Oliver Bialowons in Support of First Day Motions* (the "Bialowons Declaration" and, together with the Wilhelm Declaration, the "First Day Declarations"), each filed contemporaneously herewith, and further respectfully state as follows:

### JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, are Böwe Systec, Inc. (1423), Böwe Bell + Howell Holdings, Inc. (9926), BBH, Inc. (9928), Böwe Bell + Howell Company (0100), Böwe Bell + Howell Postal Systems Company (4944), BCC Software, Inc. (3481) and Böwe Bell + Howell International Ltd. (0001). The debtors' corporate offices are located at 760 S. Wolf Road, Wheeling, IL 60090.

proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory basis for the relief requested herein is section 366 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

## BACKGROUND

### A. The Chapter 11 Cases and Ancillary Proceeding

2. On April 18, 2011, the Debtors commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases") by each filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

3. Following the filing of the Chapter 11 Cases, Debtor Böwe Bell + Howell International Ltd. ("BBH Canada"), BBH's Canadian subsidiary, intends to commence an ancillary proceeding (the "Ancillary Proceeding") under Part IV of the *Companies' Creditors Arrangement Act* in the Ontario Superior Court of Justice (Commercial List). BBH Canada, as the proposed foreign representative for the Debtors in the Ancillary Proceeding, intends to seek recognition of these Chapter 11 Cases and certain orders entered in the Chapter 11 Cases. PricewaterhouseCoopers Inc. is the proposed court-appointed Information Officer in the Ancillary Proceeding.

4. The Debtors continue to operate their business and manage their properties as debtors-in-possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee has been appointed in the Chapter 11 Cases.

### B. Overview of the Debtors' Business

5. The Debtors are one of two leaders nationally in high volume production mail solutions, offering a combination of hardware, services and software to high volume mailers worldwide including financial and insurance firms, government agencies, services bureaus,

utilities, and direct-mail firms and others. As a result of the Debtors' unique offering of products and services, the Debtors are well-positioned to satisfy a broad range of complex mailing needs for their global customer base. Due to the large base of installed equipment, a significant percentage of the Debtors' revenues are derived from the sale of recurring, high margin services and software.

6. The Debtors' offerings can be broken into three key segments: (i) hardware; (ii) services; and (iii) software. In most instances, the company provides its client base with a combination of all three segments as part of an overall mail solution.

    a) <u>Hardware</u>. The Debtors offer high end, fully integrated inserting and sorting solutions. With over 9,000 machines installed, the Debtors are the second largest installer of such equipment in the industry. The inserter line is designed for large mailers who need to customize mass mailings to clients or prospects. The inserter line allows clients to take printed statements, bills or other updates and insert them along with various flyers, mailers and product promotions to be mailed to targeted recipients. The Debtors also offer product reconditioning services whereby the company is able to leverage a client's existing equipment or procure other machines to be reconditioned from third parties. The Debtors analyze and implement the installed solutions, upgrading the performance of a client's operations to the Debtors' product standards. Additionally, the Debtors are the leader in the U.S. presort market, whereby service bureaus and other large corporate mailers purchase the Debtors' sorters to meet the requirements of the U.S. Postal Service (the "<u>USPS</u>") for postage discounts. Mailers receive these discounts by preparing mail with current and correct addresses in the form of a barcode, or modified address and providing the USPS with sorted trays that can be injected directly into the USPS' delivery network.

b)  Services.  The Debtors provide a wide variety of on-site services designed to ensure that a client's mail operations run efficiently.  The Debtors' service revenues are generated by Preventative Maintenance Agreements (a "PMA"), field change orders, part sales, and time and material billings.  The Debtors' service contracts are purchased periodically by customers of installed hardware for product support after the warranty support period expires.  These contracts are typically structured as PMAs, annual maintenance agreements that entitle a client to a set level of services.  These renewable maintenance and service agreements provide a steady source of revenue for the Debtors and represent approximately $160 million of the company's $248 million in annual revenue.  The Debtors' business model depends on the revenues, mostly prepaid, from these annual maintenance agreements.  The Debtors' customer base includes numerous utility and credit card companies, governmental agencies, banks and others that depend on the Debtors' equipment to generate billions of dollars worth of accounts receivable (through the issuance of billing statements) on a daily basis.  Accordingly, customers need the Debtors' equipment to function properly at all times, which requires the Debtors to respond quickly and responsibly when maintenance issues arise.

c)  Software.  The Debtors also provide a number of software offerings which help clients manage their mail operations as well as offer specific solutions that improve the accuracy of customers' mailing lists, ensuring data integrity and accuracy and lowering postage costs.

7.  The Debtors are headquartered in Wheeling, Illinois and also have major U.S. manufacturing and service locations in Durham, North Carolina and Bethlehem, Pennsylvania.  Additionally, the Debtors have one of the industries' largest nationwide service networks of

strategically located service technicians, operating in almost every state and allowing the Debtors to rapidly respond to client service demands.

## C.  The Debtors' Corporate Structure

8.     The Debtors' history dates back to 1936 when the founder of what would later become Bell + Howell invented, patented and produced the first automated mail inserting machine.  In 2003, Bell + Howell was acquired by Böwe Systec AG ("Böwe Systec"), a German competitor of Bell + Howell, thereby combining their North American mailing operations and changing the name of Bell + Howell to "Böwe Bell + Howell".  The Debtors are each direct or indirect subsidiaries of Böwe Systec.

9.     In May 2010, Böwe Systec commenced an insolvency proceeding in Germany and, as a consequence, Böwe Systec's North American distribution agreements with the Debtors were voided.   On September 2, 2010, the administrator appointed in the German insolvency proceeding agreed to sell substantially all of Böwe Systec's assets to a Swiss private equity firm, Axentum Capital AG.  When Axentum Capital AG was unable to complete the transaction, the administrator regained control of the assets (forming BS GmbH) and subsequently sold the assets to the Possehl Group.  The Debtors were not parties to the German insolvency proceeding, nor were they involved in the transaction with the Possehl Group.

## D.  The Debtors' Capital and Debt Structure

10.     As of the Petition Date, Debtor BBH, Inc. ("BBH") was a borrower under that certain Credit Agreement dated as of September 25, 2003 (the "Original Credit Agreement") by and between BBH, Harris N.A., a national banking association ("Harris" or the "Agent"), as Issuing Lender and Agent (as defined in the Original Credit Agreement), and the financial institutions that were or became lenders thereunder (the "Prepetition Lenders").  The Original Credit Agreement provided BBH with (i) a term loan in the maximum principal amount of $50

million (the "<u>Prepetition Term Loan</u>"); and (ii) a revolving loan in the maximum principal amount of $50 million (the "<u>Prepetition Revolving Loan</u>", and together with the Prepetition Term Loan, the "<u>Prepetition Facility</u>"), subject to borrowing base limitations, and less the amount outstanding under any Letters of Credit and the outstanding principal amount of any Swing Loans (as defined under the Original Credit Agreement). The aggregate amount of the Prepetition Term Loan was subsequently increased in July 2004 to $150 million so that approximately $45 million could be paid to Böwe Systec on account of a preferred stock redemption. BBH's obligations under the Prepetition Facility are secured by substantially all of its assets, with each of the other Debtors (other than BBH Canada) guarantying BBH's obligations thereunder.

