# EXHIBIT B


ORIGINAL

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| Böwe Systec, Inc., et al.,[1] ) | Case No. 11-11187 (PJW) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |
| ) | Re: Docket No. 5 |

## INTERIM ORDER PURSUANT TO SECTIONS 105(a), 345(b), 363(b), 363(c) AND 364(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6003 AND 6004 AUTHORIZING THE DEBTORS TO (I) CONTINUE USING EXISTING CENTRALIZED CASH MANAGEMENT SYSTEM, AS MODIFIED, (II) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED TO THE USE OF THE CASH MANAGEMENT SYSTEM, AND (III) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS

Upon the Motion, dated April 18, 2011 (the "Motion"), of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), pursuant to sections 105(a), 345(b), 363(b), 363(c) and 364(a) of the Bankruptcy Code[2] and Bankruptcy Rules 6003 and 6004, for authority to (i) continue to operate the Cash Management System as modified, (ii) honor certain prepetition obligations related to the use of the Cash Management System, (iii) maintain existing business forms, and (iv) maintain existing Bank Accounts, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, are Böwe Systec, Inc. (1423), Böwe Bell + Howell Holdings, Inc. (9926), BBH, Inc. (9928), Böwe Bell + Howell Company (0100), Böwe Bell + Howell Postal Systems Company (4944), BCC Software, Inc. (3481) and Böwe Bell + Howell International Ltd. (0001). The debtors' corporate offices are located at 760 S. Wolf Road, Wheeling, IL 60090.

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "Hearing"); and the appearances of all interested parties having been noted in the record of the Hearing; and upon the *Declaration of Michael Wilhelm in Support of First Day Motions* and the *Declaration of Oliver Bialowons in Support of First Day Motions*, the record of the Hearing, and all of the proceedings had before the Court; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their creditors, and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth herein on an interim basis.

2. The Debtors are authorized, empowered and directed, pursuant to sections 105(a) and 363(c) of the Bankruptcy Code, to continue to use their Cash Management System, as more fully described in the Motion and subject to the additions described in the Motion, to manage their cash in a manner consistent with the Debtors' prepetition practice, and to collect, concentrate, and disburse cash in accordance with the Cash Management System, including intercompany transfers of funds among the Debtors, in each case as modified to comply with the requirements that have been specifically approved by the Cash Management Banks set forth in any approved debtor-in-possession financing facility, any budget in connection therewith and/or any order regarding the use of cash collateral.

3. The Debtors shall maintain accurate and detailed records of all transfers, including intercompany transfers, so that all transactions may be readily ascertained, traced,

2

recorded properly and distinguished between prepetition and post-petition transactions. The Debtors shall make no loans to non-Debtor affiliates absent further order of the Court.

4. The Debtors are authorized to: (i) designate, maintain and continue to use any or all of their existing Bank Accounts, including those listed on Exhibit A hereto, in the names and with the account numbers existing immediately prior to the Petition Date (which Exhibit A shall be promptly amended to identify any Bank Accounts inadvertently omitted therefrom and which Exhibit A, as so amended, shall be served within two (2) business days therefrom on the U.S. Trustee, Contrado BBH Investments, LLC (the "Lender"), and the statutory committee of unsecured creditors (when appointed), (ii) deposit funds in and withdraw funds from such Bank Accounts by all usual means including, without limitation, checks, drafts, wire transfers, automated clearinghouse transfers ("ACH Transfers") and other debits, (iii) pay any bank fees or charges associated with the Bank Accounts, and (iv) treat their prepetition Bank Accounts for all purposes as debtors in possession accounts.

5. Except as otherwise provided in this Order, all Cash Management Banks are authorized and directed to continue to maintain, service, and administer the Bank Accounts without interruption and in the usual and ordinary course, and to receive, process, honor and pay any and all checks, drafts, wire transfers, ACH Transfers or other debits drawn on any of the Bank Accounts after the Petition Date by the holders or makers thereof.

