# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Böwe Systec, Inc., <u>et al.</u>,[1] | Case No. 11-11187 (PJW) |
| Debtors. | Jointly Administered |
| | Hearing Date: 5/12/11 at 9:30 a.m. (EDT) |
| | Obj. Deadline: 5/5/11 at 4:00 p.m. (EDT) |

## DEBTORS' APPLICATION FOR AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF LAZARD MIDDLE MARKET LLC AS THE DEBTORS' INVESTMENT BANKER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE *NUNC PRO TUNC* TO THE PETITION DATE, AND (II) WAIVING CERTAIN REPORTING REQUIREMENTS PURSUANT TO DELAWARE LOCAL RULE 2016-2(g)

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") hereby file this application (the "<u>Application</u>") for an order authorizing the Debtors to retain and employ Lazard Middle Market LLC ("<u>LMM</u>") as investment banker to the Debtors *nunc pro tunc* to the Petition Date (as defined below), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"). In support of the Application, the Debtors rely on the declaration of Andrew Torgove, Managing Director at LMM (the "<u>Torgove Declaration</u>"), a copy of which is annexed hereto as <u>Exhibit A</u>, and respectfully state as follows:

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, are Böwe Systec, Inc. (1423), Böwe Bell + Howell Holdings, Inc. (9926), BBH, Inc. (9928), Böwe Bell + Howell Company (0100), Böwe Bell + Howell Postal Systems Company (4944), BCC Software, Inc. (3481) and Böwe Bell + Howell International Ltd. (0001). The debtors' corporate offices are located at 760 S. Wolf Road, Wheeling, IL 60090.

**JURISDICTION**

1. The Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014(a) of the Bankruptcy Rules, and Rule 2014-1 of the Local Rules.

**BACKGROUND[2]**

2. On April 18, 2011(the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or official committee of unsecured creditors has been appointed in the Chapter 11 Cases.

**RELIEF REQUESTED**

3. By this Application, the Debtors seek to employ LMM, effective as of the Petition Date, to perform the investment banking services set forth below and pursuant to the terms and conditions of the engagement letter between LMM and the Debtors, dated as of June 24, 2010, and annexed hereto as Exhibit B (including all Exhibits and Schedules thereto, the "Engagement Letter").[3] Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014(a) of the

---

[2] A description of the Debtors' business, the reasons for filing these chapter 11 cases and the relief sought from this Court to allow for a transition into Chapter 11 are set forth in the *Declaration of Michael Wilhelm in Support of First Day Motions* [Docket No. 16] and the *Declaration of Oliver Bialowons in Support of First Day Motions* [Docket No. 17].

[3] This Application summarizes the terms of the Engagement Letter. To the extent there is a conflict between the summary herein and the Engagement Letter, the terms of the Engagement Letter shall govern.

Bankruptcy Rules, and Rule 2014-1 of the Local Rules, the Debtors request entry of an order authorizing such employment substantially in the form annexed hereto as Exhibit C.

4. Since December 2009, LMM's professionals have been working closely with the Debtors' management and other professionals to: (a) review strategic options; (b) consult on business plan forecasts; (c) negotiate and interface with the Debtors' lenders and their advisors; (d) seek and advise the Debtors in connection with financing options; and (e) coordinate the professional services necessary for the sale process in these Chapter 11 Cases.[4] The Debtors have selected LMM as their investment banker because of LMM's extensive experience and knowledge of the Debtors' businesses, financial affairs and capital structure and LMM's expertise in business reorganizations under chapter 11 of the Bankruptcy Code. Accordingly, the Debtors believe that LMM is well qualified to represent them in these Chapter 11 Cases.

## QUALIFICATIONS OF LMM

5. In consideration of the size and complexity of their business, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced investment bankers will substantially enhance their attempts to maximize the value of their estates.

6. LMM is a subsidiary of Lazard Frères & Co. LLC ("LF&Co."), which is the primary US operating subsidiary of a preeminent international financial advisory and asset management firm. LF&Co., together with its predecessors and affiliates, has been advising clients around the world for over 150 years. LMM has dedicated professionals who provide restructuring services to its clients. LMM's professionals have extensive experience in matters

---

[4] On December 14, 2009, the Debtors and LMM entered into an engagement agreement (the "Financing EA"), whereby the Debtors retained LMM as their sole investment banker in connection with a Financing Transaction (as defined in the Financing EA). Except as specifically set forth in Section 1(h) thereof, the Engagement Letter superseded and replaced the Financing EA in its entirety.

