# EXHIBIT B

**Engagement Letter**

LAZARD

LAZARD MIDDLE MARKET LLC
11 WEST 42ND STREET
29TH FLOOR
NEW YORK, NY 10036
PHONE +1 212.758.9575
FAX +1 212.758.3833
www.lazardmm.com

June 24, 2010

Mr. George Marton
Chief Executive Officer
BBH, Inc.
760 South Wolf Road
Wheeling, IL 60090

Attention: Mr. George Marton
Chief Executive Officer

Dear Mr. Marton:

This letter agreement (the "Agreement") confirms the understanding and agreement between Lazard Middle Market LLC ("LMM") and BBH, Inc. ("BBH") and its controlled subsidiaries (collectively with any entity formed or used for the purposes set forth herein, the "Company").

*Assignment Scope:*

On December 14, 2009, the Company and LMM entered into an engagement agreement (the "Financing EA"), whereby the Company retained LMM as its sole investment banker in connection with a Financing Transaction (as defined in the Financing EA). Except as specifically set forth in Section 1(h) below, this Agreement supersedes and replaces the Financing EA in its entirety.

The Company hereby retains LMM as its sole investment banker to provide BBH with general restructuring advice and to advise it in connection with any Restructuring or Sale Transaction (each as defined below) on the terms and conditions set forth herein. As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization (whether or not pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code")) and/or recapitalization of all or a significant portion of the Company's outstanding indebtedness (including bank debt, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), litigation-related claims and obligations, unfunded pension and retiree medical liabilities, or other liabilities (collectively, the "Existing Obligations") that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders"); rescheduling of the maturities of Existing Obligations; a change in interest rates, repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity; an exchange offer involving the issuance of new securities in exchange for Existing Obligations; the issuance of new securities, sale or disposition of assets, sale of debt or equity securities or other interests or other similar transaction or series of transactions, including any Financing (as defined below), including any financing contemplated by the Financing EA. For the avoidance of doubt, any extension or

waiver of the Company's existing bank debt that has an effective term of less than one year shall not constitute a Restructuring. By signing this Agreement, we hereby accept our appointment as your sole investment banker under the terms hereof.

*Description of Services:*

1. LMM agrees, in consideration of the compensation provided in Section 2 below, to perform such of the following investment banking services as the Company may reasonably request, including:

> (a) Reviewing and analyzing the Company's business, operations and financial projections;
>
> (b) Evaluating the Company's potential debt capacity in light of its projected cash flows;
>
> (c) Assisting in the determination of a capital structure for the Company;
>
> (d) Assisting in the determination of a range of values for the Company on a going concern basis;
>
> (e) Advising the Company on tactics and strategies for negotiating with the Stakeholders;
>
> (f) Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;
>
> (g) Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to the Restructuring;
>
> (h) Advising and assisting the Company in evaluating potential Financing[1] transactions by the Company, and, subject to LMM's agreement so to act and, if requested by LMM, to execution of appropriate agreements, on behalf of the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such Financing (it being agreed that the provisions of Section 8 and Exhibit B to the Financing EA that specifically apply to Private Placements (as that term is defined in the Financing EA) shall apply to any Financing consummated outside of bankruptcy that would constitute a Private Placement).
>
> (i) Assisting the Company in preparing documentation within our area of expertise that is required in connection with the Restructuring;

---

[1] As used in this Agreement, the term "Financing" means any transaction or series of transactions, whether or not consummated in connection with a case under the Bankruptcy Code, involving the public or private issuance, sale, or placement of newly issued (including securities held in treasury) equity, equity-linked or debt securities, instruments, or obligations of the Company, including any debtor-in-possession financing or exit financing.

- (j) Assisting the Company in identifying and evaluating candidates for a potential Sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of a Sale Transaction[2];

- (k) Attending meetings of the Board of Directors of BBH and its committees with respect to matters on which we have been engaged to advise hereunder;

- (l) Providing testimony, as necessary, with respect to matters on which we have been engaged to advise hereunder in any proceeding before the Bankruptcy Court; and

- (m) Providing the Company with other financial restructuring advice.

