## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **Böwe Systec, Inc., et al.,**[1] | **Case No.: 11-11187 (PJW)** |
| **Debtors.** | **(Jointly Administered)** |
| | **Re: Docket No. 10** |

## ORDER (A) APPROVING BIDDING PROCEDURES; AND
## (B) APPROVING THE FORM AND MANNER OF NOTICES THEREOF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of an order (the "Order") (a) approving the bidding procedures substantially in the form attached hereto as **Exhibit 1** (the "Bidding Procedures") and (b) approving the form and manner of notices thereof; it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor:

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, are Böwe Systec, Inc. (1423), Böwe Bell + Howell Holdings, Inc. (9926), BBH, Inc. (9928), Böwe Bell + Howell Company (0100), Böwe Bell + Howell Postal Systems Company (4944), BCC Software, Inc. (3481) and Böwe Bell + Howell International Ltd. (0001). The debtors' corporate offices are located at 760 S. Wolf Road, Wheeling, IL 60090.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion, the Stalking Horse Agreement or the Bidding Procedures, as applicable.

**THE COURT HEREBY FINDS THAT:[3]**

A.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The statutory bases for the relief requested in the Motion are (a) sections 105 and 363 of the Bankruptcy Code and (b) Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007 and 9014.

C.     Notice of the Motion has been provided to:  (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Agent; (c) the creditors listed on the Debtors' consolidated list of 20 largest unsecured creditors, as filed with the Debtors' chapter 11 petitions; (d) counsel to the Purchasers; (e) all parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; (f) each of the Debtors' landlords and each of the notice parties identified in the real property leases, to the extent possible; (g) various federal, state, county and city tax and regulatory authorities; (h) all entities known to have expressed an interest in a transaction with respect to the Acquired Assets or that has been indentified by the Debtors or their advisors as a potential purchaser of the Acquired Assets; (i) the Federal Trade Commission; (j) the United States Attorney General/Antitrust Division of the Department of Justice; (k) local and state environmental authorities and the federal Environmental Protection Agency; and (l) all parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  *See* Affidavits of Service [Docket Nos. 23 and 48]

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

RLF1 3994986v. 6

D. The Debtors have articulated good and sufficient reasons for this Court to: (i) approve the Bidding Procedures; (ii) approve those provisions of that certain Asset Purchase Agreement dated April 18, 2011 (the "Stalking Horse Agreement") that relate to the Expense Reimbursement; (iii) set the hearing (the "Sale Hearing") to approve the Sale and approve the manner of notice of the Motion and the Sale Hearing; and (iv) establish procedures for noticing and determining cure amounts for executory contracts ("Executory Contracts") and unexpired nonresidential real property leases ("Facility Leases") that may be assumed and assigned in connection with the Sale (the "Cure Procedures").

E. The Debtors and the Purchasers have executed and filed with the Court the Stalking Horse Agreement, a copy of which is attached as **Exhibit B** to the Motion.

F. The Debtors have been unable to find a purchaser for the Acquired Assets who is willing to enter into a definitive agreement to acquire the Acquired Assets on terms as favorable to the Debtors and their estates as the Stalking Horse Agreement.

G. The Stalking Horse Agreement represents the best offer the Debtors have received to date as a result of their prepetition efforts to market the Acquired Assets for sale.

H. No other party to date has offered to enter into an asset purchase agreement for the acquisition of the Acquired Assets on terms acceptable to the Debtors. The execution of the Stalking Horse Agreement is a necessary prerequisite to determining whether any party other than the Purchasers is willing to enter into a definitive agreement for the acquisition of the Acquired Assets on terms acceptable to the Debtors and their creditor constituency.

I. The Debtors represent that the Stalking Horse Agreement was negotiated by the parties at arms'-length and in good faith after months of discussions and negotiations with all relevant parties.

RLF1 3994986v. 6

J.     The Bidding Procedures and the Cure Procedures are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates through the Sale and the transfer of the Acquired Assets to the Highest and Best Bidder free and clear of all Liens, Claims and Interests pursuant to section 363(f) of the Bankruptcy Code.

