# EXHIBIT 1

## (Form of Bidding Procedures)

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Böwe Systec, Inc., et al.,[1] | Case No.: 11-11187 (PJW) |
| Debtors. | (Jointly Administered) |

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed by the above-captioned debtors and debtors in possession (the "Debtors") with respect to the sale (the "Sale") of all or substantially all of the assets and properties of the Debtors related to the business (collectively, the "Acquired Assets").[2] The Sale will be implemented through the asset purchase agreement attached hereto as **Exhibit A** (the "Stalking Horse Agreement") with Contrado BBH Funding, LLC, and a Canadian corporation to be formed prior to closing (the "Purchasers"), subject to the receipt of higher and better bids in accordance with these Bidding Procedures.

### Approval of Bidding Procedures and the Expense Reimbursement

On May __, 2011, the Bankruptcy Court entered an order (the "Bid Procedures Order") approving, among other things, the Bidding Procedures. Should the Debtors fail to meet any of the dates in the Bidding Procedures Order or outlined herein, the Purchasers may unilaterally and in their sole discretion decide to terminate the Stalking Horse Agreement to the extent permitted under the terms of the Stalking Horse Agreement.

### Auction Qualification Process

To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be determined by the Debtors to satisfy each of the following conditions:

(a) Bid Deposit. A cash deposit in the amount of $5,000,000 (the "Bid Deposit") shall be sent to counsel to the Debtors by wire transfer, certified or cashier's check, which amount shall be deposited in an interest-bearing account consistent with these Bidding Procedures;

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, are Böwe Systec, Inc. (1423), Böwe Bell + Howell Holdings, Inc. (9926), BBH, Inc. (9928), Böwe Bell + Howell Company (0100), Böwe Bell + Howell Postal Systems Company (4944), BCC Software, Inc. (3481) and Böwe Bell + Howell International Ltd. (0001). The debtors' corporate offices are located at 760 S. Wolf Road, Wheeling, IL 60090.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the motion to approve these Bidding Procedures (the "Motion"), the Bid Procedures Order or the Stalking Horse Agreement, as applicable.

(b) Minimum Bid Amount. ($1.3 million) Any Qualifying Bid (other than the Stalking Horse Agreement) at the Auction must be higher and better than the offer of the Purchasers under the Stalking Horse Agreement and that is not less than the sum of (A) the Credit Bid Amount ($80 million plus the Canadian DIP Amount), the Canadian Cash Bid Amount ($302,000 (Canadian currency)) and the Cure Amounts in cash; (B) the dollar value of the Expense Reimbursement in cash ($2 million); and (C) $250,000 in cash (the "Minimum Bid Amount"), and must provide for the immediate payment of the Expense Reimbursement to the Purchasers from the first proceeds of the cash portion of the purchase price of such Bid;

(c) Acquired Assets. Any Qualified Bid must seek to acquire substantially all of the Acquired Assets;

(d) Identification of Executory Contracts and Unexpired Real Property Leases. The Bid shall identify with particularity the Debtors' executory contracts and unexpired leases with respect to which the Bidder seeks to receive an assignment and any designation rights;

(e) Confidentiality Agreement: Prior to receipt by a Bidder of any information (including business and financial information and access to representatives of the Debtors) from the Debtors, each Bidder will be required to execute a confidentiality agreement on terms and conditions no less favorable than those set forth in the confidentiality agreement executed by the Purchasers in connection with the Sale;

(f) Same or Better Terms: The Bid must be on terms that, in the Debtors' business judgment, are substantially the same or better than the terms of the Stalking Horse Agreement. A Bid must include executed transaction documents (the "Competing Transaction Documents") pursuant to which the Bidder proposes to effectuate a competing transaction (a "Competing Transaction"). A Bid shall include a copy of the Stalking Horse Agreement marked to show all changes requested by the Bidder (including those related to the Purchase Price);

(g) Corporate Authority: The Bid shall include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Competing Transaction; provided that if the Bidder is an entity specially formed for the purpose of effectuating the Competing Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Competing Transaction by the equity holder(s) of such Bidder;

(h) Adequate Assurance Information. The Bid shall include sufficient financial or other information (the "Adequate Assurance Information") to establish adequate assurance of future performance with respect to any lease or contract to be assumed and assigned to the Bidder in connection

2

with the proposed transaction and Bidder's agreement that any non-confidential portions of such Adequate Assurance Information can be filed by the Debtors with the Bankruptcy Court within twenty-four (24) hours of receipt of such Adequate Assurance Information from the Bidder. The Bid shall also identify a contact person (with relevant contact information) that counterparties to any lease or contract can contact to obtain additional Adequate Assurance Information;