11. Pursuant to the terms of the Original Credit Agreement, the Prepetition Revolving Loan was to expire by its terms on September 30, 2009. All other obligations under the Prepetition Facility, including the Prepetition Term Loan, were to become due and owing on September 30, 2010. The parties initially entered into discussions regarding an amendment that would have extended the maturity date for the Prepetition Revolving Loan to September 30, 2010, consistent with the balance of the Prepetition Facility, but were unable to obtain the unanimous consent of all lenders under the Prepetition Term Loan to such an extension. As a result, the parties entered into that certain Amended and Restated Credit Agreement dated as of November 23, 2009 (the "<u>Amended and Restated Credit Agreement</u>"), which, <u>inter</u> <u>alia</u>, (i) restated the Original Credit Agreement, as amended, in its entirety, (ii) increased the interest rate provided thereunder, (iii) fixed the stated maturity date for all obligations under the Prepetition Facility as June 30, 2010 (thereby extending the term of the Prepetition Revolving Loan by nine months, but accelerating the maturity date for all other obligations under the Original Credit

Agreement), (iv) reduced the Prepetition Revolving Loan to $35 million and (v) imposed certain additional affirmative covenants on the company relating to the raising of additional capital.

12.     BBH was unable to repay or refinance the Prepetition Facility on or before the June 30, 2010 maturity date. While this constituted an event of default under the terms of the Amended and Restated Credit Agreement, the Prepetition Lenders have permitted the company to continue using cash collateral since such time. While the parties attempted to negotiate a standard forbearance agreement, such efforts have been unsuccessful. Accordingly, there is no forbearance agreement currently in place and the Debtors remain subject to immediate remedial action by the Prepetition Lenders.

13.     In March 2011, Versa Capital Management, Inc. ("Versa"), a private equity firm with an interest in acquiring the Debtors or their assets, began purchasing the secured claims of certain of the Prepetition Lenders with the intention of submitting a credit bid for the Debtors' assets pursuant to section 363(k) of the Bankruptcy Code. As of the Petition Date, Versa had control over approximately sixty (60) percent of the outstanding debt under the Prepetition Facility and had acquired the balance of the Prepetition Facility subject to confirmed trades which are in the process of closing. As of the Petition Date, there was an aggregate amount of not less than $121 million outstanding under the Prepetition Facility.

**E.      The Stalking Horse Agreement and Proposed Sale**

14.     On April 18, 2011, the Debtors and Contrado BBH Funding, LLC (the "U.S. Purchaser") and a Canadian corporation to be formed prior to closing (the "Foreign Purchaser", and together with the U.S. Purchaser, the "Purchasers"), each wholly owned subsidiaries of Versa, entered into that certain Asset Purchase Agreement (the "Stalking Horse Agreement") whereby the Purchasers agreed to purchase substantially all of the Debtors' assets. Pursuant to the terms of the Stalking Horse Agreement, the aggregate consideration for the Debtors' assets

shall include (i) a credit bid[2] consisting of amounts outstanding under the DIP Facility (as defined herein) and the Prepetition Facility, (ii) cash in the amount of 302,000 (Canadian currency) attributable to the assets of BBH Canada, (iii) the payment of all cure amounts relating to any contracts and leases to be assigned in connection with the transaction and (iv) the assumption of certain liabilities. The Stalking Horse Agreement provides the Debtors with a firm commitment that is not subject to any financing or due diligence contingencies and thereby provides the Debtors with a floor against which other bidders can submit competing bids. The Debtors will be filing a motion with the Court on or about the Petition Date seeking approval of certain bidding procedures in connection with an approximately forty-five (45) day sale process followed by approval of a sale of the Debtors' assets to the highest and best bidder as determined at an auction.

## F.     The DIP Facility

15.     In connection with the Chapter 11 Cases, BBH (the "U.S. Borrower") and BBH Canada (the "Canadian Borrower"), as borrowers, and each of the other Debtors, as guarantors, and Contrado BBH Investments, LLC ("Contrado"), a wholly-owned subsidiary of Versa, and one or more additional lenders party from time to time (together with Contrado, the "DIP Facility Lenders") have entered into that certain Senior Secured, Super-Priority Debtor-in-Possession Credit and Guaranty Agreement, dated as of April 18, 2011 (the "DIP Facility Agreement"). Pursuant to the DIP Facility Agreement, the DIP Facility Lenders have agreed to provide postpetition financing up to the aggregate principal amount of $127.2 million (inclusive of up to

---

[2]     The "Credit Bid Amount" shall consist of the sum of (x) the U.S. Bid Amount of $80 million, plus (y) the Canadian Bid Amount. Capitalized terms not otherwise defined herein shall have the meanings given to them in the Stalking Horse Agreement.

$1.3 million for postpetition financing by the Canadian Borrower) (the "DIP Facility").[3] The DIP Facility will be used to, among other things, provide the Debtors with adequate working capital and to cover any administrative obligations incurred during the course of the Chapter 11 Cases. As discussed above, the Purchasers shall have the ability to credit bid all amounts outstanding under the DIP Facility in accordance with the terms of the Stalking Horse Agreement.

## G. The Utility Providers

16. In the ordinary course of their business, the Debtors incur utility expenses for water, sewer service, electricity, natural gas, telephone service, internet service, waste management service and other services. Approximately fifty-five utility providers (as such term is used in section 366 of the Bankruptcy Code, collectively, the "Utility Providers") provide these services through approximately one hundred accounts. The Utility Providers are listed on Exhibit 1 to the interim order and incorporated herein by reference (the "Utility Service List").[4] The Utility Providers do not include parties that are obligated to provide services to the Debtors pursuant to the terms of a contract. On average, the Debtors spend approximately $185,000 each month on utility costs (of which $16,000 is applicable to Canadian utilities).

17. Uninterrupted utility services are essential to the Debtors' ongoing operations and, therefore, to the success of the Chapter 11 Cases. Simply put, without utility services, the Debtors' operations will shut down.

---

[3] Subject to entry of a final DIP financing order, the Debtors propose to use a portion of the DIP Facility to pay in full, in cash, the remaining balance outstanding under the Prepetition Facility.

[4] Although the Debtors believe that the Utility Service List includes all of their Utility Providers, the Debtors reserve the right, without the need for further order of the Court, to supplement the Utility Service List if any Utility Provider has been omitted. Additionally, the listing of an entity on the Utility Service List is not an admission that such entity is a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve the right to contest any such characterization in the future.

## H. Proposed Adequate Assurance

18.     In the event the Court approves the Debtors' proposed debtor in possession financing facility, the Debtors expect to have adequate funds to timely pay all postpetition obligations owed to their Utility Providers and intend to do so.   Nevertheless, to provide additional assurance of payment for future services to the Utility Providers, the Debtors will deposit $92,500 (the "Utility Deposit") into a newly created, segregated, interest-bearing account within twenty (20) days of the Petition Date (the "Utility Deposit Account" and together with expected cash flow from operations, the "Proposed Adequate Assurance").   This Utility Deposit represents a sum equal to 50% of the Debtors' monthly cost of utility service with respect to those Utility Providers paid directly by the Debtors, calculated as a historical average over the past twelve months; however, the Utility Deposit does not include a deposit for any Utility Provider currently paid in advance for its services or holding a deposit equal to or greater than 50% of the Debtors' monthly cost of utility service with respect to such Utility Provider (which existing deposit shall be deemed to be adequate assurance with respect to such Utility Provider). The Debtors submit that the Proposed Adequate Assurance provides protection well in excess of that required to grant sufficient adequate assurance to the Utility Providers.