6. Unless otherwise specifically agreed to by the relevant Cash Management Bank, the Debtors are authorized and hereby direct each such Cash Management Bank to stop payment on, and each such Cash Management Bank is directed not to honor, any and all checks, drafts, wires or ACH Transfers drawn or issued before the Petition Date, but presented on or after the Petition Date; provided that the Debtors, to the extent necessary to comply with any order(s) of this Court authorizing payment of certain prepetition claims, shall re-issue after the Petition Date

such checks, drafts, wire transfers, ACH Transfers or other debits issued before the Petition Date. The Debtors shall provide each Bank with the final prepetition check number for checks issued prepetition on all Bank Accounts and the check number beginning a new check sequence for use postpetition for the applicable Bank Account, such new check sequence to begin with a number that is at least fifty (50) numbers higher than the last check issued from such account prepetition.

7. The Debtors are granted an additional sixty (60) days from the Petition Date to come into compliance with section 345(b) of the Bankruptcy Code. If the Debtors determine that they are unable to comply with the requirements of section 345(b) within the sixty (60) day period, the Debtors shall file a motion seeking authority to deviate from such requirements.

8. Nothing contained herein shall prevent the Debtors from opening any additional bank accounts if the Lender consents in writing, or closing any existing Bank Account(s) as they may deem necessary and appropriate, and the Cash Management Banks are authorized to honor the Debtors' requests to open or close, as the case may be, such Bank Accounts or additional bank accounts; provided, however, that any new account shall be with (a) Harris, or (b) a bank that is insured with the Federal Deposit Insurance Corporation and organized under the laws of the United States or any state therein that is acceptable to the Lender and which has executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, or is willing to immediately execute such an agreement, and such account is subject to any liens granted in any approved debtor-in-possession financing facility and under an arrangement acceptable to the Lender; provided, further, that any and all accounts opened by any of the Debtors on or after the Petition Date at any bank that is acceptable in writing to the Lender shall, for purposes of this Order, be deemed a Bank Account (as if it had been opened prior to the Petition Date and listed on Exhibit A hereto); provided, further, that the Debtors shall give notice within fifteen (15) days to the Office of the United States Trustee for the District of Delaware

RLF1 3985958v. 1

and any statutory committees appointed in these Chapter 11 Cases should the Debtors open or close a bank account.

9. For banks at which the Debtors hold bank accounts that are party to a Uniform Depository agreement with the Office of the United States Trustee for the District of Delaware, within fifteen (15) days of the date of entry of this Order the Debtors shall (a) contact each bank, (b) provide the bank with each of the Debtors' employer identification numbers and (c) identify each of their bank accounts held at such banks as being held by a debtor in possession in a bankruptcy case.

10. For banks at which the Debtors hold accounts that are not party to a Uniform Depository agreement with the Office of the United States Trustee for the District of Delaware, the Debtors shall use their good-faith efforts to cause the banks to execute a Uniform Depository agreement in a form prescribed by the Office of the United States Trustee within forty-five (45) days of the date of this Order. The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

11. All cash held in each of the Bank Accounts (existing or to come into existence hereafter) shall be subject to (i) the lien and security interest of the DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders (in each case, as defined in the Debtors' DIP financing motion), under their respective loan documents and as provided for in the Debtors' DIP financing motion; and (ii) the lien granted to Harris in respect of the Harris Cash Management Expenses (defined below), and upon written notice from the DIP Agent of the existence of an Event of Default or Terminating Event as defined in the DIP Credit Agreement (as defined in the Debtors' DIP financing Motion), the Cash Management Banks shall promptly comply with the instructions of the DIP Agent to transfer any available funds in the Bank Accounts as directed by

RLF1 3985958v. 1

the DIP Agent; provided, however, that (i) a Cash Management Bank may set off and charge against a Bank Account the face amount of each item deposited into or credited to such Bank Account and included in the available funds which were transferred to the DIP Agent pursuant to the DIP Agent's direction and for any reason subsequently returned unpaid, not collected or subject to an adjustment entry, together with such Cash Management Bank's reasonable usual and customary service charges and fees in connection with such Bank Account and such item (collectively, "Permitted Debits") or (ii) if a Cash Management Bank is unable to set off or charge Permitted Debits against such Bank Account due to the fact that such related available funds were transferred to the DIP Agent pursuant to the DIP Agent's direction, the DIP Agent shall, promptly upon demand, reimburse such Cash Management Bank in an amount equal to the lesser of (x) the amount of such Permitted Debits to the extent of such items that provided available funds actually transferred, received and then presently held by the DIP Agent pursuant to the direction of the DIP Agent or (y) the aggregate amount transferred and actually received and then presently held by the DIP Agent from such Bank Account pursuant to the instructions of the DIP Agent, in each case without need for further order of this Court.