3

involving complex financial restructurings and have a reputation for creativity in complex situations. LMM and/or its principals have been involved as advisor to debtor, creditor and equity constituencies in many reorganization cases. In addition, the current managing directors, directors, vice presidents and associates of LMM's parent company, LF&Co., have extensive experience working with financially troubled companies in complex financial restructurings out-of-court and in chapter 11 proceedings. LF&Co. and its principals have been involved as advisor to debtors, creditors, equity constituencies and government agencies in many reorganization cases. Since 1990, LF&Co.'s professionals have been involved in over 250 restructurings, representing over $1 trillion in debtor assets.

7. LMM has an excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States. Most recently, this Court and other bankruptcy courts have approved the retention of LMM as investment banker and financial advisor for the debtors in the following cases: In re Chem Rx Corporation, Inc., et al., Case No. 10-11567 (Bankr. D. Del. 2010), In re American Safety Razor Company, LLC, et al., Case No. 10-12351 (Bankr. D. Del. 2010), In re True Temper Sports, Inc., et al., Case No 09-13446 (Bankr. D. Del. 2009); In re Heartland Automotive Holdings, Inc., et al., Case No. 08-40047 (Bankr. N.D. Tex. 2008); and In re Inphonic, Inc., et al., Case No. 07-11666 (Bankr. D. Del. 2007). As such, the Debtors believe that LMM is well-qualified and able to advise the Debtors in a cost-effective, efficient, and timely manner.

8. The LMM professionals involved with the Debtors' engagement are familiar with the Debtors' business, financial affairs, and capital structure. Since the firm's initial retention on December 14, 2009, LMM professionals have worked closely with the Debtors' management and other professionals to understand the Debtors' business, prepare cash flow projections, and

4

coordinate the necessary professional services and other vital aspects of preparing for these Chapter 11 Cases.  Accordingly, the Debtors believe that LMM has developed significant relevant experience and expertise regarding the Debtors.  Accordingly, the Debtors submit that the retention of LMM on the terms and conditions set forth herein and in the Engagement Letter is necessary and appropriate, is in the best interests of their estates and creditors, and all other parties in interest, and should be granted.

## SERVICES TO BE PROVIDED

9.　　Subject to the allocation of assignments among the Debtors' professionals, as described herein, the Debtors seek authority to employ and retain LMM to render the following investment banking services:

(a) Reviewing and analyzing the Debtors' business, operations and financial projections;

(b) Evaluating the Debtors' potential debt capacity in light of their projected cash flows;

(c) Assisting in the determination of a capital structure for the Debtors;

(d) Assisting in the determination of a range of values for the Debtors on a going concern basis;

(e) Advising the Debtors on tactics and strategies for negotiating with the Stakeholders;[5]

(f) Rendering financial advice to the Debtors and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

(g) Advising the Debtors on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to the Restructuring;

---

[5] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Engagement Letter

(h) Advising and assisting the Debtors in evaluating potential Financing[6] transactions by the Debtors, and, subject to LMM's agreement so to act and, if requested by LMM, to execution of appropriate agreements, on behalf of the Debtors, contacting potential sources of capital as the Debtors may designate and assisting the Debtors in implementing such Financing (it being agreed that the provisions of Section 8 and Exhibit B to the Financing EA that specifically apply to Private Placements (as that term is defined in the Financing EA) shall apply to any Financing consummated outside of bankruptcy that would constitute a Private Placement);

(i) Assisting the Debtors in preparing documentation within LMM's area of expertise that is required in connection with the Restructuring;

(j) Assisting the Debtors in identifying and evaluating candidates for a potential Sale Transaction, advising the Debtors in connection with negotiations and aiding in the consummation of a Sale Transaction;[7]

(k) Attending meetings of the Board of Directors of the Debtors and its committees with respect to matters on which LMM has been engaged to advise;

(l) Providing testimony, as necessary, with respect to matters on which LMM has been engaged to advise under the Engagement Letter in any proceeding before the Bankruptcy Court; and

(m) Providing the Debtors with other financial restructuring advice.