*Fees:*

2. As consideration for the services to be provided, the Company shall pay LMM the following fees:

- (a) A monthly fee of $100,000 (the "Monthly Fee"), payable on execution of this Agreement and on the 1st day of each month thereafter until the earlier of the completion of the Restructuring or the termination of LMM's engagement pursuant to Section 10. Fifty percent (50%) of all Monthly Fees paid plus fifty percent (50%) of the consulting fee paid to LMM pursuant to the Financing EA paid shall be credited (without duplication) against any Restructuring Fee, Sale Transaction Fee or Minority Sale Transaction Fee payable; provided, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable.

- (b) A fee equal to $1.5 million, payable upon the consummation of a Restructuring (the "Restructuring Fee"); provided, however, that if a Restructuring is to be completed through a "pre-packaged" or "pre-arranged" plan of reorganization, the Restructuring Fee shall be earned and shall be payable upon the earlier of (i) execution of definitive agreements with respect to such plan and (ii) delivery of binding consents to such plan by a sufficient number of creditors to bind the creditors to the plan; provided, further, that in the event that LMM is paid a fee in connection with a "pre-packaged" or "pre-arranged" plan and a plan of reorganization is not consummated, LMM shall return such fee to the Company (less any Monthly Fees that have accrued).

---

[2] As used in this Agreement, the term "Sale Transaction" means any transaction or series of transactions involving (a) an acquisition, merger, consolidation, or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with another company; (b) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended), of equity interests or options, or any combination thereof constituting a majority of the then outstanding stock of the Company or possessing a majority of the then outstanding voting power of the Company (except as may occur with current Stakeholders as a result of a Restructuring); (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of significant assets, securities or other interests of the Company or (d) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purpose of effecting a transfer of an interest in the Company to a third party. For purposes hereof, any sale of newly issued securities (including securities held in treasury) shall be a In-Bankruptcy Financing and not a Sale.

(c)     (i) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Company, LMM shall be paid a fee (the "Sale Transaction Fee") equal to $1.5 million.

    (ii) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates any Sale Transaction not covered by clause (i) above, the Company shall pay LMM a fee (the "Minority Sale Transaction Fee") to be mutually agreed in good faith by the Company and LMM, which fee will appropriately compensate us in light of the magnitude and complexity of the transaction and the fees customarily paid to investment bankers of similar standing for similar transactions.

    (iii) Any Sale Transaction Fee or Minority Sale Transaction Fee shall be payable upon consummation of the applicable Sale Transaction.

(d)     Notwithstanding the foregoing, LMM shall not at any time be entitled to receive both a Restructuring Fee, as described in (b) above, and a Sale Transaction Fee or Minority Sale Transaction Fee, as described in (c) above, as a result of the consummation of a transaction or transactions for which LMM has been engaged. Instead, in the event more than one of a Restructuring Fee, Sale Transaction Fee or Minority Sale Transaction Fee becomes payable, LMM shall be entitled to the highest fee payable, but shall not receive more than one fee.

(e)     In addition, if a Restructuring or Sale Transaction is consummated without commencement of a case under the Bankruptcy Code, then LMM shall be paid a bonus fee of $250,000 in addition to the Restructuring Fee or Sale Transaction Fee, as applicable.

(f)     (i) In addition to any fees that may be payable to LMM and, regardless of whether any transaction occurs, the Company shall promptly reimburse LMM for all: (A) reasonable expenses incurred by LMM (including travel and lodging, data processing and communications charges, courier services and other expenditures) and (B) the reasonable fees and expenses of counsel, if any, retained by LMM (other than any related to the negotiation of this Agreement).

(g)     As part of the compensation payable to LMM hereunder, the Company agrees to the indemnification, contribution and related provisions (the "Indemnification Letter") attached to this Agreement as Addendum A and incorporated herein in their entirety.