K.     The Expense Reimbursement (i) is of substantial benefit to the Debtors' estates, (ii) is reasonable and appropriate, including in light of the size and nature of the sale and the efforts that have been or will be expended by the Purchasers notwithstanding that the proposed sale is subject to higher and better offers for the Acquired Assets, (iii) was negotiated by the parties at arm's-length and in good faith, and (iv) is an essential inducement and condition relating to the Purchasers' entry into, and continuing obligations under, the Stalking Horse Agreement.     Accordingly, the Expense Reimbursement is reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

**IT IS HERBY ORDERED THAT:**

1.     The Motion is granted as provided herein.

2.     The Bidding Procedures and Cure Procedures are hereby approved, are incorporated herein by reference, and shall govern all bids and proceedings related to the Sale and the assumption and assignment of the Executory Contracts and Facility Leases.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures and the Cure Procedures.

3.     All objections to the Bidding Procedures, Cure Procedures and Expense Reimbursement that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

4.     Within two (2) days after the entry of this Order (the "Mailing Date") or as soon thereafter as practicable, the Debtors (or their agents) shall serve the Sale Notice, substantially in

4

the form attached hereto as **Exhibit 2**, and a copy of this Order by first-class mail, postage prepaid, upon the Notice Parties; the Debtors (or their agents) shall also serve the Sale Notice on all parties to executory contracts or unexpired leases that were previously notified pursuant to the First Cure Notice (as defined below) that their contract or lease may be assumed and assigned by the Debtors.

5.    On the Mailing Date or as soon as practicable thereafter, the Debtors shall publish the Sale Notice, substantially in the form attached hereto as **Exhibit 3**, once in the National Edition of the *Wall Street Journal*, and such publication notice shall be deemed proper notice to any other interested parties whose identities are unknown to the Debtors.

6.    The form of the Sale Notice and the manner of such notice are good and sufficient for all purposes and no other or further notice shall be required upon the Debtors.

7.    As set forth in the Bidding Procedures, to the extent that at least one Qualified Bid (other than from the Purchasers) is timely received, the Debtors shall conduct the Auction at 10:00 a.m. (prevailing Eastern Time) on May 31, 2011, at the offices of Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 or such later time on such day or other place as the Debtors shall notify the following parties: (a) the Office of the United States Trustee for the District of Delaware, (b) counsel to the Purchasers, (c) any other Qualified Bidder who has submitted a Qualified Bid, (d) counsel to the Official Committee of Unsecured Creditors, and (d) any creditor that has indicated to counsel to the Debtors that it wishes to attend the Auction.

8.    The Stalking Horse Agreement constitutes a Qualified Bid and the Purchasers are a Qualified Bidder, for all purposes and requirements under the Bidding Procedures. The Agent shall be entitled to credit bid the total amount of (a) the obligations of any kind outstanding

under the DIP Credit Agreement in an aggregate amount equal to the DIP Amount and (b) prepetition obligations of any kind outstanding under the Pre-Petition Credit Agreement or otherwise.

9.      If no Qualified Bid other than the Stalking Horse Agreement is timely received, the Debtors shall not conduct an Auction and shall designate the Purchasers as the Highest and Best Bidder.

10.     All Qualified Bidders are deemed to have submitted to the exclusive jurisdiction of the Court with respect to all matters related to the Auction and the terms and conditions of the sale of the Acquired Assets.

11.     In accordance with the Cure Procedures, the Debtors filed the following notices and served them in the manner indicated:

a.      On April 27, 2011, the Debtors filed a notice identifying certain Executory Contracts and Facility Leases that the Debtors may seek to assume and assign to the Purchasers, their designee(s) or such other Highest and Best Bidder in connection with the Sale (the "First Cure Notice"), a copy of which is attached hereto as **Exhibit 4**, and served the First Cure Notice on all non-debtor counterparties to any Executory Contracts and Facility Leases (each, a "Contract Counterparty") identified therein; *provided, however,* that the presence of an Executory Contract or Facility Lease on **Exhibit 4** does not constitute an admission that such Executory Contract or Facility Lease is an executory contract or unexpired lease. The Debtors reserve all of their rights, claims and causes of action with respect to the Executory Contracts and Facility Leases referenced on **Exhibit 4**.