(i) <u>Proof of Financial Ability to Perform</u>: A Bid (other than the Stalking Horse Agreement) must provide written evidence that the Debtors reasonably conclude demonstrates that the Bidder has the necessary financial ability to close the Competing Transaction. Such information should include, among other things, the following:

    (i) contact names and telephone numbers for verification of financing sources;

    (ii) evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the Competing Transaction;

    (iii) the Bidder's current financial statements (audited if they exist); and

    (iv) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Bidder has the ability to close the Competing Transaction;

(j) <u>Identity</u>: All Bids must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid and the complete terms of any such participation;

(k) <u>Contingencies</u>: A Bid may not be conditioned on (i) obtaining financing or any internal approval or (ii) on the outcome or review of due diligence;

(l) <u>No Fees</u>: A Bid made by any Bidder other than the Purchasers must disclaim any right of the Bidder to receive a fee analogous to the Expense Reimbursement or to compensation under section 503(b) of the Bankruptcy Code for making a substantial contribution;

(m) <u>Irrevocable</u>: A Bid made by any Bidder other than the Purchasers must be irrevocable through the Auction; <u>provided</u> that if such Bid is accepted as the Highest and Best Bid or the Backup Bid (as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures; and

3

(n) <u>Bid Deadline</u>: Any Bid must be transmitted via email (in .pdf or similar format) to: (i) the Debtors, Böwe Bell + Howell Holdings, Inc., 760 S. Wolf Road, Wheeling, Illinois 60090 (Attn: Oliver Bialowons (Oliver.Bialowons@bowebellhowell.com)); (ii) counsel to the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. (Collins@rlf.com) and Michael J. Merchant, Esq. (Merchant@rlf.com)); (iii) investment banker to the Debtors, Lazard Middle Markets, 11 West 42nd Street, New York, New York 10036 (Attn: Andrew Torgove (Andrew.Torgove@lazardmm.com)); (iv) counsel to the Purchasers, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654 (Attn: David L. Eaton, Esq. (deaton@kirkland.com) and James A. Stempel, Esq. (jstempel@kirkland.com)) (provided, however, that confidential information with respect to financing sources need not be provided to the Purchasers); and (v) counsel to the Official Committee of Unsecured Creditors, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, Delaware 19899 (Attn: Bruce Grohsgal, Esq. (bgrohsgal@pszjlaw.com) and Bradford J. Sandler, Esq. (bsandler@pszjlaw.com)), not later than 5:00 p.m. (prevailing Eastern Time) on May 26, 2011 (the "<u>Bid Deadline</u>").

A Bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "<u>Qualified Bid</u>," and such Bidder shall constitute a "<u>Qualified Bidder</u>." The Debtors shall provide notice of any Qualified Bid to the Purchasers, the Official Committee of Unsecured Creditors and the Office of the United States Trustee within two (2) business days of qualifying a Bid. For the avoidance of doubt, the Stalking Horse Agreement shall constitute a Qualified Bid by the Purchasers and the Purchasers shall be deemed a Qualified Bidder. The Purchasers shall have standing to contest the Debtors' determination of each Qualified Bid and Qualified Bidder.

In the event that any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors shall (i) notify such Bidder, the Office of the United States Trustee and the Official Committee of Unsecured Creditors that such Bid was determined not to be a Qualified Bid and (ii) cause such Bidder to be refunded its Bid Deposit and all accumulated interest thereon within three (3) business days after the Bid Deadline or as soon as reasonably practicable thereafter.

## Access to Due Diligence Materials

Only Bidders who have executed a confidentiality agreement in form and substance acceptable to the Debtors are eligible to receive due diligence access or additional non-public information. If the Debtors determine that a Bidder that has executed such a confidentiality agreement does not constitute a Qualified Bidder, then such Bidder's right to receive due diligence access or additional non-public information shall terminate. As noted above, the Debtors have designated Lazard Middle Market, 11 West 42nd Street, New York, New York 10036 (Attn: Andrew Torgove; phone (212) 418-3211; email: Andrew.Targove@lazardmm.com) to coordinate all reasonable requests for additional information and due diligence access from the Bidders. The Debtors shall not be obligated to

4

furnish any due diligence information after the Bid Deadline. Neither the Debtors nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents advisors or professionals are responsible for, and shall bear no liability with respect to, any information obtained by Bidders in connection with the sale of the Acquired Assets.

Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Acquired Assets that are the subject of the Auction prior to making any such Bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its Bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the Acquired Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Highest and Best Bidder or the Stalking Horse Agreement.

Any access or information made available to any Bidders or Qualified Bidders not previously made available to the Purchasers shall be promptly provided to the Purchasers.

### Due Diligence From Bidders

Each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding each such Bidder and its contemplated transaction. Failure by a Bidder to comply with the requests for additional information and due diligence access shall be a basis for the Debtors to determine that such Bidder is not a Qualified Bidder. Failure by a potential or Qualified Bidder to comply with requests for additional information and due diligence access shall be a basis for the Debtors to determine that a Bid made by such Bidder is not a Qualified Bid. Notwithstanding anything to the contrary contained herein, the Purchasers shall not be required to furnish any additional information or other diligence pursuant to this paragraph.

### Auction

If one (1) or more Qualified Bids are submitted in accordance with the Bidding Procedures Order, the Debtors will conduct an auction (the "Auction") on May 31, 2011 in accordance with the Bidding Procedures Order; and at such Auction, the Sellers shall have the right to select the highest and best Bid from the Purchasers and any Bidder who submitted a Qualified Bid pursuant to and in accordance with Section 6.7(c)(viii) of the Stalking Horse Agreement (the "Highest and Best Bid" and the Bidder submitting such Highest and Best Bid, the "Highest and Best Bidder"), which will be determined by considering, among other things: (1) the number, type and nature of any changes to the Stalking Horse Agreement requested by each Bidder; (2) the extent to which such modifications are likely to delay closing of the sale of the Acquired Assets and the cost to the Debtors of such modifications or delay; (3) the total consideration to be received by the Debtors; (4) the likelihood of the Bidder's ability to close a transaction and the timing thereof; and (5) the net benefit to the estate, taking into account the Purchasers' rights to the Expense Reimbursement (collectively, the "Bid Assessment Criteria"). If no Qualified Bid (other than the Stalking Horse Agreement) is received by the Bid Deadline,

5

the Debtors shall not conduct the Auction and shall designate the Stalking Horse Agreement as the Highest and Best Bid for the purposes of these Bidding Procedures.

No later than May 30, 2011, at 5:00 p.m. (prevailing Eastern Time), the Debtors will notify all Qualified Bidders of the highest and best Qualified Bid, as determined in the Debtors' discretion (the "Baseline Bid"), and provide copies of the Baseline Bid to all Qualified Bidders.

The Auction shall be conducted at the offices of Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (the "Auction Site") at 10:00 a.m. (prevailing Eastern Time) on May 31, 2011 (the "Auction Date"), or such other place and time as the Debtors shall notify the Official Committee of Unsecured Creditors, the Office of the United States Trustee, the Purchasers and all Qualified Bidders who have submitted Qualified Bids and expressed their intent to participate in the Auction and all creditors that have contacted counsel to the Debtors expressing an intent to attend the Auction. Prior to moving the Auction Date, the Debtors shall consult with the Purchasers and the Official Committee of Unsecured Creditors. The Auction shall be conducted according to the following procedures:

(a) The Debtors Shall Conduct the Auction.

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be made and received on an open basis, and all material terms of each such Bid shall be fully disclosed to all Qualified Bidders. The Debtors shall maintain a transcript of all Bids made and announced at the Auction.

(b) Expense Reimbursement.

To provide an incentive and to compensate the Purchasers for performing the substantial due diligence and incurring the expenses necessary and entering into the Stalking Horse Agreement with the knowledge and risk that arises from participating in the sale and subsequent bidding process, the Debtors have agreed to provide certain bid protections to the Purchasers, under the terms and conditions outlined herein and in the Stalking Horse Agreement, including the Purchasers' reasonably documented actual out-of-pocket fees and expenses (including legal, accounting, HSR Act filing fees, escrow and other fees and expenses) not to exceed $2,000,000 (the "Expense Reimbursement").

The Expense Reimbursement is a material inducement for, and a condition of, the Purchasers' entry into the Stalking Horse Agreement. The Expense Reimbursement shall be payable as set forth herein and in the Bidding Procedures Order.

(c) Overbid Amount; Minimum Bid Increment.

There shall be an overbid amount (the "Overbid Amount") that a Qualified Bidder must bid to exceed the Purchasers' Bid, and that amount shall include a cash payment at closing that is not less than the sum of (A) the Credit Bid Amount ($80 million plus the Canadian DIP Amount), the Canadian Cash Bid Amount ($302,000 (Canadian currency)) and the Cure Amounts in cash; (B) the dollar value of the Expense Reimbursement in cash ($2 million); and (C) $250,000 in cash, provided, however, any overbid bids by the Purchasers thereafter shall

6

only be required to be equal to the sum of (w) the then existing leading bid, plus (x) $250,000 less the dollar value of the Expense Reimbursement.