19.     Notwithstanding the Proposed Adequate Assurance, if a Utility Provider is not satisfied that the establishment of the Utility Deposit Account provides adequate assurance of future payment, the Debtors propose the following procedures (the "Procedures") under which the Utility Provider may make additional requests for adequate assurance:

> (a)     If a Utility Provider is not satisfied with the assurance of future payment provided by the Debtors, the Utility Provider must serve a written request upon the Debtors setting forth the location(s) at which the given utility services are provided, the account number(s) for such location(s), the outstanding balance for each account and a summary of the Debtors' payment history in each account (each, a "Request").

(b)　The Request must be served upon the Debtors at the following addresses:  (i) Böwe Bell + Howell Holdings, Inc., 760 S. Wolf Road, Wheeling, IL 60090, Attn.: Michael Wilhelm; and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn.:  Mark D. Collins, Esq. and Lee E. Kaufman, Esq.; with a copy to (iii) Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn.:  James Stempel, Esq. and Arun Kurichety, Esq.

(c)　Without further order of the Court, and subject to the consent of Versa, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving a timely Request if the Debtors in their discretion determine that the Request is reasonable or if the parties negotiate alternate consensual provisions.

(d)　If the Debtors believe that a Request is unreasonable, the Debtors shall file a motion pursuant to section 366(c) of the Bankruptcy Code (a "Determination Motion") within thirty (30) days or receipt of a Request.  The Determination Motion shall seek a determination from the Court that the Utility Deposit Account, plus any additional consideration offered by the Debtors, constitutes adequate assurance of payment.  Pending notice and a hearing of the Determination Motion, the Utility Provider that is the subject of the Determination Motion may not alter, refuse or discontinue services to the Debtors or recover or set off against a prepetition deposit.

(e)　Any Utility Provider that fails to make a Request shall be deemed to be satisfied that the Debtors' Adequate Assurance provides adequate assurance of payment to such Utility Provider within the meaning of section 366 of the Bankruptcy Code.

20.　To the extent the Debtors subsequently identify additional providers of utilities, the Debtors seek authority, in their sole discretion, to amend the Utility Service List to add or remove any Utility Provider.  The Debtors will serve a copy of this Motion, along with the applicable portion of the amended Utility Service List and any order entered in connection with this Motion, to those Utility Providers that are subsequently added to the Utility Service List. Any subsequently added Utility Provider that objects to the Debtors' Adequate Assurance will be subject to the Procedures.

21.     The Debtors further request that all Utility Providers, including subsequently added Utility Providers, be prohibited from altering, refusing or discontinuing utility services to the Debtors absent further order of the Court.

## RELIEF REQUESTED

22.     By this Motion, the Debtors seek entry of interim and final orders: (a) determining that the Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code by the Debtors' establishment of the Utility Deposit Account; (b) approving the Debtors' proposed procedures whereby Utility Providers may request additional or different adequate assurance; (c) prohibiting the Utility Providers from altering, refusing or discontinuing services on account of prepetition amounts outstanding and on account of any perceived inadequacy of the Debtors' proposed adequate assurance; and (d) determining that the Debtors are not required to provide any additional adequate assurance beyond what is proposed by this Motion.

## BASIS FOR RELIEF

23.     Section 366(c)(2) of the Bankruptcy Code provides that a Utility Provider may discontinue its services to a debtor if the debtor has not furnished adequate assurance of payment within 30 days after the petition date.  Congress enacted section 366 to protect debtors from utility service cutoffs upon a bankruptcy filing while providing utility companies with adequate assurance that the debtors will pay for postpetition services.  See H.R. REP. No. 95-595, at 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306.  Accordingly, section 366 protects debtors by prohibiting utilities from altering, refusing or discontinuing services to a debtor solely on account of unpaid prepetition amounts for a period of 30 days after a chapter 11 filing.  At the same time, it protects utilities by permitting them to alter, refuse or discontinue service after 30

days if the debtor has not furnished "adequate assurance" of payment in a form "satisfactory" to the utility.

24.     Section 366(c) also restricts the factors that a court may consider when determining whether an adequate assurance payment is in fact adequate. Specifically, courts may no longer consider (a) the absence of a security deposit before a debtor's petition date, (b) a debtor's history of timely payments, or (c) the availability of an administrative expense priority when determining the amount of a deposit. Notwithstanding these noteworthy changes, Congress did not abrogate the bankruptcy court's right to determine the amount of adequate assurance necessary or change the fundamental requirement that assurance of payment must simply be "adequate."

25.     While section 366(c) limits the factors a court can consider when determining whether a debtor has provided adequate assurance of payment, it does not limit the court's ability to determine the amount of payment necessary, if any, to provide such adequate assurance. Instead, section 366(c) gives courts the same discretion in determining the amount of payment necessary for adequate assurance that they previously had under section 366(b). <u>Compare</u> 11 U.S.C. § 366(b) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.") <u>with</u> 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2).").

26.     In addition, it is well established that section 366(b) permits a court to find that no payment at all is necessary to provide a utility with adequate assurance of payment. <u>See</u> <u>Virginia Elec. & Power Co. v. Caldor Inc.-N.Y.</u>, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that

'other security' should be interpreted narrowly, . . . a bankruptcy court's authority to 'modify' the level of the 'deposit or other security' provided for under § 366(b), includes the power to require 'no deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'") (citations omitted). This principle may be applicable in cases where the debtor has made prepetition deposits or prepayments for services that utilities will ultimately render postpetition. See 11 U.S.C. § 366(c)(1)(A)(v) (recognizing a prepayment for postpetition services as adequate assurance). Accordingly, even after the 2005 amendments to section 366, courts continue to have discretion to determine the amount of adequate assurance payments and, where appropriate, to determine that no such payment is necessary.

27. Further, section 366(c), like section 366(b), requires only that a utility's assurance of payment be "adequate." Courts recognize that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay. See, e.g., In re Adelphia Bus. Solutions, Inc., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002); In re Caldor, Inc.-N.Y., 199 B.R. 1, 3 (Bankr. S.D.N.Y. 1996) (section 366(b) "does not require an 'absolute guarantee of payment'"), aff'd sub nom. Virginia Elec. & Power Co. v. Caldor, Inc.-N.Y., 117 F.3d 646 (2d Cir. 1997); see also In re Steinebach, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance . . . all § 366(b) requires is that a utility be protected from an unreasonable risk of non-payment."). Courts also have recognized that, in determining the requisite level of adequate assurance, bankruptcy courts should "focus upon the need of the utility for assurance, and to require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." Virginia Elec. & Power Co., 117 F.3d at 650 (emphasis in original); (quoting In re Penn Jersey Corp., 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)); see also In re Penn. Cent. Transp. Co., 467 F.2d 100, 103-04

(3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits would likely "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who are already reasonably protected"). Accordingly, demands by a utility for a guarantee of payment should be refused when the debtor's specific circumstances already afford adequate assurance of payment.

28. The Debtors submit that the Utility Deposit Account provides more than adequate assurance of future payment. The Debtors anticipate having sufficient resources to pay, and intend to pay, all valid postpetition obligations for utility services as they come due in the ordinary course of business. In addition, the Debtors have a powerful incentive to stay current on their utility obligations because of their reliance on utility services for the operation of their business. These factors, which the Court may and should consider when determining the amount of any adequate assurance payments, justify a finding that the Debtors' Proposed Adequate Assurance is more than sufficient to assure the Utility Providers of future payment.