12. The Lender shall have all of the rights, obligations and responsibilities of a "Secured Party" under any prepetition account control agreements just as if such Lender had executed the account control agreement and was the "Secured Party" under such account control agreement, and each Cash Management Bank shall take direction from the Lender as if such Lender is the "Secured Party" under such account control agreements.

13. The Debtors shall mark the full name of the relevant debtor in possession exactly as it appears on the voluntary petition as well as the term "Debtor in Possession" and the case number under which the Chapter 11 Cases are being jointly administered on their check stock

6

RLF1 3985958v. 1

and wire transfer instructions; however, the Debtors shall not be required to order new check stock with such marking until they exhaust their current stock.

14. Subject to final order, any obligations, chargebacks, returns, liabilities, costs, charges, fee or expenses incurred by Harris, in its capacity as a Cash Management Bank, that result from ordinary course transactions under the Cash Management System (the "Harris Cash Management Expenses") shall be paid by the Debtors and shall be accorded superpriority status, with priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and (i) secured such as if it was part of the indebtedness of any approved debtor-in-possession financing facility with the superpriority postpetition liens granted to Harris, or (ii) if there is no approved debtor-in-possession financing facility, secured just as if it was part of prepetition secured indebtedness with a replacement lien on all prepetition and postpetition collateral granted as adequate protection.

15. Any Cash Management Bank is authorized to charge back, offset, expense or deduct from any of the Bank Accounts maintained at such Cash Management Bank any amounts (including service charges) incurred by it resulting from cash management expenses, returned checks or other returned items, including, but not limited to, dishonored checks, wire transfers, drafts, ACH Transfers or other debits, regardless of whether such amounts were deposited prepetition and regardless of whether the returned items relate to prepetition or postpetition items, and that the normal servicing changes may be assessed and deducted by such Cash Management Bank from funds held in the Bank Accounts at such Cash Management Bank with respect to the Cash Management System in the ordinary course of business as well as any other cash management expenses, and for these purposes any restrictions under the automatic stay provisions of section 362 of the Bankruptcy Code are lifted in all respects.

7

RLF1 3985958v. 1

16.     The Cash Management Banks are authorized and directed to accept and honor and may rely without any investigation on all representations from the Debtors as to which checks, drafts, wire transfers, ACH Transfers or other debits should be honored or dishonored consistent with any order(s) of this Court, whether the checks, drafts, wire transfers, ACH Transfers or other debits are dated prior to, or on or subsequent to the Petition Date, and whether or such Cash Management Bank believes the payment is or is not authorized by any order(s) of the Court; provided, however, should any Cash Management Bank honor a prepetition check, draft, wire transfer, ACH Transfer or other debit drawn on a Bank Account (a) at the direction of any of the Debtors to honor such prepetition check or item, (b) in good faith belief that the Court has authorized such prepetition item to be honored, or (c) as a result of an innocent mistake made despite the implementation of customary item handling procedures, such Cash Management Bank shall not be deemed to be, nor shall be liable to, the Debtors or their estates or otherwise in violation of this Order.

17.     The Cash Management Banks shall have no liability for any operational processing errors which are the result of human error and no Cash Management Bank shall be liable for any delays or interruption of any performance of service contemplated by this Order if caused directly or indirectly by equipment or communication systems failure, fire or other casualty, strikes, act of God, civil disturbance, action of governmental authorities or other causes or circumstances beyond the reasonable control of the Cash Management Bank.