10. Since the filing of these cases, the Debtors also have or shortly will submit applications to retain (a) Richards, Layton & Finger, P.A., as bankruptcy counsel; (b) McDermott Will & Emery, as special corporate counsel, (c) Torys LLP, as Canadian counsel; (d)

---

[6] As used in the Engagement Letter, the term "Financing" means any transaction or series of transactions, whether or not consummated in connection with a case under the Bankruptcy Code, involving the public or private issuance, sale, or placement of newly issued (including securities held in treasury) equity, equity-linked or debt securities, instruments, or obligations of the Debtors, including any debtor-in-possession financing or exit financing.

[7] As used in the Engagement Letter, the term "Sale Transaction" means any transaction or series of transactions involving (a) an acquisition, merger, consolidation, or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with another company; (b) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended), of equity interests or options, or any combination thereof constituting a majority of the then outstanding stock of the Debtors or possessing a majority of the then outstanding voting power of the Debtors (except as may occur with current Stakeholders as a result of a Restructuring); (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of significant assets, securities or other interests of the Debtors or (d) the formation of a joint venture or partnership with the Debtors or direct investment in the Debtors for the purpose of effecting a transfer of an interest in the Debtors to a third party. For purposes hereof, any sale of newly issued securities (including securities held in treasury) shall be a In-Bankruptcy Financing and not a Sale.

Focus Management Group USA, Inc, as financial advisor; and (e) The Garden City Group, Inc. as claims agent. Each of these firms works under the direction of the Debtors' management. The Debtors are committed to minimizing any duplication of services. To that end, LMM is prepared to work closely with each professional to ensure that there is no duplication of effort or cost.

**PROFESSIONAL COMPENSATION**

11. Debtors have agreed to compensate LMM for professional services and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, guidelines established by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), and any other applicable procedures and orders of the Court and consistent with the proposed compensation set forth in the Engagement Letter. LMM's decision to continue with its engagement to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment and to be compensated for its services and reimbursed for the expenses it incurs in accordance with its customary billing practices. These fees and the fee structure reflect that such restructuring and other complex matters are typically national in scope and involve great complexity, high stakes, and severe time pressures.

12. In summary, the fee structure (as set forth below, the "Fee Structure") provides for the following compensation to LMM:

    a. A monthly fee of $100,000 (the "Monthly Fee"), payable on execution of the Engagement Letter and on the 1st day of each month thereafter until the earlier of the completion of the Restructuring or the termination of LMM's engagement pursuant to Section 10 of the Engagement Letter. Fifty percent (50%) of all Monthly Fees paid plus fifty percent (50%) of the consulting fee paid to LMM pursuant to the Financing EA paid shall be credited (without duplication) against any Restructuring Fee, Sale

7

Transaction Fee or Minority Sale Transaction Fee payable; provided, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable.

    b.    A fee equal to $1.5 million, payable upon the consummation of a Restructuring (the "<u>Restructuring Fee</u>").

    c.    (i) If, whether in connection with the consummation of a Restructuring or otherwise, the Debtors consummate a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Debtors, LMM shall be paid a fee (the "<u>Sale Transaction Fee</u>") equal to $1.5 million.

        (ii) If, whether in connection with the consummation of a Restructuring or otherwise, the Debtors consummate any Sale Transaction not covered by clause (i) above, the Debtors shall pay LMM a fee (the "<u>Minority Sale Transaction Fee</u>") to be mutually agreed in good faith by the Debtors and LMM, which fee will appropriately compensate LMM in light of the magnitude and complexity of the transaction and the fees customarily paid to investment bankers of similar standing for similar transactions.

        (iii) Any Sale Transaction Fee or Minority Sale Transaction Fee shall be payable upon consummation of the applicable Sale Transaction.

    d.    Notwithstanding the foregoing, LMM shall not at any time be entitled to receive both a Restructuring Fee, as described in (b) above, and a Sale Transaction Fee or Minority Sale Transaction Fee, as described in (c) above, as a result of the consummation of a transaction or transactions for which LMM has been engaged. Instead, in the event more than one of a Restructuring Fee, Sale Transaction Fee or Minority Sale Transaction Fee becomes payable, LMM shall be entitled to the highest fee payable, but shall not receive more than one fee.