(h)     All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

*Retention in Chapter 11 Proceedings:*

3. In the event of the commencement of chapter 11 proceedings, the Company agrees that it will use best efforts to obtain prompt authorization from the Bankruptcy Court to retain LMM on the terms and conditions set forth in this Agreement under the provisions of Section 328(a) of the Bankruptcy Code. Subject to being so retained, LMM agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and order of the Bankruptcy Court. The Company shall supply LMM with a draft of the application and proposed retention order authorizing LMM's retention sufficiently in advance of the filing of such application and proposed order to enable LMM and its counsel to review and comment thereon. LMM shall be under no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless LMM's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court, which order is acceptable to LMM. In so agreeing to seek LMM's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that LMM's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring or Sale Transaction, that the value to the Company of LMM's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Restructuring Fee, Sale Transaction Fee and Minority Sale Transaction Fee is reasonable regardless of the number of hours to be expended by LMM's professionals in the performance of the services to be provided hereunder.

*Other:*

4. No fee payable to any third party, by the Company or any other person or entity, shall reduce or otherwise affect any fee payable hereunder to us.

5. The Company will furnish or cause to be furnished to LMM such current and historical financial information and other information regarding the business of the Company as LMM may request in connection with this engagement. The Company represents and warrants to LMM that all of the foregoing information will be accurate and complete at the time it is furnished, and agrees to keep LMM advised of all developments materially affecting the Company or its financial position. In performing its services pursuant to this Agreement, LMM shall be entitled to rely upon information furnished to it by the Company or that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. LMM will not, as part of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party, or opine or give advice to the Board of Directors, the Company or management or shareholders with respect thereto or with respect to any issues of solvency.

6. In performing its services pursuant to this Agreement, LMM is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Restructuring, Sale Transaction or other

transaction. LMM shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall LMM be responsible for providing or be deemed to have provided any tax, accounting, actuarial, legal or other specialist advice.

7. It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by LMM or Lazard Capital Markets LLC or any of their respective affiliates to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or purchase agreement, as applicable, relating to the financing.

8. Simultaneously herewith, the parties hereto are entering into the Indemnification Letter. The Indemnification Letter shall survive any termination or expiration of this Agreement.

9. In order to coordinate our efforts on behalf of the Company during the period of our engagement hereunder, the Company will promptly inform LMM of any discussions, negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries that have occurred during the six month period prior to the date of this Agreement. In the event that LMM receives an inquiry concerning any transaction, we will promptly inform the Company of such inquiry.

10. Our engagement hereunder will automatically expire on consummation of a Restructuring or Sale Transaction and may be earlier terminated by BBH or us at any time without liability or continuing obligation to the Company or us, except that following such termination and any expiration of our engagement (a) we shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, as the case may be, and (b) in the case of termination by BBH, we shall remain entitled to full payment of all fees contemplated by Section 2 hereof in respect of any Restructuring and any Sale Transaction that is closed or as to which an agreement in principle is entered into during the period from the date hereof until one year following such termination or expiration, as the case may be.

11. LMM has been retained under this Agreement as an independent contractor to BBH, and nothing herein is intended to confer any rights pr remedies as against LMM upon any person (including the management, Board of Directors, employees, securityholders and creditors of the Company) other than BBH. In addition, it is understood and agreed that this Agreement and our engagement do not create a fiduciary relationship between LMM and any person, including the Company and its management, Board of Directors, employees, securityholders and creditors. Unless otherwise expressly agreed, no one, other than senior management or the Board of Directors of BBH (in their capacities as such) is authorized to rely upon the Company's engagement of LMM or any statements, advice, opinions or conduct by LMM. Without limiting the foregoing, any advice, written or oral, rendered in the course of the Company's engagement of LMM are solely for the purpose of assisting senior management or the Board of Directors of BBH (in their capacities as such) in evaluating any Restructuring or Sale Transaction and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with any Restructuring or Sale Transaction. Any advice, written or

oral, rendered by LMM may not be disclosed publicly or made available to third parties without the prior written consent of LMM. Notwithstanding the foregoing, nothing herein shall prohibit the Company from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure.