6

b. By no later than May __16__, 2011, the Debtors shall file a supplemental notice (the "Supplemental Cure Notice", and together with the First Cure Notice, the "Cure Notices"), a copy of which is attached hereto as **Exhibit 5**, identifying the following types of existing customer agreements (without separately identifying each such agreement on exhibit to the Supplemental Cure Notice) that the Debtors are seeking to assume and/or assign to the Purchasers, their designee(s) or such other Highest and Best Bidder: (i) product agreements; (ii) maintenance agreements; (iii) production service/business continuity agreements; and (iv) software license agreements (the "Customer Agreements") and shall serve the Supplemental Cure Notice, with a cover letter from the Debtors' Chief Executive Officer (a copy of which is attached hereto as **Exhibit 6**), on all non-debtor counterparties to the Customer Agreements. As set forth in the Supplemental Cure Notice, the Debtors do not believe that all of the Customer Agreements constitute executory contracts for purposes of section 365 of the Bankruptcy Code and therefore reserve all of their rights, claims and causes of action with respect to the Customer Contracts.

12. The First Cure Notice stated the Cure Amounts that the Debtors believe are necessary to assume the Executory Contracts and Facility Leases (collectively, the "Contracts") pursuant to section 365 of the Bankruptcy Code and notified all Contract Counterparties that such party's Contract may be assumed and assigned to the Purchasers, their designee(s) or such other Highest and Best Bidder to be identified at the conclusion of the Auction. Service of the First Cure Notice and the Sale Notice, substantially in the form attached hereto as Exhibit 2, upon the Contract Counterparties constitutes sufficient notice of the Motion and the relief requested therein with respect to the Contracts, including, inter alia, the Cure Procedures, the

7

proposed assumption and assignment of certain Contracts in connection with the Sale of the Acquired Assets, the designation period contemplated under Section 2.8 of the Stalking Horse Agreement for addressing Designated Remaining Contracts and the proposed Assumption Procedures and Rejection Procedures, and no other or further notice shall be required upon the Contract Counterparties except as contemplated in the Motion or herein.

13.     All objections by Contract Counterparties to the Cure Amounts listed in the First Cure Notice must be filed within fourteen (14) days after service of the First Cure Notice (the "Cure Objection Deadline") and served on (i) the Debtors' counsel, Richards Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Michael J. Merchant, Esq.) (Facsimile: 302-651-7701), (ii) the Debtors, Böwe Bell + Howell Holdings, Inc., 760 S. Wolf Road, Wheeling, Illinois 60090 (Attn: Oliver Bialowons) (Facsimile: 847-423-7321); (iii) counsel to the Purchasers, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654 (Attn: David L. Eaton, Esq. and James A. Stempel, Esq.) (Facsimile: 312-862-2200); and (iv) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Juliet Sarkessian, Esq.) (Facsimile: 302-573-6497) (the "Cure Objection Notice Parties"). All objections to any Cure Amount must set forth (i) the basis for the objection, (ii) the exact amount the Contract Counterparty asserts as the Cure Amount, and (iii) sufficient documentation to support the Cure Amount alleged.

14.     The Supplemental Cure Notice shall state the Cure Amounts that the Debtors believe are necessary to assume the Customer Agreements pursuant to section 365 of the Bankruptcy Code and notified all Contract Counterparties that such party's Customer Agreement may be assumed and assigned to the Purchasers, their designee(s) or such other Highest and Best

8

Bidder to be identified at the conclusion of the Auction. Service of the Supplemental Cure Notice upon the Contract Counterparties constitutes sufficient notice of the Motion and the relief requested therein with respect to the Customer Agreements, including, inter alia, the Cure Procedures, the proposed assumption and assignment of certain Customer Agreements in connection with the Sale of the Acquired Assets, the designation period contemplated under Section 2.8 of the Stalking Horse Agreement for addressing Designated Remaining Contracts and the proposed Assumption Procedures and Rejection Procedures, and no other or further notice shall be required upon the Contract Counterparties except as contemplated in the Motion or herein.