Subsequent bids at the Auction shall not provide consideration of less than $250,000 in total consideration in excess of the preceding bid subject to the Debtors ability to adjust the bidding increments in accordance with the Bidding Procedures.

(d)  Purchasers' Rights at Auction.

The Purchasers have the right to submit further bids along with a markup of the Stalking Horse Agreement, and at any time, request that the Debtors announce, subject to any potential new bids, the then current Highest and Best Bid, and to the extent the Purchasers request, use reasonable efforts to clarify any and all questions the Purchasers may have regarding the Sellers' announcement of the then current Highest and Best Bid. The Purchasers shall have standing to contest the Highest and Best Bid selected by the Sellers.

(e)  Backup Bidder.

Following the approval of the Sale of all or substantially all of the Acquired Assets to the Highest and Best Bidder at the Sale Hearing, if the Debtors fail to consummate an approved Sale with the Highest and Best Bidder, the Debtors shall be authorized, but not required, to deem the next highest or otherwise best Qualified Bid (the "Back-Up Bid" and the party submitting the Back-Up Bid, the "Back-Up Bidder"), as disclosed at the Sale Hearing, the Highest and Best Bid, and the Debtors in consultation with the Official Committee of Unsecured Creditors shall be authorized, but not required, to consummate the sale with the Back-Up Bidder submitting such bid without further order of the Bankruptcy Court. The Back-Up Bid shall remain open until the first business day following the consummation of a Sale of the Acquired Assets to the Highest and Best Bidder.

(f)  Consent to Jurisdiction as Condition to Bidding.

The Purchasers and all Bidders (including all Qualified Bidders at the Auction) shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Stalking Horse Agreement, the Auction or the construction and enforcement of any Competing Transaction Documents. To the extent the Purchasers are not the Highest and Best Bidder, the Purchasers shall have standing to contest the highest and best Qualified Bid chosen by the Debtors.

(g)  Closing the Auction.

The Auction shall continue until there is only one Qualified Bid that the Debtors determine in their reasonable business judgment, after consultation with their financial and legal advisors, is the Highest and Best Bid. In making this decision, the Debtors, in consultation with their financial and legal advisors, shall consider the Bid Assessment Criteria. The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an overbid at the Auction to the then-existing highest and best Bid. Additionally, the Auction shall not close unless and until the Purchasers have had a final

7

opportunity to match any overbids. The Debtors shall not consider any Bids submitted after the conclusion of the Auction.

        (h)      No Collusion; Good Faith Bona Fide Offer.

Each Qualified Bidder participating at the Auction will be required to confirm that (i) it has not engaged in any collusion with respect to the bidding and (ii) its Qualified Bid is a good faith bona fide offer and it intends to consummate the proposed Sale if selected as the Highest and Best Bidder.

## Cure Procedures

The Debtors filed a notice (the "First Notice") identifying (i) certain of those Executory Contracts and Facility Leases which may be assumed and assigned to the Purchaser, their designee(s) or such other Highest and Best Bidder, either on the Closing Date or on/or before the Designation Deadline, in connection with the Sale of the Acquired Assets and in accordance with the procedures proposed in the Motion; and (ii) the proposed cure amount for each Executory Contract and Facility Lease identified on the First Notice.

In addition to the Executory Contracts and Facility Leases identified in the First Notice, the Debtors also filed a supplemental cure notice (the "Supplemental Notice" and together with the First Notice, the "Cure Notices") identifying the following types of existing customer agreements that the Debtors are seeking to assume and/or assign to the Purchaser, their designee(s) or such other Highest and Best Bidder: (i) a product agreement, (ii) a maintenance agreement, (iii) a production service/business continuity agreement and (iv) a software license agreement (collectively, the "Customer Agreements" and together with the Executory Contracts and Facility Leases, the "Contracts"). The Debtors served the Cure Notices on all non-debtor counterparties to the Contracts listed therein (the "Contract Counterparties").

The Cure Notices stated the cure amounts that the Debtors believe are necessary to assume such Contracts pursuant to section 365 of the Bankruptcy Code (the "Cure Amount") and notify the Contract Counterparty that such party's Contract may be assumed and assigned to a purchaser of the Acquired Assets to be identified at the conclusion of the Auction. The Purchasers have separately filed a notice containing information with respect to the Purchasers' proposed adequate assurance of future performance and information regarding how a Contract Counterparty may obtain additional information regarding the Purchasers (the "Stalking Horse Adequate Assurance Information").