29. The Court has granted similar relief to that requested herein in a number of cases in this District. See, e.g., In re CB Holding Corp., Case No. 10-13683 (MFW) (Bankr. D. Del. Dec. 13, 2010); In re Urban Brands, Inc., Case No. 10-13005 (KJC) (Bankr. D. Del. Oct. 13, 2010); In re Caribbean Petroleum Corp., Case No. 10-12553 (KG) (Bankr. D. Del. Sept. 8, 2010); In re Haights Cross Communications, Inc., Case No. 10-10062 (BLS) (Bankr. D. Del. Feb. 5, 2010); In re Capmark Financial Group Inc., Case No. 09-13684 (CSS) (Bankr. D. Del. Nov. 24, 2009); In re Masonite Corp., Case No. 09-10844 (PJW) (Bankr. D. Del. Apr. 14, 2009).

30. Moreover, if a Utility Provider disagrees with the Debtors' analysis, the Procedures will enable the parties to negotiate and, if necessary, seek Court intervention without jeopardizing the Debtors' continuing operations. If a Utility Provider fails to file a timely

Request, however, such Utility Provider should be deemed to consent to the Procedures and should be bound by the order granting the relief requested herein. See generally In re Syroco, Inc., 374 B.R. 60, 62 (Bankr. D.P.R. 2007) (a utility provider's lack of objection, response or counter-demand after receiving notice of hearing on utilities motion, notice of interim order and notice of final hearing constitutes tacit acceptance of the debtor's proposed two-week cash deposit as adequate assurance of payment as such term is used in section 366 of the Bankruptcy Code).

31.    The proposed Procedures are necessary in these Chapter 11 Cases. If they are not approved, the Debtors could be forced to address numerous requests by their Utility Providers in a disorganized manner during the critical first weeks of the cases. Moreover, the Debtors could be blindsided by a Utility Provider unilaterally deciding—on or after the 30th day following the Petition Date—that it is not adequately protected and will discontinue service or make an exorbitant demand for payment to continue service. Discontinuation of utility service could essentially shut down operations, and any significant disruption of operations could put these Chapter 11 Cases in jeopardy.

## DEBTORS' RESERVATION OF RIGHTS

32.    Nothing contained herein is intended to or should be construed as an admission of the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their rights to contest any invoice of a Utility Provider under applicable non-bankruptcy law. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's orders is not intended to and should not be

construed as an admission of the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## NOTICE

33.     No trustee, examiner or creditors' committee has been appointed in these Chapter 11 Cases.  The Debtors have provided notice of this Motion by facsimile and/or overnight mail to:  (a) the Office of the United States Trustee for the District of Delaware; (b) each of the Debtors' creditors holding the twenty (20) largest unsecured claims on a consolidated basis; (c) the Debtors' prepetition secured lenders; (d) the Debtors' proposed post-petition lenders; (e) the Internal Revenue Service; (f) the United States Department of Justice; and (g) the Securities and Exchange Commission.  As this Motion is seeking first-day relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m).  Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is required.

34.     Following entry of the interim Order, the Debtors shall serve by United States mail, first class postage pre-paid, copies of the interim Order and a notice of hearing (the "Final Hearing") to consider entry of the final order (the "Final Hearing Notice") on (a) the Office of the United States Trustee for the District of Delaware; (b) each of the Debtors' creditors holding the twenty (20) largest unsecured claims on a consolidated basis; (c) the Debtors' prepetition secured lenders; (d) the Debtors' proposed post-petition lenders; (e) the Internal Revenue Service; (f) the United States Department of Justice; (g) the Securities and Exchange Commission; (h) the Utility Providers and their counsel (if known); and (i) all parties who have timely filed requests for notice under Bankruptcy Rule 2002.

## NO PRIOR REQUEST

35.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) immediately enter an interim order, substantially in the form attached hereto as Exhibit A, and set a date for the Final Hearing; (ii) at the Final Hearing, enter a final order granting the relief requested herein; and (iii) grant such other and further relief as this Court deems appropriate.

Dated: April 18, 2011
       Wilmington, Delaware

Respectfully submitted,

/s/ Lee E. Kaufman
Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
Lee E. Kaufman (No. 4877)
Tyler D. Semmelman (No. 5386)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

*Proposed Attorneys for the Debtors and
Debtors-in-Possession*

# EXHIBIT A

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | )    **Chapter 11** |
| | ) |
| **Böwe Systec, Inc., et al.,**[1] | )    **Case No. 11-_____ (_____)** |
| | ) |
|          **Debtors.** | )    **Jointly Administered** |
| | ) |
| | )    Re: Docket No. ____ |

## INTERIM ORDER DETERMINING ADEQUATE
## ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES

Upon the motion (the "Motion") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order (this "Order") (a) determining that the Utility Providers[2] have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code by the Debtors' establishment of the Utility Deposit Account; (b) approving the Debtors' proposed procedures whereby Utility Providers may request additional or different adequate assurance; (c) prohibiting the Utility Providers from altering, refusing or discontinuing services on account of prepetition amounts outstanding and on account of any perceived inadequacy of the Debtors' proposed adequate assurance; and (d) determining that the Debtors are not required to provide any additional adequate assurance beyond what is proposed by the Motion; and upon the *Declaration of Michael Wilhelm in Support of First Day Motions* and the *Declaration of Oliver Bialowons in Support of First Day Motions*; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; and it appearing that failure to grant the relief

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, are Böwe Systec, Inc. (1423), Böwe Bell + Howell Holdings, Inc. (9926), BBH, Inc. (9928), Böwe Bell + Howell Company (0100), Böwe Bell + Howell Postal Systems Company (4944), BCC Software, Inc. (3481) and Böwe Bell + Howell International Ltd. (0001). The debtors' corporate offices are located at 760 S. Wolf Road, Wheeling, IL 60090.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

requested in the Motion immediately will cause immediate and irreparable harm to the Debtors; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this Motion is a core proceeding pursuant to 28 U.S.C. §157(b); and it appearing that venue of this proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of this Motion and the opportunity for a hearing on this Motion was appropriate under the particular circumstances; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.     The Motion is GRANTED on an interim basis.

2.     Except in accordance with the procedures set forth below, and until the entry of a subsequent order of this Court, to be considered at the Final Hearing, the Utility Providers are prohibited from (a) altering, refusing or discontinuing service to, or discriminating against, the Debtors solely on the basis of the commencement of these cases or on account of any unpaid invoice for services provided before the date of commencement of these cases, and (b) requiring the payment of a deposit or other security in connection with the Utility Providers' continued provision to the Debtors of utility services, including, but not limited to, the furnishing of gas, heat, electricity, water, telephone service or any other utility of like kind.

3.     The Debtors shall, on or before twenty (20) days after the Petition Date, deposit $92,500 (the "Utility Deposit") into a newly created, segregated, interest-bearing account (the "Utility Deposit Account"), for the purpose of providing each Utility Provider adequate assurance of payment of its postpetition utility services to the Debtors.

4.     Absent further order of the Court, if a Utility Provider is not satisfied with the assurance of payment provided under this Order, the Utility Provider must serve a written

request (each, a "Request") for additional assurance of payment, which Request must be served upon the Debtors at the following addresses: (a) Böwe Bell + Howell Holdings, Inc., 760 S. Wolf Road, Wheeling, IL 60090, Attn.: Michael Wilhelm; and (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn.: Mark D. Collins, Esq. and Lee E. Kaufman, Esq.; with a copy to (c) Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn.: James Stempel, Esq. and Arun Kurichety, Esq. The Request must set forth the location(s) for which utility services are provided, the account number(s) for such location(s), the outstanding balance for each account and a summary of the Debtors' payment history on each account.

5. Without further order of the Court, and subject to the consent of Versa, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving a Request, if the Debtors in their discretion determine that the Request is reasonable or if the parties negotiate alternate consensual provisions.