18.     The Debtors and each Cash Management Bank are hereby authorized and directed to continue to perform pursuant to the terms of any prepetition cash management agreement that may exist between them, except and to the extent otherwise directed by the terms of this Order and except as amended, modified, or supplemented by agreement between the Debtors and such Cash Management Bank.  The parties to such agreements shall continue to enjoy the rights and

8

remedies afforded them under such agreements, except to the extent modified by the terms of this Order or by operation of the Bankruptcy Code. The purpose of this Order is to ensure that each Cash Management Bank acting in reliance on this Order shall not be liable for its actions taken in reliance upon this Order or in its postpetition processing of checks and items received pursuant to the Cash Management System.

19. Any and all intercompany claims against a Debtor by another Debtor or a non-debtor affiliate, arising after the Petition Date, shall be accorded administrative expense priority in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code junior and subordinate in right of payment to the superpriority administrative expense claims granted to the Lender and Harris as Cash Management Bank under sections 507(b) and 364 of the Bankruptcy Code.

20. The Debtors are authorized to direct the Cash Management Banks, and the Cash Management Banks are authorized and directed, to pay obligations in accordance with this or any separate order of this Court, subject to the terms of any approved debtor-in-possession financing facility, any budget in connection therewith and/or any order regarding the use of cash collateral, but the Cash Management Banks shall not be responsible for ensuring compliance with such facility, budget or order.

21. The Debtors shall cause a copy of this Order to be served on all of the Cash Management Banks at which any Bank Account is maintained within five business days of the date hereof.

22. Bankruptcy Rule 6003 has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

23. Notice of the Motion as provided therein constitutes good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are hereby waived.

24. Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon entry of the Order.

25. A final hearing on the Motion shall be heard before the Bankruptcy Court on May 12, 2011 at 9:30 a.m. (EDT) at the United States Bankruptcy Court for the District of Delaware.

26. Any party-in-interest objecting to the relief sought in the Final Order shall submit any such objection in writing and file the same with the Bankruptcy Court (with a courtesy copy to chambers) and serve (so as to be received) such objection by no later than May 9, 2011 at 12:00 p.m. noon (EDT) on the following: (i) proposed counsel to Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq.), (ii) the Office of the United States Trustee for the District of Delaware, 844 N. King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Juliet M. Sarkessian, Esq.), and (iii) counsel to Harris, Chapman and Cutler LLP, 111 West Monroe Street, Chicago, Illinois 60603-4080 (Attn: Ann E. Acker);

27. This Court hereby retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: April 20, 2011
Wilmington, Delaware

_____
THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

10

RLF1 3985958v. 1

# **EXHIBIT A**

# Current Cash Management System Bank Accounts

| Bank Name | Account Type | Account Numbers |
|---|---|---|
| HARRIS | Lockbox Account | *6702 |
| HARRIS | Lockbox Account | *1297 |
| HARRIS | Lockbox Account | *9093 |
| HARRIS | Collections Account | ***7879 |
| HARRIS | Collections Account | ***0658 |
| HARRIS | Collections Account | ***4565 |
| HARRIS | Canadian Multi-Currency Account | ***9016 |
| FIFTH THIRD | Credit Card Collection Account | ********2728 |
| FIFTH THIRD | Credit Card Collection Account | ********4080 |
| FIFTH THIRD | Credit Card Collection Account | ********0516 |
| FIFTH THIRD | Credit Card Collection Account | ********8493 |
| FIFTH THIRD | Credit Card Collection Account | ********8501 |
| HARRIS | Central Operations Account | ***0674 |
| HARRIS | Checking Account | ***1409 |
| HARRIS | Checking Account | ***2373 |
| HARRIS | Payroll Account | ***1649 |
| HARRIS | Distribution Account | ***4557 |
| HARRIS | Filemaster Holdings Account | ***1706 |
| HARRIS | Euro Multicurrency Account | ********0658 |

RLF1 3985958v. 1

| Bank Name | Account Type | Account Numbers |
|---|---|---|
| HARRIS | GBP Multicurrency Account | ********0658 |
| CIBC | CAD Account | ********9813 |
| CIBC | USD Account | ********2911 |

RLF1 3985958v. 1