13.    In addition to any fees that may be payable to LMM and, regardless of whether any transaction occurs, the Debtors shall promptly reimburse LMM for all: (A) reasonable expenses incurred by LMM (including travel and lodging, data processing and communications charges, courier services and other expenditures) and (B) the reasonable fees and expenses of counsel, if any, retained by LMM (other than any related to the negotiation of the Engagement Letter).

14. The Engagement Letter will automatically expire on consummation of a Restructuring or Sale Transaction and may be earlier terminated by the Debtors or LMM at any time without liability or continuing obligation to the Debtors or LMM, except that following such termination and any expiration of LMM's engagement (a) LMM shall remain entitled to any fees accrued pursuant to Section 2 of the Engagement Letter but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, as the case may be, and (b) in the case of termination by the Debtors, LMM shall remain entitled to full payment of all fees contemplated by Section 2 of the Engagement Letter in respect of any Restructuring and any Sale Transaction that is closed or as to which an agreement in principle is entered into during the period from the date of the Engagement Letter until one year following such termination or expiration, as the case may be.

15. The Fee Structure is consistent with and typical of compensation arrangements entered into by LMM and other comparable firms in connection with the rendering of similar services under similar circumstances. The Debtors believe that the ultimate benefit of LMM's services cannot be measured by reference to the number of hours to be expended by LMM's professionals in the performance of such services. Indeed, the Debtors and LMM have agreed upon the Fee Structure in anticipation that (a) a substantial commitment of professional time and effort will be required of LMM in connection with these cases, (b) such commitment may foreclose other opportunities for LMM, and (c) the actual time and commitment required of LMM and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for LMM.

16. LMM will maintain records in support of any expenses incurred in connection with the rendering of its services in these cases. As LMM's compensation will be calculated and

paid based on certain transaction fees (in addition to Monthly Fees), LMM requests that it not be required to file time records in accordance with Bankruptcy Rule 2016(a), Local Rule 2016-2, and the U.S. Trustee Fee Guidelines. Notwithstanding that LMM does not charge for its services on an hourly basis, LMM will nonetheless maintain records (in summary format) of its services rendered for the Debtors in one-half hour increments, including reasonably detailed descriptions of those services and the individuals who provided those services, and will present such records to the Court.

17. As part of the compensation payable to LMM under the Engagement Letter, the Debtors have also agreed to the terms and conditions, including indemnification and contribution provisions, of the indemnification letter (the "Indemnification Letter") annexed to the Engagement Letter as Addendum A and incorporated in the Engagement Letter in its entirety.

18. The Indemnification Letter provides, among other things, that the Debtors will indemnify and hold harmless LMM and other Indemnified Persons, as defined in the Indemnification Letter, except to the extent that any loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that is it no longer subject to appeal or review to have resulted from such Indemnified Person's bad faith, gross negligence or willful misconduct.

19. The Debtors believe that the Indemnification Letter is customary and reasonable for restructuring professionals, both out-of-court and in Chapter 11 Cases, and reflects the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions. See, e.g., In re Magic Brands, LLC, No. 10-11310 (BLS) (Bankr. D. Del. June 8, 2010) (authorizing indemnification of FTI Consulting, Inc. by debtors); In re Regent Commc'ns, Inc., No. 10-10632 (KG) (Bankr. D. Del. Mar. 22, 2010) (authorizing

indemnification of Oppenheimer & Co. Inc. by debtors); In re Premier Int'l Holdings Inc., No. 09-12019 (CSS) (Bankr. D. Del. Aug. 13, 2009) (authorizing indemnification of Peter J. Solomon Company, L.P. by debtors); In re Tropicana Entm't, LLC, No. 08-10856 (KJC) (Bankr. D. Del. May 5, 2008) (authorizing indemnification of LF&Co. by debtors); In re New Century TRS Holdings, Inc., No. 07-10416 (KJC) (Bankr. D. Del. Apr. 26, 2007) (same).