12. In connection with the services to be provided hereunder, LMM may employ the services of (i) other affiliates of Lazard Ltd (including Lazard Frères & Co. LLC) and (ii) Lazard Capital Markets LLC and its affiliates, and may share with any such entity any information concerning the Company, provided that LMM and such entities shall hold any nonpublic information confidential in accordance with their respective customary policies relating to non-public information. Any such entity so employed shall be entitled to all of the benefits afforded to LMM hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its expenses on the same basis as LMM.

13. The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of the Company, LMM and any other person entitled to indemnity under the Indemnification Letter. The Company's obligations pursuant to this Agreement shall be joint and several. This Agreement and the related Indemnification Letter embody the entire agreement and understanding among the parties hereto and supersede any and all prior agreements, arrangements, and understandings, related to the matters provided for herein, including the Financing EA (other than as specified in Section 1(h) above). No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby.

14. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law. No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of Illinois located in Cook County of Illinois or in the United States District Court for the Northern District of Illinois, and each of the parties hereby submits to the jurisdiction of such courts. The Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. The Company waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of LMM pursuant to, or the performance by LMM of the services contemplated by, this Agreement.

*[Signature page follows.]*

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD MIDDLE MARKET LLC

By: _____
Andrew B. Samett
Managing Director

Accepted and Agreed to as of the date first written above.

BBH, Inc., on behalf of itself
and its controlled subsidiaries

By: _____
Mr. George Marton
Chief Executive Officer

June 24, 2010

Mr. George Marton
Chief Executive Officer
BBH, Inc.
760 South Wolf Road
Wheeling, IL 60090

Attention:   Mr. George Marton
             Chief Executive Officer

Gentlemen:

In connection with our engagement to advise and assist BBH, Inc. ("BBH") and its controlled subsidiaries (collectively, "you" or the "Company") with the matters set forth in the engagement letter of even date herewith (the "Agreement"), you and we are entering into this letter agreement. It is understood and agreed that in the event that Lazard Middle Market LLC ("LMM") or any of our affiliates, or any of our or their respective directors, officers, members, employees, agents or controlling persons, if any (each of the foregoing, including Lazard Middle Market LLC, being an "Indemnified Person"), become involved in any capacity in any action, claim, proceeding or investigation brought or threatened by or against any person, including your securityholders, related to, arising out of or in connection with our engagement under the Agreement or under the Financing EA (as that term is defined in the Agreement), you will promptly reimburse each such Indemnified Person for its legal and other expenses (including the cost of any investigation and preparation) as and when they are incurred in connection therewith; and provided, further, that any Indemnified Person will be required to return to the Company promptly any reimbursed expenses to the extent that they are attributable to any loss, claim, damage, liability or expense that is finally determined (not subject to judicial review or appeal) to have resulted from such Indemnified Person's bad faith, gross negligence or willful misconduct. You will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expenses to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with our engagement under the Agreement or under the Financing EA, whether or not any pending or threatened action, claim, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expenses is initiated or brought by you or on your behalf and whether or not in connection with any action, claim, proceeding or investigation in which you or any such Indemnified Person are a party, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted from such Indemnified Person's bad faith, gross negligence or willful misconduct. You also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or

otherwise) to you or your securityholders or creditors related to, arising out of or in connection with our engagement under the Agreement or under the Financing EA except to the extent that any loss, claim, damage or liability is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted from such Indemnified Person's bad faith, gross negligence or willful misconduct. If multiple claims are brought against any Indemnified Person in an arbitration related to, arising out of or in connection with our engagement under the Agreement or under the Financing EA, and indemnification is permitted under applicable law with respect to at least one such claim, you agree that any arbitration award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for hereunder, except to the extent the arbitration award expressly states that the award, or any portion thereof, is based solely on a claim as to which indemnification is not available.