15. All objections by Contract Counterparties to (i) the Cure Amounts listed in the Supplemental Cure Notice and (ii) the proposed assumption and assignment of any Customer Agreement to the Purchaser or their designee(s) must be made in writing and served (but not filed) so as to be received by the Cure Objection Notice Parties on or before the Sale Objection Deadline (as defined in paragraph 21 below). The objection must set forth (i) the basis for the objection, and, if it relates to the proposed Cure Amount, (ii) the exact amount the party asserts as the Cure Amount, and (iii) sufficient documentation to support the Cure Amount alleged. If any such objections are timely received, the Debtors will then file such objection(s) with the Court requesting that any confidential customer information contained therein be kept under seal. Failure of a party to object to the proposed assumption and assignment of any Customer Agreement to the Purchaser or their designee(s) shall be deemed by the Debtors to be consent to such assumption and assignment.

16. The Debtors may amend the Cure Notices with respect to any Cure Amount or to identify any additional Contracts or Customer Agreements that were omitted from the Cure

9

Notices. If the Debtors amend the Cure Notices, any Contract Counterparties affected by the amendment must file any objection to the amended Cure Amount within fourteen (14) days after service of the amended Cure Notice and serve such objection on the Cure Objection Notice Parties.

17. Objections to any Cure Amount will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors with the prior consent of the Purchasers or such other party as is determined to be the Highest and Best Bidder.

18. Unless (i) a Contract Counterparty files an objection to the Cure Amount by the Cure Objection Deadline (in connection with the First Cure Notice), or (ii) a Contract Counterparty files an objection to the Cure Amount by the Sale Objection Deadline (in connection with the Supplemental Cure Notice), then such Contract Counterparty shall be (i) forever barred from objecting to the Cure Amount; and (ii) forever barred and estopped from asserting or claiming any Cure Amount against the Debtors, the Highest and Best Bidder or any other assignee of the relevant Contract or Customer Agreement.

19. By no later than May **16**, 2011, the Purchasers shall file a notice with the Bankruptcy Court (the "Stalking Horse Adequate Assurance Notice") setting forth the Stalking Horse Adequate Assurance Information, and providing contact information should a Contract Counterparty deem it necessary to request additional adequate assurance information from the Purchasers. The Debtors will file with the Bankruptcy Court any non-confidential adequate assurance information received from other Bidders within twenty four (24) hours of receipt of such adequate assurance information. In the event that the Highest and Best Bidder is not the Purchasers, objections regarding adequate assurance of future performance may be raised at the Sale Hearing.

10

20.     The Sale Hearing will be conducted on **June 2, 2011 at 3:30 p.m. (prevailing Eastern Time)**, in the courtroom of the Honorable Peter J. Walsh, United States Bankruptcy Judge for the District of Delaware. The Debtors will seek entry of an order at the Sale Hearing approving and authorizing the sale of the Acquired Assets to the Highest and Best Bidder. The Sale Hearing may be continued from time to time with the consent of the Purchasers or such other party as is determined to be the Highest and Best Bidder without further notice other than such announcement made in open court or a notice of adjournment filed with the Court and served on the Notice Parties.

21.     Objections, if any, to the relief requested in the Motion as it relates to the relief to be considered at the Sale Hearing, the assumption and assignment of a party's executory contract and/or unexpired lease, the Stalking Horse Adequate Assurance Information, or that portion of the Motion that seeks to extend the deadline to assume or reject unexpired leases, must: (a) be in writing and filed with the Court **no later than 4:00 p.m. (prevailing Eastern Time) on ~~March~~** ^(May) **26, 2011** (the "Sale Objection Deadline") and served on the following parties **so that it actually received by the Sale Objection Deadline:** (a) the Debtors' counsel, Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Michael J. Merchant, Esq.) (Facsimile: 302-651-7701); (b) the Debtors, Böwe Bell + Howell Holdings, Inc., 760 S. Wolf Road, Wheeling, Illinois 60090 (Attn: Oliver Bialowons) (Facsimile: 847-423-7321); (c) counsel for the Official Committee of Unsecured Creditors, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, Delaware 19899 (Attn: Bruce Grohsgal, Esq. and Bradford J. Sandler, Esq.) (Facsimile: 302-652-4400); (d) counsel to the Purchasers, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654 (Attn: David L. Eaton, Esq. and James A. Stempel, Esq.) (Facsimile:

11

312-862-2200); and (e) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Juliet Sarkessian, Esq.) (Facsimile: 302-573-6497). In the event that the Highest and Best Bidder is not the Purchasers, objections regarding adequate assurance of future performance may be raised orally at the Sale Hearing.