The deadline to object to any Cure Amount in the First Notice is 4:00 p.m. (prevailing Eastern Time) on May 17, 2011. The deadline to object to (i) the Cure Amounts listed in the Supplemental Notice and (ii) the proposed assumption and assignment of any Customer Agreement to the Purchaser or their designee(s) is the Sale Objection Deadline (as defined in paragraph 21 of the Bidding Procedures Order). The Debtors may amend the Cure Notices with respect to any Cure Amount or to identify any additional Contracts that were omitted from the Cure Notices. If the Debtors amend the Cure Notices, any Contract Counterparties affected by the amendment must file any objection to the amended Cure Amount within fourteen (14) days after service of the amended Cure Notice.

8

Objections, if any, to the Stalking Horse Adequate Assurance Information must be filed and served by the Sale Objection Deadline. In the event that the Highest and Best Bidder is not the Purchasers, objections regarding the Adequate Assurance Information submitted by the Highest and Best Bidder may be raised orally at the Sale Hearing.

### Free of Any and All Liens, Claims and Interests

Except as otherwise provided in the Stalking Horse Agreement or the Highest and Best Bidder's asset purchase agreement, all of the Debtors' right, title and interest in and to the Acquired Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Liens, Claims and Interests") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Liens, Claims and Interests to attach to the net proceeds of the sale of the Acquired Assets with the same validity and priority as such Liens, Claims and Interests applied against the Acquired Assets.

### Sale Hearing

A hearing (the "Sale Hearing") will be held on June 2, 2011 at 3:30 p.m. (prevailing Eastern Time), at which the Debtors will seek approval of the Sale to the Highest and Best Bidder. Objections to the Sale to the Highest and Best Bidder must be filed and served so that they are actually received by the Debtors, the Purchasers, the Official Committee of Unsecured Creditors and the Office of the United States Trustee no later than __4__:__00__ p.m. (prevailing Eastern Time) on __May 26__, 2011 (the "Sale Objection Deadline").

The Debtors, in the exercise of their business judgment, in consultation with the Official Committee of Unsecured Creditors, reserve their right to the extent consistent with the Stalking Horse Agreement, to change the date of the Sale Hearing in order to achieve the maximum value for the Acquired Assets.

### Return of Deposit

The Bid Deposit of the Highest and Best Bidder shall be applied to the Purchase Price. The Bid Deposit of the Back-up Bidder shall be held in an interest-bearing account until two (2) business days after the Closing of the transaction contemplated by the Highest and Best Bid, and thereafter returned to the Back-up Bidder. Bid Deposits of all other Qualified Bidders shall be held in an interest-bearing account until no later than two (2) business days after the Sale Hearing, and thereafter returned to the respective bidders.

### No Modification of Bidding Procedures

These Bidding Procedures may not be modified without the approval of both the Purchasers and the Official Committee of Unsecured Creditors.

### Credit Bidding

The Agent or Purchasers shall be entitled to credit bid the allowed amount of their secured debt for the Acquired Assets pursuant and subject to section 363(k) of the Bankruptcy

9

Code. Any other creditor that desires to exercise its right to credit bid under section 363(k) of the Bankruptcy Code shall comply with all the Bidding Procedures set forth herein to qualify as a Qualified Bidder and submit a Qualified Bid, *provided, however*, that, the Purchasers shall be entitled to credit bid the amount of the Expense Reimbursement in accordance with the terms of these Bidding Procedures. Without limiting the foregoing, and, in the case of clause (c) below, except for any credit bid by the Agent or the Purchasers, any credit bid must include (a) a description of the assets to be purchased that are not subject to a valid and perfected security interest (such Acquired Assets that are not subject to a valid and perfected security interest of the bidder, the "Unencumbered Assets"); (b) cash (in addition to any other cash required by these Bidding Procedures) to be delivered at closing or the assumption of liabilities sufficient to pay the fair value of the Unencumbered Assets; and (c) a letter setting forth the legal and factual bases on which the party submitting the credit bid believes the submission of the credit bid by such party is authorized by the relevant loan documents and applicable law. For the avoidance of doubt, nothing in these Bidding Procedures shall impair or modify the rights and obligations of (i) the Agent or the Prepetition Lenders; or (ii) the Purchasers under the terms of the Stalking Horse Agreement.