6. If the Debtors believe that a Request is unreasonable and the parties are unable to negotiate alternate consensual provisions, the Debtors shall file a Determination Motion within 30 days after receipt of the Request seeking a determination from the Court that the Utility Deposit Account constitutes adequate assurance of payment. Pending notice and a hearing on the Determination Motion, the Utility Provider that is the subject of the Request may not alter, refuse or discontinue services to the Debtors nor recover or set off against a prepetition deposit.

7. Any Utility Provider that fails to make a Request shall be deemed to be satisfied that the Utility Deposit Account provides adequate assurance of payment to such Utility Provider within the meaning of section 366 of the Bankruptcy Code.

8. The Debtors may supplement the list of Utility Providers on <u>Exhibit 1</u> at any time. Any subsequently identified Utility Provider set forth on a supplemental exhibit will fall within the scope of this Order from the date of the filing of the supplemental exhibit. Any Utility Provider included on a supplemental exhibit shall fall within the scope of this Order from the date of the filing of the supplemental exhibit. Any Utility Provider included on a supplemental exhibit shall be served with notice and a copy of this Order within five (5) business days after the supplemental exhibit is filed with the Court. Any Request made by such Utility Provider must comply with the requirements of this Order.

9. Nothing in this Order or the Motion shall be deemed to vacate or modify any other restrictions on the termination of service by a Utility Provider as provided by sections 362 and 366 of the Bankruptcy Code or other applicable law, and nothing herein or in the Motion shall constitute postpetition assumption or adoption of any agreement pursuant to section 365 of the Bankruptcy Code, nor shall anything herein be deemed a waiver by the Debtors or any other party of any right with respect to the assumption or rejection of an executory contract.

10. A Final Hearing to consider the Motion is scheduled for _____ _____, 2011 at ____.m. (EDT) before the undersigned United States Bankruptcy Judge. Any objections to the relief requested in the Motion must be filed with the Clerk of the Court and served upon and counsel to the Debtors, counsel to the agent for the Debtors' prepetition secured lenders, the Office of the United States Trustee for the District of Delaware ("U.S. Trustee"), and counsel to any statutory committee(s) appointed in this case on or before _____ _____, 2011 at _____.m. (EDT).

11. The Debtors shall serve a copy of this Order by first class mail on the U.S. Trustee, the Debtors' pre-petition secured lenders, the Debtors' post-petition lenders, the Utility

Providers and their counsel (if known), the Internal Revenue Service, the United States Department of Justice, all persons requesting special notice herein, and counsel for any statutory committee(s), if one has been appointed or, if not, on the Debtors' creditors holding the twenty (20) largest unsecured claims on a consolidated basis, within five (5) business days of the entry of this Interim Order.

12.     Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, or budget in connection therewith, or any order regarding the use of cash collateral.

13.     Nothing in the Motion or this Order, nor as a result of the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as: (a) an admission as to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim; or (c) an approval or assumption of any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code.

14.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

15.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern.

16.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2011        _____
            Wilmington, Delaware                    UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT 1**

## **Utility Service List**

| Utility Provider | Location | Services Provided | Account No. | Address | City | State/ Prov. | Zip |
|---|---|---|---|---|---|---|---|
| Allied Waste Services | Durham | Waste | 939000412081 | Raleigh District, P.O. Box 912036 | Orlando | FL | 32891 |
| AT&T | Wheeling | Phone | 847R1630594734 | P.O. Box 8100 | Aurora | IL | 60507-8100 |
| AT&T | Durham | Phone | 9013634081101 | P.O. Box 277019 | Atlanta | GA | 30384-7019 |
| AT&T | Durham | Phone | 7139751010010 | P.O. Box 5001 | Carol Stream | IL | 60197-5001 |
| AT&T | Durham | Phone | 3232684795121 9163733683120 | Payment Center | Sacramento | CA | 95887-0001 |
| AT&T | Durham | Phone | 2059875460112 7048751795112 7708864430112 508999826001 | P.O. Box 105262 | Atlanta | GA | 30348-5262 |
| AT&T | Durham | Phone | 2175298182112 6163947111112 8472296185112 | P.O. Box 8100 | Aurora | IL | 60507-8100 |
| AT&T | Durham | Phone | 5670560 1717906937565 | P.O. Box 9004 | Carol Stream | IL | 60197-9004 |
| AT&T Internet Services | Wheeling | Phone | 829,268,941 | P.O. Box 5016 | Carol Stream | IL | 60197-5016 |
| Atmos Energy (TX) | Wheeling | Gas | 80-005090554-0504485-4 80-005090554-0500934-5 | P.O. Box 790311 | St. Louis | MO | 63179-0311 |
| Atria Networks | Canada | Internet | BOWE001 | P.O. Box 64 | Kitchener | ON | N2G 3W9 |
| Bell | Canada | Internet | WE120 | P.O. Box 4100 | Etobicoke | ON | M9W 1H2 |
| Bell Aliant | Canada | Internet | 34211102 | P.O. Box 2226, Stn Ctr RPO | Halifax | NS | B3J 3C7 |
| Bell Aliant | Canada | Phone | 53583530 | P.O. Box 640 | Charlottetown | PE | C1A 7L3 |
| Bell Canada | Canada | Phone | 519-8867036(875) 4162282438(718) | P.O. Box 9000, Stn Don Mills | North York | ON | M3C 2X7 |
| Bell Canada | Canada | Phone | 418-652-8784(579) | P.O. Box 8712, Succ Ctr-Ville | Montreal | QC | H3C 3P6 |
| Bell Canada | Canada | Phone | N6066877 | P.O. Box 1550 | North York | ON | M3C 3N5 |
| Bell Canada | Canada | Phone | 4505893739 | P.O. Box 8713, Succ Ctr-Ville | Montreal | QC | H3C 4L6 |
| Bell Canada | Canada | Internet | 505087302 504040009 | P.O. Box 3650, Stn Don Mills | Toronto | ON | M3C 3X9 |
| Bell Conferencing Inc. | Canada | Phone | 1130597 | 5099 Creekbank Rd. | Mississauga | ON | L4W 5N2 |
| Century Link | BCC | Internet | 411780093 | P.O. Box 4300 | Carol Stream | IL | 60197-4300 |