20. The terms and conditions of the Engagement Letter and the Indemnification Letter were negotiated by the Debtors and LMM at arm's length and in good faith. The Debtors respectfully submit that the indemnification provisions contained in the Indemnification Letter, viewed in conjunction with the other terms of LMM's proposed retention, are reasonable and in the best interests of the Debtors, their estates and creditors in light of the fact that the Debtors require LMM's services to maximize the value of the estate for all parties in interest. Accordingly, as part of this Application, the Debtors request that the Court approve the Indemnification Letter.

21. In light of the foregoing, and given the numerous issues that LMM may be required to address in the performance of its services hereunder, LMM's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for LMM's services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Letter and the Indemnification Letter are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

22. To deny the relief requested herein will deprive the Debtors of the assistance of uniquely qualified investment bankers and would affect an unjust disadvantage to the Debtors and all parties in interest. If the Debtors are not permitted to retain LMM, they would be forced to engage new investment bankers who lack a thorough understanding of the Debtors' business

and the restructuring initiatives that have been implemented over the course of the last few months and which will continue through the pendency of these cases. It would require the commitment of significant resources for a newly retained investment advisor to get up to speed given the steep learning curve involved. Moreover, comparable investment bankers would charge an equivalent level of fees.

## COMPENSATION PAID TO LMM BY THE DEBTORS

23. During the 9-month period preceding the Petition Date, the Debtors made aggregate fee payments to LMM of $969,657.43 pursuant to the terms of the Engagement Letter as follows. The Debtors paid LMM its $100,000 Monthly Fee for the nine previous months. In addition, the Debtors made aggregate expense reimbursements to LMM of $69,657.43. No amounts are due to LMM as of the Petition Date.

## BASIS FOR RELIEF

24. The Debtors submit that the retention of LMM is appropriate under sections 327(a) and 328(a) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code empowers a debtor, with the Court's approval, to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons . . . ." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines "disinterested person" as a person that:

    a. is not a creditor, an equity security holder, or an insider;

    b. is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

    c. does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

25. To the best of the Debtors' knowledge and except as otherwise set forth in the Torgove Declaration, the managing directors, senior directors, directors, vice presidents, senior

associates, associates, analysts and administration of LMM: (a) do not have any connection with the Debtors or their affiliates, their creditors, the U.S. Trustee, or any person employed in the office of the U.S. Trustee, or any other party in interest, or their respective attorneys and accountants, (b) are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, and (c) do not hold or represent any interest adverse to the Debtors' estates.

26. If any new relevant facts or relationships are discovered or arise, LMM will use reasonable efforts to identify such further developments.

27. The Debtors submit that the retention of LMM on the terms and conditions set forth herein and in the Engagement Letter is in the best interests of the Debtors, their estates, their creditors and all parties in interest.

## NO PRIOR REQUEST

28. No previous request for the relief sought herein has been made to this or any other Court.

## NOTICE

29. No trustee, examiner or creditors' committee has been appointed in these Chapter 11 Cases. The Debtors have provided notice of this Motion by first class mail to: (a) the Office of the United States Trustee for the District of Delaware; (b) each of the Debtors' creditors holding the twenty (20) largest unsecured claims on a consolidated basis; (c) counsel to the Debtors' prepetition secured lenders; (d) the Debtors' proposed post-petition lenders; (e) the Internal Revenue Service; (f) the United States Department of Justice; and (g) the Securities and Exchange Commission.

## CONCLUSION

WHEREFORE, the Debtors respectfully request the entry of an order, substantially in the form annexed hereto as Exhibit C, (a) authorizing the retention and employment of LMM; and (b) granting such other and further relief as the Court deems just and proper.

Dated:    April 25, 2011
             Chicago, Illinois

On behalf of Böwe Systec Inc., Böwe Bell + Howell Holdings, Inc., BBH, Inc., Böwe Bell + Howell Company, Böwe Bell + Howell Postal Systems Company, BCC Software, Inc. and Böwe Bell + Howell International Ltd.

/s/ Oliver Bialowons
Oliver Bialowons
Authorized Representative

RLF1 3979840v. 2