If for any reason the foregoing indemnification is held unenforceable (other than due to a failure to meet the standard of care set forth above), then you shall contribute to the loss, claim, damage, liability or expense for which such indemnification is held unenforceable in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by you and your securityholders and creditors on the one hand and the Indemnified Persons on the other hand in the matters contemplated by our engagement under the Agreement or under the Financing EA as well as the relative fault of yourselves and such persons with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations. You agree that for the purposes hereof the relative benefits received, or sought to be received, by you and your securityholders and creditors and the Indemnified Persons shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid by or to you and your securityholders and creditors, as the case may be, pursuant to any transaction (whether or not consummated) for which we have been engaged to perform investment banking services bears to (ii) the fees paid or proposed to be paid to us in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall we or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to us for such investment banking services. Your reimbursement, indemnity and contribution obligations under this agreement shall be joint and several, shall be in addition to any liability which you may otherwise have, shall not be limited by any rights we or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of yourselves, ourselves, and any other Indemnified Persons.

Upon receipt by LMM of actual notice of an Indemnification Claim in respect of which indemnity may be sought hereunder, LMM shall promptly notify the Company with respect thereto. In any event, failure to notify the Company shall not relieve the Company from any liability which the Company may have on account of this Agreement, except to the extent the Company shall have been materially prejudiced by such failure. If the Company so elects, the Company may assume the defense of any Indemnification Claim, in which event, except as provided below, the Company shall not be liable for any subsequent fees and expenses of counsel retained by any Indemnified Person in connection with such Indemnification Claim other than as set forth below. In any such Indemnification Claim, each Indemnified Person shall have the right to participate in such litigation or proceeding and to retain its own counsel, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person unless (i) the

Company has failed to assume the defense and retain counsel in a timely manner or the Company has retained counsel that is not reasonably acceptable to such Indemnified Person, (ii) the Company shall have agreed in writing to the retention of such counsel, (iii) the Company does not diligently defend the Indemnification Claim after assuming defense thereof, (iv) representation by counsel chosen by the Company would, in the opinion of counsel to such Indemnified Person, be inappropriate due to actual or potential conflicts of interest between the Company and such Indemnified Person or (v) the Company is then subject to, or contemplating or threatened with commencement of, bankruptcy proceedings. Notwithstanding the foregoing, if LMM determines in good faith that there is a reasonable probability that any such matter may materially adversely affect LMM other than as the result of an award of monetary damages for which LMM would be entitled to indemnification under this Agreement, LMM may, by written notice to the Company, assume the exclusive right to defend and resolve such matter with the costs of such defense and resolution to be at the expense of the Company. It is understood that in connection with any single action, claim, proceeding or investigation, the Company shall not be liable for the reasonable fees and expenses of more than one additional firm (plus local counsel where appropriate) for each Indemnified Person, and that separate counsel retained by each Indemnified Person shall, to the extent consistent with its professional responsibilities, cooperate with the Company and any counsel designated by the Company. The Company shall be liable for any settlement of any Indemnification Claim made with the Company's prior written consent (which shall not be unreasonably withheld or delayed).

You agree that, without our prior written consent (which will not be unreasonably withheld), you will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification or contribution could be sought hereunder (whether or not we or any other Indemnified Persons are an actual or potential party to such claim, action, proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby. This agreement and any claim related directly or indirectly to this agreement shall be governed and construed in accordance with the laws of the State of New York (without giving regard to the conflicts of law provisions thereof). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of Illinois located in Cook County of Illinois or the United States District Court for the Northern District of Illinois, and each of us hereby submits to the jurisdiction of such courts. You hereby waive on behalf of yourself and your successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable. You (on your own behalf and, to the extent permitted by applicable law, on behalf of your securityholders and creditors) waive all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to, arising out of or in connection with our

engagement under the Agreement or the Financing EA. This agreement shall remain in effect indefinitely, notwithstanding any termination or expiration of our engagement.

Very truly yours,

LAZARD MIDDLE MARKET LLC

By: _____
Andrew B. Samett
Managing Director

AGREED TO AND ACCEPTED
as of the date first
above written:

BBH, Inc., on behalf of itself
and its controlled subsidiaries

By: _____
Mr. George Marton
Chief Executive Officer