22.     Sections 6.7 and 9.3 of the Stalking Horse Agreement, as such sections relate to the Expense Reimbursement, are hereby approved and binding upon the Debtors and their estates. In connection therewith, the Debtors' obligation to pay the Expense Reimbursement, as provided by the Stalking Horse Agreement, shall survive termination of the Stalking Horse Agreement and, until paid in accordance with the Stalking Horse Agreement, shall constitute a superpriority administrative expense claim in favor of the Purchasers having superpriority, under section 364(c) of the Bankruptcy Code, junior only to the claims of the lenders under the DIP Credit Agreement and to the charge granted in favor of the Information Officer in the Canadian proceedings, payable out of the Sellers' cash or other collateral securing the Sellers' obligations (which shall be senior to any and all claims of any creditors of or holders of equity interests in the Sellers, including pre-petition and post-petition amounts owing to the Sellers' pre-petition and post-petition senior secured lenders other than the lenders under the DIP Credit Agreement). To the extent that the Purchasers are not the Highest and Best Bidder, the Highest and Best Bidder is authorized and directed to pay the Expense Reimbursement directly to the Purchasers by wire transfer of immediately available good funds to an account specified by the Purchasers at the closing of any transaction involving the Acquired Assets with the Highest and Best Bidder or consummation of any plan of reorganization that does not provide for a sale of the Acquired Assets to the Purchasers. To the extent for any reason the Highest and Best Bidder

12

fails to pay the Expense Reimbursement directly to the Purchasers, the Debtors are authorized and directed to pay the Expense Reimbursement to the Purchasers without further order of the Court.

23. If the Stalking Horse Agreement is terminated pursuant to Section 9.1 thereof, other than by mutual consent of the Parties under Section 9.1(a) or by the Sellers pursuant to Section 9.1(f) as a result of the Purchasers' breach of the Stalking Horse Agreement, then the Purchasers shall be entitled to the Expense Reimbursement with such amount being payable upon termination of the Stalking Horse Agreement.

24. All entities, other than the Purchasers, that submit an offer to purchase the Acquired Assets or a Qualified Bid shall: (a) not be allowed any expense reimbursement, break-up, termination or similar fee or payment; (b) not be entitled to any expense reimbursement, break-up, termination or similar fee or payment on account of their tendering a Bid or the determination that their Bid is a Qualified Bid; and (c) waive any right to seek a claim for substantial contribution under section 503(b)(3)(D) of the Bankruptcy Code.

25. The Purchasers have standing and are deemed to be parties in interest with standing to be heard on any motion, hearing or other matter related to the Stalking Horse Agreement, the Bidding Procedures, the Auction or the Sale Hearing.

26. Notwithstanding anything to the contrary herein, the restructuring fee payable to Lazard Middle Market LLC ("LMM") pursuant to that certain engagement letter dated June 24, 2010 and as modified and approved by the Court pursuant to that certain order approving the retention of LMM dated on or about May 12, 2011 shall be paid by the Purchasers at closing to the extent that the Purchasers are the Highest and Best Bidder and closes on the sale.

13

27.    To the extent that any chapter 11 plan confirmed in this case or any order confirming any such plan or any other order in this case (including any order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code) alters, conflicts with or derogates from the provisions of this Order, the provisions of this Order shall control. The Debtors' obligations under this Order and the portions of the Stalking Horse Agreement pertaining to the Bidding Procedures and the Expense Reimbursement shall survive confirmation of any chapter 11 plan or discharge of claims thereunder and shall be binding upon the Debtors, and the reorganized or reconstituted debtors, as the case may, after the effective date of a confirmed plan or plans in the Debtors' cases.

28.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

29.    Notwithstanding the possible applicability of Federal Rule of Bankruptcy Procedure 6004(h), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

30.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

31.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Date: May 1 2, 2011
     Wilmington, Delaware

THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

RLF1 3994986v. 6