| Utility Provider | Location | Services Provided | Account No. | Address | City | State/ Prov. | Zip |
|---|---|---|---|---|---|---|---|
| Charter Communications | BCC | Phone | 8245 11 400 0125572 | P.O. Box 3019 | Milwaukee | WI | 53201-3019 |
| Cincinnati Bell Telephone | Durham | Phone | 5132410390063 | P.O. Box 748003 | Cincinnati | OH | 45274-8003 |
| Comcast Cable | Durham | Internet | 9509326300012 | P.O. Box 3005 | Southeastern | PA | 19398-3005 |
| Constellation NewEnergy, Inc. (IL) | Wheeling | Electric | 1-674ZH 1-VHU-2961 1-VET-1033 | Bank of America Lockbox Services, 14217 Collections Center Drive | Chicago | IL | 60693 |
| DirecTV | Wheeling | Cable | 28920887 | P.O. Box 60036 | Los Angeles | CA | 90060-0036 |
| Duke Power | Durham | Electric | 4060012 1723711296 | P.O. Box 70516 | Charlotte | NC | 28272 |
| Earthlink Inc. | Durham | Internet | 433028335 | P.O. Box 790216 | St. Louis | MO | 63179-0216 |
| Enbridge | Canada | Gas | 063525018035 | P.O. Box 644 | Scarborough | ON | M1K 5H1 |
| Energetix | BCC | Gas | LOC0001237479 | P.O. Box 5008 | Buffalo | NY | 14240-5008 |
| Frontier | Durham | Phone | 9195441480011 | P.O. Box 2951 | Phoenix | AZ | 85062-2951 |
| Frontier Telephone of Rochester | BCC | Phone | 585-272-9148-040199-6 | P.O. Box 20550 | Rochester | NY | 14602-0550 |
| Juscon Corp | Canada | Hydro | N/A | 155 Lexington Court | Waterloo | ON | N2J 4R2 |
| Monroe County Water Authority | BCC | Water | 0155832 | P.O. Box 41999 | Rochester | NY | 14604-1999 |
| MTS Allstream Inc. | Canada | Phone/Internet | 105795637 0048312714 | P.O. Box 7500 | Winnipeg | MB | R3C 3B5 |
| Nicor Gas | Wheeling | Gas | 10-80-50-9161 7 | P.O. Box 0632 | Aurora | IL | 60507-0632 |
| Oneconnect Services Inc. | Canada | Phone | N/A | P.O. Box 57420 Postal Station A | Toronto | ON | M5W 5M5 |
| PP&L, Inc. | Durham | Electric | 698147800011 7621298045011 | P.O. Box 25222 | Lehigh Valley | PA | 18002-5222 |
| PPL Electric Utilities | Durham | Electric | 6981478000011 7621298045011 | 2 North 9th Street, RPC Genni | Allentown | PA | 18101-1175 |
| PSNC Energy | Durham | Electric | 4210866206318 4198105044314 | P.O. Box 100256 | Columbia | SC | 29202 |
| Powerstream | Canada | Electric | 70-71-10160-108 | P.O. Box 3700 | Concord | ON | L4K 5N2 |
| Qwest | Durham | Internet | 6516860167122 4023451503120 | P.O. Box 91154 | Seattle | WA | 98111-1154 |

| Utility Provider | Location | Services Provided | Account No. | Address | City | State/Prov. | Zip |
|---|---|---|---|---|---|---|---|
| Raritan Valley Disposal | Durham | Waste | 302821001317 | 1200 N. Irving St. | Allentown | PA | 18109 |
| RGE | BCC | Electric | 2001-3742-711 | P.O. Box 5300 | Ithaca | NY | 14852-5300 |
| Rogers | Canada | Phone | 4-8848-6150 | P.O. Box 9100 | Don Mills | ON | M3C 3P9 |
| Shaw Cable | Canada | Internet | 030-7910-4083 | P.O. Box 2468, Station Main | Calgary | AB | T2P 4Y2 |
| SkyTel | Durham | Phone | 11A2831691 | P.O. Box 70849 | Charlotte | NC | 28272-0849 |
| Suburban Disposal | BCC | Waste Disposal | 03543-000 | P.O. Box 112 | Spencerport | NY | 14559-0112 |
| Telepage | Canada | Phone | 772031 | C.P./P.O. Box 32511 | Montreal | QC | H3R 2G4 |
| Telus | Canada | Phone | 2161891262 | P.O. Box 7575 | Vancouver | BC | V6B 8N9 |
| Time Warner Cable | BCC | Internet/Cable | 47020000-001 4654062-001 | P.O. Box 994 | Buffalo | NY | 14270-0994 |
| Time Warner Cable | Durham | Internet | 3141477151010 | P.O. Box 70873 | Charlotte | NC | 28272-0873 |
| Time Warner Telecom | Durham | Internet | 3988590 | P.O. Box 172567 | Denver | CO | 80217-2567 |
| Time Warner Telecom | BCC | Phone | 3316 | P.O. Box 172567 | Denver | CO | 80217-2567 |
| Tulip Cleaning Services | Canada | Cleaning | N/A | 480 Scotchmere Crt. | Waterloo | ON | N2K 3E6 |
| UGI Energy Services | Durham | Gas | 61107804 | P.O. Box 827032 | Philadelphia | PA | 19182 |
| UGI Utilities | Durham | Gas | 5073742873181 5073742916091 | P.O. Box 71203 | Philadelphia | PA | 19176 |
| Union Gas | Canada | Heat | 320-3197-206-0149 | P.O. Box 2025 | Chatham | ON | N7M 6C7 |
| Verizon | Durham | Phone | 8562939500010 | P.O. Box 4833 | Trenton | NJ | 08650-4833 |
| Verizon | Durham | Phone | 4102350691010 | P.O. Box 660720 | Dallas | TX | 75266-0720 |
| Verizon | Durham | Phone | 4122811568122 | P.O. Box 15026 | Albany | NY | 12212 |
| Verizon | Durham | Phone | 10067771855 | P.O. Box 371838 | Pittsburgh | PA | 15250-7838 |
| Verizon | Durham | Phone | 9729156848122 1090002858301 1090002885301 9727530711010 | P.O. Box 920041 | Dallas | TX | 75392-0041 |
| Verizon | Durham | Phone | 6102644510121 6103170109122 6103172087122 6103174300122 | P.O. Box 28000 | Lehigh Valley | PA | 18002-8000 |
| Verizon | Durham | Phone | 1000677185 | P.O. Box 371392 | Pittsburgh | PA | 15250-1392 |
| Verizon | Durham | Phone | 100067771862 | P.O. Box 70129 | Chicago | IL | 60673-0129 |

| Utility Provider | Location | Services Provided | Account No. | Address | City | State/ Prov. | Zip |
|---|---|---|---|---|---|---|---|
| Verizon Conferencing | Wheeling | Phone | 01-00067771855-00889 | P.O. Box 70129 | Chicago | IL | 60673-0129 |
| Verizon Wireless | BCC | Phone | 480270639-00001 | P.O. Box 408 | Newark | NJ | 07101-0408 |
| Via Disposal Service | Canada | Waste | N/A | 235 Belfield Road | Etobicoke | ON | M9W 1H2 |
| Waste Management | Wheeling | Waste Disposal | 421-8098467-2008-8 | P.O. Box 4648 | Carol Stream | IL | 60197-4648 |
| Xcel Energy | BCC | Gas/Electric | 52-9382061-0 52-9626118-6 | P.O. Box 9477 | Minneapolis | MN | 55484-9477 |

# EXHIBIT B

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | **Chapter 11** |
|  | ) |  |
| **Böwe Systec, Inc., et al.,**[1] | ) | **Case No. 11-_____ (____)** |
|  | ) |  |
| **Debtors.** | ) | **Jointly Administered** |
|  | ) |  |
|  | ) | Re: Docket Nos. ____ and ____ |

## FINAL ORDER DETERMINING ADEQUATE
## ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES

Upon the motion (the "<u>Motion</u>") of the above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") for entry of an order (this "<u>Order</u>") (a) determining that the Utility Providers[2] have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code by the Debtors' establishment of the Utility Deposit Account; (b) approving the Debtors' proposed procedures whereby Utility Providers may request additional or different adequate assurance; (c) prohibiting the Utility Providers from altering, refusing or discontinuing services on account of prepetition amounts outstanding and on account of any perceived inadequacy of the Debtors' proposed adequate assurance; and (d) determining that the Debtors are not required to provide any additional adequate assurance beyond what is proposed by the Motion; and upon the *Declaration of Michael Wilhelm in Support of First Day Motions* and the *Declaration of Oliver Bialowons in Support of First Day Motions*; the Court having entered the *Interim Order Determining Adequate Assurance of Payment for Future Utility Services* [Docket No. ____], dated _____ __, 2011; and it

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, are Böwe Systec, Inc. (1423), Böwe Bell + Howell Holdings, Inc. (9926), BBH, Inc. (9928), Böwe Bell + Howell Company (0100), Böwe Bell + Howell Postal Systems Company (4944), BCC Software, Inc. (3481) and Böwe Bell + Howell International Ltd. (0001). The debtors' corporate offices are located at 760 S. Wolf Road, Wheeling, IL 60090.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; and it appearing that failure to grant the relief requested in the Motion immediately will cause immediate and irreparable harm to the Debtors; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this Motion is a core proceeding pursuant to 28 U.S.C. §157(b); and it appearing that venue of this proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of this Motion and the opportunity for a hearing on this Motion was appropriate under the particular circumstances; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.     The Motion is GRANTED on a final basis.

2.     On or before twenty (20) days after the Petition Date, the Debtors deposited $92,500 (the "Utility Deposit") into a newly created, segregated, interest-bearing account (the "Utility Deposit Account"), for the purpose of providing each Utility Provider adequate assurance of payment of its postpetition utility services to the Debtors.  The Utility Deposit is hereby deemed adequate assurance of future payment of utility services with respect to each of the Utility Providers listed on Exhibit 1 hereto.

3.     Except in accordance with the procedures set forth below, the Utility Providers are prohibited from (a) altering, refusing or discontinuing service to, or discriminating against, the Debtors solely on the basis of the commencement of these cases or on account of any unpaid invoice for services provided before the date of commencement of these cases, and (b) requiring the payment of a deposit or other security in connection with the Utility Providers' continued

provision to the Debtors of utility services, including the furnishing of gas, heat, electricity, water, telephone service or any other utility of like kind.

4.      Absent further order of the Court, if a Utility Provider is not satisfied with the assurance of payment provided under this Order, the Utility Provider must serve a written request (each, a "Request") for additional assurance of payment, which Request must be served upon the Debtors at the following addresses:  (a) Böwe Bell + Howell Holdings, Inc., 760 S. Wolf Road, Wheeling, IL 60090, Attn.: Michael Wilhelm; and (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn.:  Mark D. Collins, Esq. and Lee E. Kaufman, Esq.; with a copy to (c) Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn.:  James Stempel, Esq. and Arun Kurichety, Esq. The Request must set forth the location(s) for which utility services are provided, the account number(s) for such location(s), the outstanding balance for each account and a summary of the Debtors' payment history on each account.

5.      Without further order of the Court, and subject to the consent of Versa, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving a Request, if the Debtors in their discretion determine that the Request is reasonable or if the parties negotiate alternate consensual provisions.

6.      If the Debtors believe that a Request is unreasonable or are unable to negotiate alternate consensual provisions, the Debtors shall file a Determination Motion within thirty (30) days after receipt of the Request seeking a determination from the Court that the Utility Deposit Account constitutes adequate assurance of payment.  Pending notice and a hearing on the Determination Motion, the Utility Provider that is the subject of the Request may not alter, refuse or discontinue services to the Debtors nor recover or set off against a prepetition deposit.

RLF1 3775550v. 5

7. The Debtors shall have the right to withdraw funds from the Utility Deposit Account to the extent such funds were deposited on account of a Utility Provider that is subsequently determined to not be included on the Utility Service List or to the extent a Request is properly served by a Utility Provider and any settlement results in such Utility Provider's removal from the Utility Services List.

8. The Debtors may supplement the list of Utility Providers on Exhibit 1 at any time. Any subsequently identified Utility Provider set forth on a supplemental exhibit will fall within the scope of this Order from the date of the filing of the supplemental exhibit. Any Utility Provider included on a supplemental exhibit shall be served with notice and a copy of this Order within five (5) business days after the supplemental exhibit is filed with the Court. Any Request made by such Utility Provider must comply with the requirements of this Order.

9. Nothing in this Order or the Motion shall be deemed to vacate or modify any other restrictions on the termination of service by a Utility Provider as provided by sections 362 and 366 of the Bankruptcy Code or other applicable law, and nothing herein or in the Motion shall constitute postpetition assumption or adoption of any agreement pursuant to section 365 of the Bankruptcy Code, nor shall anything herein be deemed a waiver by the Debtors or any other party of any right with respect to the assumption or rejection of an executory contract.

10. Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, or budget in connection therewith, or any order regarding the use of cash collateral.

11. Nothing in the Motion or this Order, nor as a result of the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as: (a) an admission as to the

validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim; or (c) an approval or assumption of any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code.

12.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

13.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2011
          Wilmington, Delaware                          _____
                                                                    UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

## Utility Service List

| Utility Provider | Location | Services Provided | Account No. | Address | City | State/ Prov. | Zip |
|---|---|---|---|---|---|---|---|
| Allied Waste Services | Durham | Waste | 939000412081 | Raleigh District, P.O. Box 912036 | Orlando | FL | 32891 |
| AT&T | Wheeling | Phone | 847R1630594734 | P.O. Box 8100 | Aurora | IL | 60507-8100 |
| AT&T | Durham | Phone | 9013634081101 | P.O. Box 277019 | Atlanta | GA | 30384-7019 |
| AT&T | Durham | Phone | 7139751010010 | P.O. Box 5001 | Carol Stream | IL | 60197-5001 |
| AT&T | Durham | Phone | 3232684795121 9163733683120 | Payment Center | Sacramento | CA | 95887-0001 |
| AT&T | Durham | Phone | 2059875460112 7048751795112 7708864430112 508999826001 | P.O. Box 105262 | Atlanta | GA | 30348-5262 |
| AT&T | Durham | Phone | 2175298182112 6163947111112 8472296185112 | P.O. Box 8100 | Aurora | IL | 60507-8100 |
| AT&T | Durham | Phone | 5670560 1717906937565 | P.O. Box 9004 | Carol Stream | IL | 60197-9004 |
| AT&T Internet Services | Wheeling | Phone | 829,268,941 | P.O. Box 5016 | Carol Stream | IL | 60197-5016 |
| Atmos Energy (TX) | Wheeling | Gas | 80-005090554-0504485-4 80-005090554-0500934-5 | P.O. Box 790311 | St. Louis | MO | 63179-0311 |
| Atria Networks | Canada | Internet | BOWE001 | P.O. Box 64 | Kitchener | ON | N2G 3W9 |
| Bell | Canada | Internet | WE120 | P.O. Box 4100 | Etobicoke | ON | M9W 1H2 |
| Bell Aliant | Canada | Internet | 34211102 | P.O. Box 2226, Stn Ctr RPO | Halifax | NS | B3J 3C7 |
| Bell Aliant | Canada | Phone | 53583530 | P.O. Box 640 | Charlottetown | PE | C1A 7L3 |
| Bell Canada | Canada | Phone | 519-8867036(875) 4162282438(718) | P.O. Box 9000, Stn Don Mills | North York | ON | M3C 2X7 |
| Bell Canada | Canada | Phone | 418-652-8784(579) | P.O. Box 8712, Succ Ctr-Ville | Montreal | QC | H3C 3P6 |
| Bell Canada | Canada | Phone | N6066877 | P.O. Box 1550 | North York | ON | M3C 3N5 |
| Bell Canada | Canada | Phone | 4505893739 | P.O. Box 8713, Succ Ctr-Ville | Montreal | QC | H3C 4L6 |
| Bell Canada | Canada | Internet | 505087302 504040009 | P.O. Box 3650, Stn Don Mills | Toronto | ON | M3C 3X9 |
| Bell Conferencing Inc. | Canada | Phone | 1130597 | 5099 Creekbank Rd. | Mississauga | ON | L4W 5N2 |

| Utility Provider | Location | Services Provided | Account No. | Address | City | State/ Prov. | Zip |
|---|---|---|---|---|---|---|---|
| Century Link | BCC | Internet | 411780093 | P.O. Box 4300 | Carol Stream | IL | 60197-4300 |
| Charter Communications | BCC | Phone | 8245 11 400 0125572 | P.O. Box 3019 | Milwaukee | WI | 53201-3019 |
| Cincinnati Bell Telephone | Durham | Phone | 5132410390063 | P.O. Box 748003 | Cincinnati | OH | 45274-8003 |
| Comcast Cable | Durham | Internet | 9509326300012 | P.O. Box 3005 | Southeastern | PA | 19398-3005 |
| Constellation NewEnergy, Inc. (IL) | Wheeling | Electric | 1-674ZH 1-VHU-2961 1-VET-1033 | Bank of America Lockbox Services, 14217 Collections Center Drive | Chicago | IL | 60693 |
| DirecTV | Wheeling | Cable | 28920887 | P.O. Box 60036 | Los Angeles | CA | 90060-0036 |
| Duke Power | Durham | Electric | 4060012 1723711296 | P.O. Box 70516 | Charlotte | NC | 28272 |
| Earthlink Inc. | Durham | Internet | 433028335 | P.O. Box 790216 | St. Louis | MO | 63179-0216 |
| Enbridge | Canada | Gas | 063525018035 | P.O. Box 644 | Scarborough | ON | M1K 5H1 |
| Energetix | BCC | Gas | LOC0001237479 | P.O. Box 5008 | Buffalo | NY | 14240-5008 |
| Frontier | Durham | Phone | 9195441480011 | P.O. Box 2951 | Phoenix | AZ | 85062-2951 |
| Frontier Telephone of Rochester | BCC | Phone | 585-272-9148-040199-6 | P.O. Box 20550 | Rochester | NY | 14602-0550 |
| Juscon Corp | Canada | Hydro | N/A | 155 Lexington Court | Waterloo | ON | N2J 4R2 |
| Monroe County Water Authority | BCC | Water | 0155832 | P.O. Box 41999 | Rochester | NY | 14604-1999 |
| MTS Allstream Inc. | Canada | Phone/Internet | 105795637 0048312714 | P.O. Box 7500 | Winnipeg | MB | R3C 3B5 |
| Nicor Gas | Wheeling | Gas | 10-80-50-9161 7 | P.O. Box 0632 | Aurora | IL | 60507-0632 |
| Oneconnect Services Inc. | Canada | Phone | N/A | P.O. Box 57420 Postal Station A | Toronto | ON | M5W 5M5 |
| PP&L, Inc. | Durham | Electric | 698147800011 7621298045011 | P.O. Box 25222 | Lehigh Valley | PA | 18002-5222 |
| PPL Electric Utilities | Durham | Electric | 6981478000011 7621298045011 | 2 North 9th Street, RPC Genni | Allentown | PA | 18101-1175 |
| PSNC Energy | Durham | Electric | 4210866206318 4198105044314 | P.O. Box 100256 | Columbia | SC | 29202 |
| Powerstream | Canada | Electric | 70-71-10160-108 | P.O. Box 3700 | Concord | ON | L4K 5N2 |

| Utility Provider | Location | Services Provided | Account No. | Address | City | State/ Prov. | Zip |
|---|---|---|---|---|---|---|---|
| Qwest | Durham | Internet | 6516860167122 4023451503120 | P.O. Box 91154 | Seattle | WA | 98111-1154 |
| Raritan Valley Disposal | Durham | Waste | 302821001317 | 1200 N. Irving St. | Allentown | PA | 18109 |
| RGE | BCC | Electric | 2001-3742-711 | P.O. Box 5300 | Ithaca | NY | 14852-5300 |
| Rogers | Canada | Phone | 4-8848-6150 | P.O. Box 9100 | Don Mills | ON | M3C 3P9 |
| Shaw Cable | Canada | Internet | 030-7910-4083 | P.O. Box 2468, Station Main | Calgary | AB | T2P 4Y2 |
| SkyTel | Durham | Phone | 11A2831691 | P.O. Box 70849 | Charlotte | NC | 28272-0849 |
| Suburban Disposal | BCC | Waste Disposal | 03543-000 | P.O. Box 112 | Spencerport | NY | 14559-0112 |
| Telepage | Canada | Phone | 772031 | C.P./P.O. Box 32511 | Montreal | QC | H3R 2G4 |
| Telus | Canada | Phone | 2161891262 | P.O. Box 7575 | Vancouver | BC | V6B 8N9 |
| Time Warner Cable | BCC | Internet/Cable | 47020000-001 4654062-001 | P.O. Box 994 | Buffalo | NY | 14270-0994 |
| Time Warner Cable | Durham | Internet | 3141477151010 | P.O. Box 70873 | Charlotte | NC | 28272-0873 |
| Time Warner Telecom | Durham | Internet | 3988590 | P.O. Box 172567 | Denver | CO | 80217-2567 |
| Time Warner Telecom | BCC | Phone | 3316 | P.O. Box 172567 | Denver | CO | 80217-2567 |
| Tulip Cleaning Services | Canada | Cleaning | N/A | 480 Scotchmere Crt. | Waterloo | ON | N2K 3E6 |
| UGI Energy Services | Durham | Gas | 61107804 | P.O. Box 827032 | Philadelphia | PA | 19182 |
| UGI Utilities | Durham | Gas | 5073742873181 5073742916091 | P.O. Box 71203 | Philadelphia | PA | 19176 |
| Union Gas | Canada | Heat | 320-3197-206-0149 | P.O. Box 2025 | Chatham | ON | N7M 6C7 |
| Verizon | Durham | Phone | 8562939500010 | P.O. Box 4833 | Trenton | NJ | 08650-4833 |
| Verizon | Durham | Phone | 4102350691010 | P.O. Box 660720 | Dallas | TX | 75266-0720 |
| Verizon | Durham | Phone | 4122811568122 | P.O. Box 15026 | Albany | NY | 12212 |
| Verizon | Durham | Phone | 10067771855 | P.O. Box 371838 | Pittsburgh | PA | 15250-7838 |
| Verizon | Durham | Phone | 9729156848122 1090002858301 1090002885301 9727530711010 | P.O. Box 920041 | Dallas | TX | 75392-0041 |
| Verizon | Durham | Phone | 6102644510121 6103170109122 6103172087122 | P.O. Box 28000 | Lehigh Valley | PA | 18002-8000 |

3

| Utility Provider | Location | Services Provided | Account No. | Address | City | State/ Prov. | Zip |
|---|---|---|---|---|---|---|---|
|  |  |  | 6103174300122 |  |  |  |  |
| Verizon | Durham | Phone | 1000677185 | P.O. Box 371392 | Pittsburgh | PA | 15250-1392 |
| Verizon | Durham | Phone | 100067771862 | P.O. Box 70129 | Chicago | IL | 60673-0129 |
| Verizon Conferencing | Wheeling | Phone | 01-00067771855-00889 | P.O. Box 70129 | Chicago | IL | 60673-0129 |
| Verizon Wireless | BCC | Phone | 480270639-00001 | P.O. Box 408 | Newark | NJ | 07101-0408 |
| Via Disposal Service | Canada | Waste | N/A | 235 Belfield Road | Etobicoke | ON | M9W 1H2 |
| Waste Management | Wheeling | Waste Disposal | 421-8098467-2008-8 | P.O. Box 4648 | Carol Stream | IL | 60197-4648 |
| Xcel Energy | BCC | Gas/Electric | 52-9382061-0 52-9626118-6 | P.O. Box 9477 | Minneapolis | MN | 55484-9477 |

RLF1 3775550v. 5